1  WRIGHT, FINLAY & ZAK, LLP
   Robin Prema Wright, Esq.
2  Nevada Bar No. 009296
   Donna M. Osborn, Esq.
3  Nevada Bar No. 006527
   5532 South Fort Apache Road, Suite 110
4  Las Vegas, NV 89148
5  (702) 475-7964; Fax: (702) 946-1345
   dosborn@wrightlegal.net
6  *Attorneys for Defendant,*
   *Wells Fargo Bank, NA and Mortgage Electronic Registration Systems, Inc.*
7

8              **UNITED STATES DISTRICT COURT**
9                    **DISTRICT OF NEVADA**

10

11 DENNIS E. SCARBERRY,                    | Case No.:  2:12-cv-00128-KJD-CWH

12            Plaintiff,

13      vs.                                 **REQUEST FOR JUDICIAL  NOTICE**
                                            *(filed in support of Motion to Dismiss*
14                                          *Plaintiff's Complaint and Motion to*
   FIDELITY MORTGAGE OF NEW YORK, a         *Expunge Lis Pendens)*
15 Division of Delta Funding Corp.; OCWEN
   LOAN SERVICING COMPANY, LLC;
16 MORTGAGE ELECTRONIC
17 REGISTRATION SYSTEMS (herein MERS);
   WESTERN PROGRESSIVE, LLC; HSBC
18 BANK USA, N.A.; CAL-WESTERN
   RECONVEYANCE CORP.; WELLS FARGO
19 BANK, NA; RENAISSANCE MORTGAGE
   ACCEPTANCE CORPORATION; LSI TITLE
20 AGENCY INC, and DOES 1-50, inclusive.
21
22            Defendants.

23

24
   COMES NOW Defendant, WELLS FARGO BANK, N.A., by and through their attorneys of
25
   record, ROBIN PREMA WRIGHT, ESQ. and DONNA M. OSBORN, ESQ. of the law firm of
26
   WRIGHT, FINLAY & ZAK, LLP, and hereby requests that the Court take judicial notice of the
27
   following documents in support of its Motion to Dismiss Plaintiff's Complaint and Motion to
28
   Expunge Lis Pendens.

Page 1 of 3

1

2    1.   A true and correct copy of the Grant, Bargain, Sale Deed recorded in the Clark County

3         Recorder's Office as book and instrument number 19960731:0356 is attached to

4         Defendant's Request for Judicial Notice attached as **Exhibit 1.**

5    2.   A true and correct copy of the Deed of Trust recorded in the Clark County Recorder's

6         Office as book and instrument number 20070511-0002160 is attached to Defendant's

7         Request for Judicial Notice attached as **Exhibit 2.**

8    3.   A true and correct copy of the Notice of Default recorded in the Clark County

9         Recorder's Office as book and instrument number 20081215-0003905 is attached to

10        Defendant's Request for Judicial Notice attached as **Exhibit 3.**

11   4.   A true and correct copy of the Substitution recorded in the Clark County Recorder's

12        Office as book and instrument number 20090202-0001121 is attached to Defendant's

13        Request for Judicial Notice attached as **Exhibit 4.**

14   5.   A true and correct copy of the Assignment recorded in the Clark County Recorder's

15        Office as book and instrument number 20090204-003037 is attached to Defendant's

16        Request for Judicial Notice attached as **Exhibit 5.**

17   6.   A true and correct copy of the Notice of Rescission recorded in the Clark County

18        Recorder's Office as book and instrument number 20090317-0000190 is attached to

19        Defendant's Request for Judicial Notice attached as **Exhibit 6.**

20   7.   A true and correct copy of the Notice of Default recorded in the Clark County

21        Recorder's Office as book and instrument number 201009300001285 is attached to

22        Defendant's Request for Judicial Notice attached as **Exhibit 7.**

23   8.   A true and correct copy of the Substitution recorded in the Clark County Recorder's

24        Office as book and instrument number 201104220004027 is attached to Defendant's

25        Request for Judicial Notice attached as **Exhibit 8.**

26   9.   A true and correct copy of the Certificate recorded in the Clark County Recorder's

27        Office as book and instrument number 20110504-0000962 is attached to Defendant's

28        Request for Judicial Notice attached as **Exhibit 9.**

10. A true and correct copy of the Notice of Trustee's Sale recorded in the Clark County Recorder's Office as book and instrument number 201106150000121is attached to Defendant's Request for Judicial Notice attached as **Exhibit 10.**

11. A true and correct copy of the Notice of Trustee's Sale recorded in the Clark County Recorder's Office as book and instrument number 20111229-0000456 is attached to Defendant's Request for Judicial Notice attached as **Exhibit 11.**

Dated: 3 1st day of Ja 2012.

WRIGHT, FINLAY & ZAK, LLP

Donna M. Osborn, Esq.
Nevada Bar No. 6527
5532 South Fort Apache Road, Suite 110
Las Vegas, NV 89148
*Attorney for Wells Fargo Bank, NA and Mortgage
Electronic Registration Systems, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of WRIGHT, FINLAY & ZAK, LLP; that I electronically served the foregoing **CERTIFICATE OF INTERESTED PARTIES** to all parties and counsel as identified on the Court-generated Notice of Electronic Filing.

Dennis E. Scarberry
3005 Milton Pace
North Las Vegas, NV 89032
*Plaintiff in Proper Person*

An Employee of WRIGHT, FINLAY & ZAK, LLP

# Exhibit 1

# Exhibit 1

# Exhibit 1

9oO731.O3506

Escrow Number: 793648 SAJ/ao

WHEN RECORDED, MAIL TO:
Dennis E. Scarberry
3005 Milton Place
No. Las Vegas, NV 89030

RPTT:     $170.30
APN#:     139 08 112 021

## GRANT, BARGAIN and SALE DEED

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Larry Gaylord Baaske and Margaret E. Baaske, husband and wife, as joint tenants**

do(es) hereby GRANT, BARGAIN, and SELL to

Dennis E. Scarberry, an unmarried man

the real property situate in the County of Clark, State of Nevada, described as follows:

**Lot Sixty Three (63) in Block Two (2) of Casa Linda Unit 12 A, as shown by map thereof on file in Book 49 of Plats, Page 24, in the Office of the County Recorder of Clark County, Nevada.**

Subject to:
1.  All general and special taxes for the fiscal year 1996-1997.
2.  Covenants, Conditions, Restrictions, Reservations, Rights, Rights of Way and Easements now of record.

TOGETHER with all tenements, hereditaments and appurtenances, including easements and water rights, if any, thereto belonging or appertaining, and any reversions, remainders, rents, issues or profits thereof.

*Larry Gaylord Baaske*   7-23-96
Larry Gaylord Baaske          Date

*Margaret E. Baaske*   7-23-96
Margaret E. Baaske            Date

STATE OF NEVADA        )
                       : ss.
COUNTY OF CLARK        )

This instrument was acknowledged before me
on    7-23-96      by
**Larry Gaylord Baaske and Margaret E. Baaske**

_____
Notary Public
(My commission expires:    Feb 22 1997 )

NISHA SAHNI
Notary Public - Nevada
Clark County
My appt. exp. Feb. 22, 1997

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF:
FIRST AMERICAN TITLE COMPANY OF
07-31-96    16:33    DB1
        OFFICIAL RECORDS
BOOK   960731   INST:   03506
FEE     7.00  RPTT     170.30

**Exhibit 2**

**Exhibit 2**

**Exhibit 2**

139-08-112-021

Refin 10
**Lenders First Choice**
Attn: Recording Dept.
3803 Parkwood Blvd, Ste 100
Frisco, TX 75034

After Recording Return To: Prepared By

Fidelity Mortgage of NY
1000 Woodbury Rd, PO Box 9009
Woodbury, NY 11797
Attention: Documenting Control Dept, 3rd floor.

APN# 139-08-112-021

36-227964 _____ [Space Above This Line For Recording Data] _____

## DEED OF TRUST

20070511-0002160

Fee: $30.00
N/C Fee: $0.00

05/11/2007                11:17:08
T20070083609
Requestor:
    RECORD SEARCHING SERVICES

Debbie Conway            RMS
Clark County Recorder    Pgs: 17

LENDER: (Fidelity Mortgage of NY a division of Delta Funding Corporation)
LOAN #: 0103394516

NOMINEE: MERS, MIN Number#: 100076600001118821

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated April 30th, 2007, together with all Riders to this document.
(B) "Borrower" is Dennis E. Scarberry, Borrower is the trustor under this Security Instrument. SINGLE

(C) "Lender" is Fidelity Mortgage of NY a division of Delta Funding Corporation. Lender is a corporation or association organized and existing under the laws of New York. Lender's address is 1000 Woodbury Road , Woodbury, New York 11797.
(D) "Trustee" is Cal-Western Reconveyance Corporation, 525 East Main Street, El Cajon, CA 92022.
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated April 30th, 2007. The Note states that Borrower owes Lender two hundred seven thousand five hundred Dollars (U.S.$207,500.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than June 1st, 2037.
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (page 1)          (MERS)          Form 3029   1/01   (page 1 of 16)

(I) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower:

☐ Adjustable Rate Rider     ☐ Condominium Rider     ☐ Second Home Rider
☐ Balloon Rider     ☐ Planned Unit Development Rider     ☐ Other(s) [specify]_____
☐ 1-4 Family Rider     ☐ Biweekly Payment Rider

(J) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "**Escrow Items**" means those items that are described in Section 3.
(N) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.

NEVADA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT *page1*     (MERS)     Form 3029   1/01   *page 2 of 16*

For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

County _____ of _____ Clark _____ :

**See Property Description**

which currently has the address of **3005 Milton Pl** _____

__ North Las Vegas _____, Nevada __89032_____, (Property Address):

Section:        Block: 2        Lot: 63

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

NEVADA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
*wzrd*                                                                                           (MERS)                    Form 3019    1/01   *(page 3 of 16*

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   · 2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note. If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    (MERS)    Form 3029    1/01    (page 4 of 16 pages)

Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this

If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)    Form 3029    1/01    (page 5 of 11)

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
pages)                                                          (MERS)              Form 3029   1/01   (page 7 of 16

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
pages)                                         (MERS)             Form 3029    1/01   (page 8 of 16

If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a nonrefundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a nonrefundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          (MERS)        Form 3029    1/01   (page 10 of 16 pages)

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    (MERS)    Form 3029    1/01    (page 11 of 16)

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (paper)    (MERS)    Form 3029    1/01    (page 12 of 16)

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)     Form 3029   1/01   (page 13 of 16)

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     (MERS)     Form 3029   1/01 (page 14 of 16 pages)

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lenders' election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail notice of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Assumption Fee. If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $750.00.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)    Form 3829    1/01  (page 15 of 16)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ Seal
Dennis E. Scarberry                -Borrower

_____ Seal
                                   -Borrower

_____ Seal
                                   -Borrower

_____ Seal
                                   -Borrower

_____ [Space Below This Line For Acknowledgement]_____

**STATE OF NEVADA**

                SS:

**COUNTY OF:** CLARK

On this 30th day of April, 2007, before me personally appeared Dennis E. Scarberry, to me known to be the person described in and who executed the foregoing instrument, and acknowledge that he/she executed the same as his/her free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

_____
Notary Public

My term expires: DEC 23, 2008

```
CARL ROSS
Notary Public, State of Nevada
Appointment No. 04-93270-1
My Appt. Expires Dec 23, 2008
```

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
page)

(MERS)

Form 3029    1/01  (page 16 of 16)

## SCHEDULE "A"

THE REAL PROPERTY SITUATE IN THE COUNTY OF CLARK, STATE OF
NEVADA, DESCRIBED AS FOLLOWS:

LOT SIXTY THREE (63) IN BLOCK TWO (2) OF CASA LINDA UNIT 12 A, AS
SHOWN BY MAP THEREOF ON FILE IN BOOK 49 OF PLATS, PAGE 24, IN THE
OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

FOR INFORMATIONAL PURPOSES ONLY: THE APN IS SHOWN BY THE COUNTY
ASSESSOR AS 139-08-112-021; SOURCE OF TITLE IS DOCUMENT NO.
960731-03506 (RECORDED 07/31/96)

## Exhibit 3

## Exhibit 3

## Exhibit 3

||| ||| || ||| |||| || ||||| || | || ||||||||
## 20081215-0003905
Fee: $16.00        RPTT: $0.00
N/C Fee: $0.00
12/15/2008                16:10:05
T20080310691
Requestor:
  FIDELITY NATIONAL DEFAULT SO
Debbie Conway          AEA
Clark County Recorder      Pgs: 3

Recording requested by:

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711

---

Assessors Parcel No(s): 139-08-112-021

Space above this line for recorders use only

TS # NV-08-223669-CL          Order # 080141734-NV-LPI          Loan # 103394516

### Notice of Breach and Default and of Election to Cause Sale of Real Property Under Deed of Trust

NOTICE IS HEREBY GIVEN: That Quality Loan Service Corp. is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 4/30/2007, executed by DENNIS E. SCARBERRY, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FIDELITY MORTGAGE OF NY A DIVISION OF DELTA FUNDING CORPORATION, A CORPORATION, as beneficiary, recorded 5/11/2007, as Instrument No. xxx, in Book 20070511, Page 0002160 of Official Records in the Office of the Recorder of  CLARK County, Nevada securing, among other obligations including 1 NOTE(S) FOR THE ORIGINAL sum of $207,500.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of principal and interest plus impounds and advances which became due on 9/1/2008 plus amounts that are due or may become due for the following: late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustees fees, and any attorney fees and court costs arising from or associated with beneficiaries effort to protect and preserve its security must be cured as a condition of reinstatement.

That by reason thereof the present Beneficiary under such deed of Trust has executed and delivered to said duly appointed Trustee a written Declaration of Default and Demand for Sale and has deposited with said duly appointed Trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

### NOTICE

You may have the right to cure the default hereon and reinstate the one obligation secured by such Deed of Trust above described.  Section NRS 107.080 permits certain defaults to be cured upon the payment of the amounts required by that statutory section without requiring payment of that portion of principal and interest which would not be due had no default occurred.  Where reinstatement is possible, if the default is not cured within 35 days following recording and mailing of this Notice to Trustor or Trustor's successor in interest, the right of reinstatement will terminate and the property may thereafter be sold.  The Trustor may have the right to bring a court action to assert the nonexistence of a default or any other defense of Trustor to acceleration and Sale.

TS No.: NV-08-223669-CL
Loan No.: 103394516
Notice of Default
Page 2

**To determine if reinstatement is possible and the amount, if any, to cure the default, contact:**

Ocwen Loan Servicing, LLC
C/O Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Dated: 12/15/2008              **Quality Loan Service Corp., AS AGENT FOR BENEFICIARY**
                               **BY: LSI Title Company** _Its Agent_

                               By: _Linda Perez, Authorized Signer_

State of _____ ) ss.
County of _____ )

This Instrument was acknowledged before me, a notary public, by
_____ on _____, 20___.

_____
Notary Public

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

State of California

County of Orange

On _____12/15_____ 2008 before me, **Jejara Garcianni,** Notary Public, personally appeared **Linda Perez,** who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

*loosely attached to Notice of Default       LPS ref # 014173Ч      -NV-LPI

> **JEJARA GARCIANNI**
> Commission # 1716976
> Notary Public - California
> Orange County
> My Comm. Expires Jan 21, 2011

||||| ||| ||| ||| ||| ||| | ||| ||| |||||| ||| |||
20090202−0001121
Fee: $15.00    RPTT: $0.00
N/C Fee: $25.00
02/02/2009       09:19:54
T20090034786
Requestor:
  FIDELITY NATIONAL DEFAULT SO
Debbie Conway       GWC
Clark County Recorder     Pgs: 2

Recording requested by:

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711

Space above this line for recorders use only

TS # NV-08-223669-CL         Order # 080141734-NV-LPI         Loan # 103394516
Assessors Parcel No(s): 139-08-112-021

### Substitution of Trustee

WHEREAS, DENNIS E. SCARBERRY was the original Trustor, CAL-WESTERN RECONVEYANCE CORPORATION was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FIDELITY MORTGAGE OF NY A DIVISION OF DELTA FUNDING CORPORATION, A CORPORATION was the original Beneficiary under that certain Deed of Trust dated 4/30/2007 and recorded on 5/11/2007 as Instrument No. 20070511-0002160, in book xxx, page xxx of Official Records of CLARK COUNTY, NV; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and stead of said original Trustee, or Successor Trustee, thereunder, in the manner provided for in said Deed of Trust,

NOW, THEREFORE, the undersigned hereby substitutes QUALITY LOAN SERVICE CORPORATION ,as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Page 1

Substitution of Trustee – NV
TS # NV-08-223669-CL
Page 2

Dated: 12/15/2008

HSBC Bank USA, N.A., as Trustee for the registered
holders of Renaissance Equity Loan Asset-Backed
Certificates, Series 2007-3

By: **Michael Moreland, Director of Mortgage Services**

State of    Florida        ) ss

County of  Orange          )

On January 22, 2009 before me, ___C. Delgado___ the undersigned
Notary Public, personally appeared **Michael Moreland, Director of Mortgage Services**
personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

WITNESS my hand and official seal.                          (Seal)

_____
Signature

NOTARY PUBLIC-STATE OF FLORIDA
C. Delgado
Commission # DD435183
Expires: MAY 30, 2009
Bonded Thru Atlantic Bonding Co., Inc.

Page 2

# **Exhibit 5**

# **Exhibit 5**

# **Exhibit 5**

||||| ||| || ||| ||||| ||||| || | |||| ||||||
20090204-0003037
Fee: $15.00    RPTT: $0.00
N/C Fee: $0.00
02/04/2009         14:35:30
T20090039156
Requestor:
  FIDELITY NATIONAL DEFAULT SO
Debbie Conway        STN
Clark County Recorder      Pgs: 2

Prepared by: Maria Alvarez
Ocwen Loan Servicing,LLC
1661 Worthington Road, Suite 100
West Palm Beach, Florida, 33409
Phone Number: 561-682-8835
5510339451618
Attorney Code: 11799
AP# 139-08-112-021
080141734

## ASSIGNMENT OF DEED OF TRUST
## NEVADA

This **ASSIGNMENT OF DEED OF TRUST** is made and entered into as of this 7TH  day of MAY,
2007 , from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., whose address is P.O. Box
2026, Flint, MI  48501-2026, its successors and assigns, as nominee for FIDELITY MORTGAGE OF NY A
DIVISION OF DELTA FUNDING CORPORATION, its successors and assigns, ("Assignor) to HSBC
BANK USA, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF RENAISSANCE EQUITY
LOAN ASSET-BACKED CERTIFICATES, SERIES 2007-3, whose address is c/o Ocwen Loan
Servicing,LLC, 1661 Worthington Road, Suite 100, West Palm Beach, Florida, 33409, all its rights, title
and interest in and to a certain mortgage duly recorded in the Office of the County Recorder of CLARK
County, State of NEVADA, as follows;

Trustor: DENNIS E. SCARBERRY
Trustee: CAL-WESTERN RECONVEYANCE CORPORATION
Beneficiary:   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS
NOMINEE FOR FIDELITY MORTGAGE OF NY A DIVISION OF DELTA FUNDING CORPORATION
Document Date: APRIL 30, 2007
Date Recorded: **5/11/07**
Document/Instrument/Entry Number: **20070511~ 0062160**
Property Address: 3005 MILTON PLACE, NORTH LAS VEGAS, NV
APN:139-08-112-021

*Property more particularly described in the above referenced recorded Deed of Trust*

Together with any and all notes and obligations therein described or referred to, the debt
respectively secured thereby and all sums of money due and to become due thereon, with interest
thereon, and attorney's fees and all other charges.
This Assignment is made without recourse, representation or warranty.

DATED: JANUARY 21, 2009.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
ACTING SOLELY AS NOMINEE FOR FIDELITY MORTGAGE OF NY
A DIVISION OF DELTA FUNDING CORPORATION

BY:
NAME: Scott Anderson
TITLE: Vice President

STATE OF FLORIDA                    )
                                    )SS.
COUNTY OF PALM BEACH                )

      On JANUARY 21, 2009, before me, the undersigned, a Notary Public in and for said State,
personally appeared Scott Anderson, the Vice President at MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR FIDELITY MORTGAGE OF NY A DIVISION OF
DELTA FUNDING CORPORATION, personally known to me to be the person whose name is subscribed
to the within instrument and acknowledged to me that he executed the same in his authorized capacity,
and that by his signature on the instrument the entity upon behalf of which the person acted, executed the
instrument.

      Witness my hand and official seal.

_____                    NOTARY PUBLIC-STATE OF FLORIDA
Notary Signature                                    Leticia N. Arias
                                            Commission #DD737904
                                            Expires:  NOV. 29, 2011
                                    BONDED THRU ATLANTIC BONDING CO., INC.

MIN: 100076600001118821                    MERS Ph.#:  (888) 679 – 6377

# Exhibit 6

# Exhibit 6

# Exhibit 6

*ι*    *-ِ*

Recording requested by:

When recorded mail to:

Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

||||| ||| ||| | |||||||| | ||| | ||| | ||||| |||
20090317-0000190
Fee: $15.00     RPTT: $0.00
N/C Fee: $0.00
03/17/2009     08:18:11
T20090089945
Requestor:
  FIDELITY NATIONAL DEFAULT SO
Debbie Conway      SOL
Clark County Recorder    Pgs: 2

APN:  139-08-112-021

Order No.: 080141734-NV-LPI          Ln No.: 103394516

SPACE ABOVE THIS LINE FOR RECORDER'S USE
TS No.: NV-08-223669-CL

## Notice Of Rescission Of Notice Of Default

**NOTICE IS HEREBY GIVEN:** That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **4/30/2007**, executed by **DENNIS E. SCARBERRY**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FIDELITY MORTGAGE OF NY A DIVISION OF DELTA FUNDING CORPORATION, A CORPORATION**, as Beneficiary, recorded **5/11/2007**, as Instrument No.**20070511-0002160**, in book **xxx**, page **xxx** of Official Records in the Office of the Recorder of **CLARK** County, Nevada describing land therein as more fully described on the above referenced deed of trust.

said obligations including one note for the sum of **$207,500.00.**

Whereas, the present beneficiary under that certain Deed of Trust herein above described, heretofore delivered to the Trustee thereunder written Declaration of Default and Demand for Sale; and Whereas, Notice was heretofore given of breach of obligations for which said Deed of Trust is security and of election to cause to be sold the property therein described; and Whereas, a Notice of Default was recorded on the day and in the book and page set forth below:

Notice was recorded on **12/15/2008** in the office of the Recorder of **CLARK** County, Nevada, Instrument No. **20081215-0003905**, in Book **xxx**, Page **xxx**, of Official Records.

**NOW; THEREFORE, NOTICE IS HEREBY GIVEN** that the present Beneficiary and/or the Trustee, does hereby rescind, cancel and withdraw said Declaration of Default and Demand for Sale and said Notice of Breach and Election to Cause Sale; it being understood, however, that this rescission shall not in any manner be construed as waiving or affecting any breach or default past, present or future under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, and shall no way jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, conditions or obligations thereof, and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Notice of Breach had not been made and given.

TS No.: NV-08-223669-CL
Loan No.: 103394516
Rescission of Notice of Default
Page 2

Dated: 3/12/2009                    **Quality Loan Service Corp., AS AGENT FOR BENEFICIARY**

                        By: _____
                            Vanessa Gonzales, Assistant Secretary

                            Vanessa Gonzales, Asst. Sec.

State of California   )
County of San Diego)

On  5/13/09  before me, **D. E. Turner** a notary public, personally appeared Vanessa Gonzales, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____  (Seal)
            D. E. Turner

D. E. TURNER
COMM. # 1830006
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Comm. Exp. Jan. 9, 2013

# Exhibit 7

# Exhibit 7

# Exhibit 7

Inst #: 201009300001285
Fees: $217.00
N/C Fee: $25.00
09/30/2010 09:48:24 AM
Receipt #: 522612
Requestor:
FIDELITY NATIONAL DEFAULT S
Recorded By: BGN  Pgs: 4
DEBBIE CONWAY
CLARK COUNTY RECORDER

WHEN RECORDED MAIL TO:
Western Progressive, LLC
P.O. Box 100029
Kennesaw, GA 30156

APN: 139-08-112-021
TS No.: 2010-05582
Loan No.: 103394516

*100583106*

The undersigned hereby affirms that there is no Social Security number contained in this document.

## NOTICE OF BREACH AND DEFAULT AND OF ELECTION TO CAUSE SELL OF REAL PROPERTY UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally thirty-five (35) days from the date this Notice of Default may be recorded. No sale date may be set until three months from the date this Notice of Default may be recorded (which date of recordation appears on this notice). This amount is $6,113.14 as of 9/29/2010 and will increase until your account becomes current. Included with this Notice of Default, please see "Exhibit A" - Nevada HUD Approved Housing Counseling Agency Contacts for a listing of local housing counseling agencies approved by the United States Department of Housing and Urban Development (HUD).**

**NOTICE IS HEREBY GIVEN THAT: Western Progressive, LLC** is the duly appointed Trustee under a Deed of Trust dated **4/30/2007**, executed by **DENNIS E. SCARBERRY,** as trustor in favor of **FIDELITY MORTGAGE OF NY A DIVISION OF DELTA FUNDING CORPORATION. A CORPORATION OR ASSOCIATION, As Lender, Mortgage Electronic Registration Systems, Inc.,** recorded **5/11/2007,** under instrument no. **20070511-0002160,** in book ---, page ---, **and rerecorded on --- as ---** of Official Records in the office of the County recorder of **Clark,** County, Nevada securing, among other obligations.

Property Address: **3005 Milton Place, North Las Vegas, NV 89032**

One Note for the Original sum of **$207,500.00,** that the beneficial interest under such Deed of Trust and the obligations secured hereby are presently held by the undersigned; that a breach of and default in the obligations for which such Deed of Trust is security has occurred or that payment has not been made of:

Installment of Principal and Interest plus impounds and/or advances which became due on 6/1/2010 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to, foreclosure trustee fees and costs, advances and late charges.

Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance.

Nothing in this notice of default should be construed as a waiver of any fees owing to the beneficiary under the deed of trust, pursuant to the terms and provisions of the loan documents.

**T.S. No.: 2010-05582     Loan No.: 103394516**

That by reason thereof the present Beneficiary under such deed of Trust has executed and delivered to said duly appointed Trustee a written Declaration of Default and Demand for Sale and has deposited with said duly appointed Trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

## NOTICE

You may have the right to cure the default hereon and reinstate the one obligation secured by such Deed of Trust above described. Section NRS 107.080 permits certain defaults to be cured upon the Payment of the amounts required by that statutory section without requiring payment of that portion of principal and interest which would not be due had no default occurred. Where reinstatement is possible, if the default is not cured within 35 days following recording and mailing of this Notice to Trustor or Trustor's successor in interest, the right of reinstatement will terminate and the property may thereafter be sold. The Trustor may have the right to bring a court action to assert the nonexistence of a default or any other defense of Trustor to acceleration and Sale.

**To determine if reinstatement is possible and the amount, if any, to cure the default, contact:**

1661 Worthington Road
West Palm Beach, FL 33409
C/O Western Progressive, LLC
P.O. Box 100029
Kennesaw, GA 30156
Phone: HRC Litigation Contact (877) 528-5606 or (877) 528-5622

Included with this Notice of Default:

Contact information for which the grantor may use to reach a person with authority to negotiate a loan modification on behalf of the lender:

HRC Litigation
866-788-6435

Additionally included with this Notice of Default, please see "Exhibit A" - Nevada HUD Approved Housing Counseling Agency Contacts for a listing of local housing counseling agencies approved by the United States Department of Housing and Urban Development (HUD).

If you have any questions, you should contact a lawyer or the governmental agency that may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

**T.S. No.: 2010-05582        Loan No.: 103394516**

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

WE ARE ASSISTING THE BENEFICIARY TO COLLECT A DEBT AND ANY INFORMATION WE OBTAIN WILL BE USED FOR THE PURPOSE BY EITHER OURSELVES OR THE BENEFICIARY, WHETHER RECEIVED ORALLY OR IN WRITING. YOU, MAY DISPUTE THE DEBT OR A PORTION THEREOF UPON WRITTEN REQUEST WITHIN THIRTY (30) DAYS. THEREAFTER WE WILL OBTAIN AND FORWARD TO YOU WRITTEN VERIFICATION THEREOF. SHOULD YOU NOT DO SO THE DEBT WILL BE CONSIDERED VALID. IN ADDITION, YOU MAY REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT ONE.

Dated:9/29/2010

Western Progressive, LLC, as agent for beneficiary
By  LSI TITLE AGENCY, INC, AS AGENT

By: _____
(BSheppard)

State of GA }ss
County of Cobb}

On 9/29/2010 before me, Notary Public, personally appeared _____ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature _____ (Seal)

State of California

County of Orange

On _____ before me, Enedina O. Sanchez

Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ Seal

Enedina O. Sanchez

ENEDINA O. SANCHEZ
Commission # 1796125
Notary Public - California
Orange County
My Comm. Expires Apr 21, 2012

# Exhibit 8

# Exhibit 8

# Exhibit 8

RECORDING REQUESTED BY:

LSI Title Agency - FIS Default Solutions

AND WHEN RECORDED MAIL TO:
Western Progressive, LLC
P.O. Box 100029
Kennesaw, GA 30156
APN: 139-08-112-021

Inst #: 201104220004027
Fees: $14.00
N/C Fee: $25.00
04/22/2011 01:42:48 PM
Receipt #: 750212
Requestor:
LSI TITLE AGENCY INC.
Recorded By: AEA  Pgs: 1
DEBBIE CONWAY
CLARK COUNTY RECORDER

100583106

TS No.: 2010-05582   5510339451644

SPACE ABOVE THIS LINE FOR RECORDER'S USE

The undersigned hereby affirms that there is no Social Security number contained in this document.

# SUBSTITUTION OF TRUSTEE

WHEREAS, DENNIS E. SCARBERRY was the original Trustor, CAL-WESTERN RECONVEYANCE CORPORATION was the original Trustee, and FIDELITY MORTGAGE OF NY A DIVISION OF DELTA FUNDING CORPORATION. A CORPORATION OR ASSOCIATION, As Lender, Mortgage Electronic Registration Systems, Inc. was the original Beneficiary under that certain Deed of Trust dated 4/30/2007 and recorded on 5/11/2007 as Instrument No. 20070511-0002160, in book —, page — and rerecorded on — as — of Official Records of Clark County, Nevada; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitutes Western Progressive, LLC, P.O. Box 100029 Kennesaw, GA 30156 as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: 4-11-11

HSBC Bank USA, N.A., as Trustee for the registered holders of Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3, By Ocwen Loan Servicing, LLC its attorney-in-fact

JOLENE A. STRATTON

*Power of Attorney Recorded on: MAY 14, 2007*
*Book: 20070514 Instrument number : 89*
Supervisor, Repurchasing
and Compliance

State of Florida    } ss.
County of Palm Beach  }

On 4-11-11    before me,    Kyle Gardner    personally appeared

JOLENE A. STRATTON    who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Florida that the foregoing paragraph is true and correct.

WITNESS my hand and official seal. (seal)

Signature Kyle Gardner

Notary Public State of Florida
Kyle D Gardner
My Commission EE071202
Expires 03/07/2015

# Exhibit 9

# Exhibit 9

# Exhibit 9

APN: **139-08-112-021**

Recording requested by:

_____

_____

_____

When recorded, mail to:

_____

After Recording please return to:
Western Progressive Trustee
2002 Summit Boulevard, Suite 600
Atlanta, GA 30319

Inst #: 201105040000962
Fees: $14.00
N/C Fee: $0.00
05/04/2011 10:20:50 AM
Receipt #: 763303
Requestor:
LSI TITLE AGENCY INC.
Recorded By: MSH  Pgs: 1
DEBBIE CONWAY
CLARK COUNTY RECORDER

/00583106

# CERTIFICATE

## STATE OF NEVADA
### FORECLOSURE MEDIATION PROGRAM

Property Owner(s):
**Scarberry, Dennis E**

Property Address:

**3005 Milton Pl
North Las Vegas, NV 89032**

Trustee:

**Western Progressive, LLC
PO Box 100029 Kennesaw, GA 30156**

Deed of Trust Doc Number:
**5/11/2007** *2010-05582*

Book:          Page:
*20070511 -00002160*

■ **Non-Applicable Property:** The Beneficiary may proceed with the foreclosure process.

☐ **No Agreement:** A Foreclosure Mediation Conference was held on _____. The parties were unable to agree to a resolution of this matter. The Beneficiary may proceed with the foreclosure process.

☐ **Relinquish the Property:** A Foreclosure Mediation Conference was held on _____. The parties agreed homeowner would voluntarily relinquish the property. The mediation required by law has been completed in this matter. The Beneficiary may proceed with the foreclosure process.

☐ **Grantor Non-Compliance:** The Grantor or person who holds the title of record did not attend the Foreclosure Mediation Conference or failed to produce the necessary disclosure forms. The Beneficiary may proceed with the foreclosure process.

☐ **Certificate Reissuance:** The Beneficiary may proceed with the foreclosure process.

☐ **Court Ordered:** The Beneficiary may proceed with the foreclosure process.

NOD Date: 09-30-2010   Proof of Service Date: 10-05-2010

Certificate Issued Date: 04-13-2011

## FMP CERT: 2011-04-13-0096

# Exhibit 10

# Exhibit 10

# Exhibit 10

Inst #: 201106150000121
Fees: $15.00
N/C Fee: $25.00
06/15/2011 08:01:10 AM
Receipt #: 811990
Requestor:
LSI TITLE AGENCY INC.
Recorded By: MSH  Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

Western Progressive, LLC
2002 Summit Blvd, Suite 600
Atlanta, GA 30319

APN: 139-08-112-021
T.S. No.: 2010-05582
Loan No.: 103394516    *100583/06*

The undersigned hereby affirms that there is no Social Security number contained in this document.

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 4/30/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

TRUSTOR: DENNIS E. SCARBERRY
Duly Appointed Trustee: Western Progressive, LLC
Recorded 5/11/2007 as Instrument No. 20070511-0002160 in book —, page — of and rerecorded on — as — Official Records in the office of the Recorder of Clark County, Nevada, Described as follows:

LOT SIXTY THREE (63) IN BLOCK TWO (2) OF CASA LINDA UNIT 12 A, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 49 OF PLATS, PAGE 24, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

Date of Sale: 7/5/2011 at 10:00 AM
Place of Sale:    At the front entrance to Nevada Legal News located at 930 S. 4th Street, Las Vegas, Nevada
Estimated Sale Amount: $232,847.45
Street Address or other common designation of real property:    3005 Milton Place
North Las Vegas, NV 89032

A.P.N.: 139-08-112-021
The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

This property is sold as-is, lender is unable to validate the condition, defects or disclosure issues of said property and Buyer waives the disclosure requirements under NRS 113.130 by purchasing at this sale and signing said receipt.

Date: 6/13/2011

Western Progressive, LLC, as Trustee
c/o 18377 Beach Blvd., Suite 210
Huntington Beach, California 92648
For Non-Automated Sale Information, call: (866) 960-8299

Natalie Howard

State of GA }
COUNTY OF Dekalb}

On 6/13/2011 before me, Robin Leigh Pape, Notary Public, personally appeared Natalie Howard  personally known
to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which
the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature                                   (Seal)

ROBIN LEIGH PAPE
NOTARY PUBLIC
MY COMMISSION EXPIRES
FEBRUARY 20 2012

# Exhibit 11

# Exhibit 11

# Exhibit 11

APN: 139-08-112-021

Western Progressive, LLC
2002 Summit Blvd, Suite 600
Atlanta, GA 30319

T.S. No.: 2010-05582
Loan No.: 103394516

*100 58 3106*

Inst #: 201112290000456
Fees: $18.00
N/C Fee: $0.00
12/29/2011 08:06:24 AM
Receipt #: 1020559
Requestor:
LSI TITLE AGENCY INC.
Recorded By: ADF   Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

**The undersigned hereby affirms that there is no Social Security number contained in this document.**

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 4/30/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

TRUSTOR: **DENNIS E. SCARBERRY**

Duly Appointed Trustee: **Western Progressive, LLC**
Recorded 5/11/2007 as Instrument No. **20070511-0002160** in book ---, page --- of **and rerecorded on --- as ---** Official Records in the office of the Recorder of Clark County, Nevada, Described as follows:

LOT SIXTY THREE (63) IN BLOCK TWO (2) OF CASA LINDA UNIT 12 A, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 49 OF PLATS, PAGE 24, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA

Date of Sale: **1/23/2012 at 10:00 AM**
Place of Sale:      At the front entrance to Nevada Legal News located at **930 S. 4th Street, Las Vegas, Nevada**
Estimated Sale Amount: **$236,341.33**
Street Address or other common designation of real property:      **3005 Milton Place**
                                                                  **North Las Vegas, NV 89032**

A.P.N.: **139-08-112-021**
The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

This property is sold as-is, lender is unable to validate the condition, defects or disclosure issues of said property and Buyer waives the disclosure requirements under NRS 113.130 by purchasing at this sale and signing said receipt.

Date: **12/27/2011**

Western Progressive, LLC, as Trustee
c/o 18377 Beach Blvd., Suite 210
Huntington Beach, California 92648
For Non-Automated Sale Information, call: (866) 960-8299

Stephanie Spurlock

State of GA }ss
County of Dekalb

On **12/27/2011** before me, Tunisha Jennings Notary Public, personally appeared Stephanie Spurlock personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature                                          Seal

TUNISHA JENNINGS
NOTARY
EXPIRES
GEORGIA
JUNE 13, 2015
PUBLIC
DEKALB COUNTY