Jeffrey S. Allison
Nevada Bar No. 8949
HOUSER & ALLISON
A Professional Corporation
9970 Research Drive
Irvine, California 92618
Phone: (949) 679-1111/1112 fx

Stephanie Cooper-Herdman
Nevada Bar No. 5919
THE COOPER CASTLE LAW FIRM, LLP
5275 S. Durango Drive
Las Vegas, Nevada 89113
Phone: (702) 435-4175/877-7424 fx
Fax: (702) 877-7424

E-Filed on January 31, 2012

Attorneys for Defendants OCWEN LOAN SERVICING, LLC; WESTERN PROGRESSIVE, LLC; and HSBC BANK USA, N.A., as Trustee for the registered holders of Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3, erroneously named herein as HSBC BANK USA, NA

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DENNIS E. SCARBERRY, | CASE NO.: 2:12-cv-00128-KJD-CWH |
| Plaintiff(s), | HON. KENT J. DAWSON |
| vs. | |
| FIDELITY MORTGAGE OF NEW YORK, a Division of Delta Funding Corp.; OCWEN LOAN SERVICING, LLC; MORTGAGE ELECTRONIC REGISTRATION SERVICES (herein MERS); WESTERN PROGRESSIVE, LLC; HSBC BANK USA, NA; CAL-WESTERN RECONVEYANCE CORP; WELLS FARGO BANK, NA; RENAISSANCE MORTGAGE ACCEPTANCE CORPORATION; LSI TITLE AGENCY INC., and DOES 1-50 Inclusive; | **NOTICE OF JOINDER IN MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT AND TO EXPUNGE LIS PENDENS [DOCKET NOS. 8, 9, 12]; SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES** |
| Defendant(s) | |

## TO THE CLERK OF THE COURT AND THE PARTIES HEREIN:

1

**COMES NOW,** Defendants OCWEN LOAN SERVICING, LLC ("Ocwen"); WESTERN PROGRESSIVE, LLC ("WP"); and HSBC BANK USA, N.A., as Trustee for the registered holders of Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3, erroneously named herein as HSBC BANK USA, NA ("HSBC"), said parties collectively referred to hereafter as "Defendants," by and through counsel of record, and files this Joinder in any and all grounds and arguments in support of the Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim Upon Which Relief Can be Granted and Request for Judiciall Notice [Docket Nos. 8, 12], and Motion to Expunge Lis Pendens [Docket No. 9] filed on January 26 and 27, 2012 by Defendants WELLS FARGO BANK, NA ("Wells Fargo") and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS").

Accordingly, these Defendants will and hereby do move the above Court to dismiss Plaintiff's Complaint against it with prejudice pursuant to F.R.C.P. 12(b)(6) and to expunge Plaintiff's lis pendens pursuant to N.R.S. § 14.015. The Motion is made on the grounds as referenced that that Plaintiff's Complaint fails to state a claim against Defendants upon which relief can be granted. This Motion is based upon this Joinder and Notice, the referenced Motions to Dismiss and to Expunge with Memorandum of Points and Authorities and Request for Judicial Notice by Defendants Wells Fargo and MERS, the attached Supplemental Memorandum of Points and Authorities, and upon all pleadings, papers and documents on file herein, as well as any oral argument which may be presented at the time of the hearing or any matters of which judicial notice is requested or proper.

Pursuant to Local Rule 7-2, any Response and/or Opposition must be filed with the Court and served within 15 days after service. Any Reply must be filed with the Court and served within 11 days after service of any Response or Opposition.

2

1    DATED: January 31, 2012                    HOUSER & ALLISON
2                                               A Professional Corporation

3                                                /s/ Jeffrey S. Allison
4                                               Jeffrey S. Allison, Esq.
                                                Attorneys for Defendants
5                                               OCWEN LOAN SERVICING, LLC;
                                                WESTERN PROGRESSIVE, LLC; and
6                                               HSBC BANK USA, N.A., as Trustee for the
                                                registered holders of Renaissance Equity
7                                               Loan Asset-Backed Certificates, Series
                                                2007-3
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I:\CIVIL\OCWEN\Scarberry, Dennis\Pldgs\MTDFed.doc

## SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES

In addition to the Joinder by these Defendants in the Motions to Dismiss and to Expunge above, these Defendants supplement and offer the following additional points and authorities further establishing that Plaintiff's Complaint should be dismissed with prejudice against Defendants.

## I.    INTRODUCTION

Rather than stating claims for relief, Plaintiff's Complaint is essentially one challenging the origination and resulting foreclosure of his home refinance loan based on a number of erroneous legal theories.  (Cplt. ¶ 16).  These Defendants were not parties to the origination of the loan in April 2007 as established by the parties to the Note and Deed of Trust.  These Defendants are the subsequent assignee, transferee servicer while the loan was not yet in default, and the duly appointed foreclosure agent and substituted trustee.

The Complaint is a last ditch effort to avoid foreclosure of the loan in default for June 1, 2010 forward after Plaintiff's breach of the loan contract originated by parties other than these Defendants, breach of prior forbearance agreements given by these Defendants, breach of a prior loan modification given under the HAMP program by these Defendants, and his Bankruptcy filed in 2011.[1]  Plaintiff's loan remains in default and Defendants are entitled to foreclose.  Nevada law and the public record upholds the authority and standing of these Defendants to exercise the power of sale.  Plaintiff's legal theories about proof of standing, holder status, and the recent amendments to Nevada's foreclosure statutes pursuant to AB284 effective October 1, 2011 after and inapplicable to the foreclosure notices in this matter, are rejected by courts around the country and in Nevada.

---

[1]  Plaintiff's attached "Statement of Fact" should be disregarded as based on erroneous legal conclusions and extraneous to the allegations and claims in the Complaint.

4

I:\CIVIL\OCWEN\Scarberry, Dennis\Pldgs\MTDFed.doc

Accordingly, each of Plaintiff's alleged claims fail as a matter of law.  Defendants' Motions should be granted with prejudice.

## II.   STANDARDS APPLICABLE TO MOTION

Under N.R.C.P. 12(b)(5), if the pleadings do not set forth the elements to make a prima facie claim supporting the relief sought, dismissal is proper.  Lubin v. Kunin 117 Nev.107, 17 P.3d 422, 427 (2001); Edgar v. Wagner, 101 Nev. 226, 699 P.2d 110 (1985).  A complaint may be dismissed for failure to state a claim where there it lacks a cognizable legal theory or sufficient facts under a cognizable legal theory.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008) (complaint "must allege sufficient facts 'to raise a right to relief above the speculative level.'"); Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (complaint does not allege sufficient facts to raise a right to relief above the speculative level if it contains nothing more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action.").  A motion to dismiss should be granted if the complaint presents claims that do not "raise a right to relief above the speculative level" or do not allege sufficient facts to state a claim that is plausible on its face.  Twombly at 558-59; Aschcroft v. Iqbal, 129 S.Ct. 1937, 1950, 55, 74 (2009).

With respect to the similar Federal Rule, the Court on a motion to dismiss need not accept as true unwarranted deductions of fact, legal characterizations, or conclusory allegations or unreasonable inferences in a complaint.  See, State of Nev. v. Buford, 708 F.Supp. 289, 292 (1989)(F.R.C.P. 12(b)(6)).  The Court may disregard allegations in a complaint if contradicted by facts established in documents exhibited, referenced, or which are central to the plaintiff's claims.  Id; and see, Wynn v. Clark Co. Bd. Of Com'rs., 74 Fed.Appx. 808, 809 (9th Cir. 2003) citing to, Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998)(F.R.C.P. 12(b)(6)).

If matters outside the pleadings are presented or proper, the Court may treat the motion as a motion for summary judgment. N.R.C.P. 12(b). In responding to a motion for summary judgment, the non-moving party "must show specific facts, rather than general allegations and conclusions, presenting a genuine issue of material fact for trial." LaMantia v. Redisi, 118 Nev. 27, 29; 38 P.3d 877, 879 (2002). "A genuine issue of material fact exists when a reasonable fact finder could return a verdict for the non-moving party." Id. at 29, 879. "The non-moving party is not entitled to build its case on the gossamer threads of whimsy, speculation and conjecture. Id. at 29, 879.

Whether by way of motion to dismiss or for summary judgment, judgment is proper where an essential element of a claim for relief is absent. Bulbman, Inc. v. Nevada Bell, 108 Nev. 105, 111, 825 P.2d 588, 592 (1992).

## III.   THE FIRST CLAIM LABELLED "COMPENSATORY DAMAGES" FAILS FOR FURTHER REASONS

Plaintiff's first claim is not a cognizable claim at all. It appears to be a declaratory relief request of sorts and along with the rest of the Complaint is essentially based on the origination of the loan in April 2007. Upon that premise, Plaintiff alleges Defendants have no standing and the foreclosure is void. Again as confirmed by the Complaint, the Note and recorded Deed of Trust, and the assignments and notices of public record, these Defendants were not involved nor parties to the loan as disclosed or originated with Plaintiff. Plaintiff's passing references to the purported fraud and deceptive loan or business practices, wrongful foreclosure, and breach of the implied covenant are addressed in Wells Fargo and MERS' Motions of which these Defendants join. Plaintiff's Complaint fails for additional reasons.

6

## A.  Fraud and Deceptive Loan Practices Claims are Barred by the Statute of Limitations

Plaintiff's allegations of fraud and deceptive loan practices are premised upon the loan as originated on April 30, 2007.  Fraud claims are subject to a three year statute of limitations. N.R.S. § 11.190(3)(d); and, see, Shupe v. Ham, 639 P.2d 540, 542 (Nev. 1982).  Claims for unfair lending practices under N.R.S. 598D and consumer fraud under N.R.S. § 41.600 are subject to the three year statute of limitations in this context.  N.R.S. § 11.190(3)(a).  Plaintiff's Complaint was filed on December 13, 2011 more than four years later.  As such, any such claims are time-barred.

## B.  Any Claim for Deceptive Trade Practices Further Fails

In addition to being time-barred, Plaintiff's passing references to deceptive loan or trade practices which is inapplicable to these Defendants as well.  A claim for deceptive trade practices is governed by Nevada's consumer fraud statutes, e.g. N.R.S. § 41.600(2)(d).[2]  N.R.S. § 598.0923 provides that person engages in "deceptive trade practices" when he knowingly (1) conducts business without a license; (2) fails to disclose a material fact in connection with the sale or lease of goods or services; (3) violates a statute or regulation relating to the sale or lease of goods and services; or (4) uses coercion, duress or intimidation in a transaction.[3]  As the title suggests, Title 598 governs deceptive **trade** practices in the **sale and lease of consumer goods and services** such as automobile loans.[4]  Title 598 is not made expressly applicable in the

---

[2] N.R.S. 41.600 states, in relevant part: "1. An action may be brought by any person who is a victim of consumer fraud. 2. As used in this section, "consumer fraud" means: (e) A deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive."

[3] Section 598.0923 was amended effective July 1, 2009.  See, 2009 Nevada Laws Ch. 266 (S.B. 276).
[4] See, Scaffidi v. United Nissan, 425 F.Supp.2d 1172 (D.Nev 2005); State ex rel. List v. Courtesy Motors, 590 P.2d 163, 95 Nev. 103 (Nev. 1975); State ex rel. List v. AAA Auto Leasing & Rental, Inc., 568 P.2d 1230, 93 Nev. 483 (Nev. 1977).

7

context of obtaining a home loan secured by real property of foreclosure thereof.  The only references to real property are in connection with sale and the Attorney General's ability to prosecute,[5] and in the context of a consumer transaction where a party is entitled to a return of a deposit or down payment.[6]

Plaintiff's Complaint does not allege that he is the Attorney General and there is no private right of action in this regard.  The Complaint does not allege that these Defendants sold or leased goods, services, or the secured real property to Plaintiffs.  There is no allegation of false advertising or refunds for goods, services, or a deposit in a defined consumer transaction. There is no allegation that these Defendants induced or forced Plaintiffs to enter into a defined consumer transaction.  No claim can be stated here.

## C. Plaintiff's Wrongful Foreclosure Action Is Barred Due to the Loan Default

An action for wrongful foreclosure will not lie if the borrower does not plead and "establish that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of power of sale."  See, Collins v. Union Federal Sav. & Loan Ass'n., 99 Nev. 284, 662 P.2d 610, 623 (1983); and see, Ernestberg v. Mortgage Investors Group, 2009 WL 160241, *6 (D.Nev.2009).  Thus, the plaintiff must show they were

---

[5] See, N.R.S. 598.096, which states: "When the Commissioner, Director or Attorney General has cause to believe that any person has engaged or is engaging in any deceptive trade practice, he may: (5) Pursuant to an order of any district court, impound any sample of property which is material to the deceptive trade practice and retain the property in his possession until completion of all proceedings as provided in N.R.S. 598.0903 to 598.0999, inclusive."

[6] N.R.S. 598.092 state, in relevant part: "A person engages in a deceptive trade practice when in the course of his business or occupation he:  Fails, in a **consumer transaction** that is rescinded, cancelled or otherwise terminated in accordance with the terms of an agreement, advertisement, representation or provision of law, to promptly restore to a person entitled to it a deposit, down payment or other payment or, in the case of property traded in but not available, the agreed value of the property, or fails to cancel within a specified time or an otherwise reasonable time an acquired security interest."  (**emphasis** added).

1  not "in default when the power of sale was exercised." Collins, 99 Nev. at 304. Without such a

2  claim, the presumption is that Defendants have the right to foreclose and Plaintiff cannot

3  maintain an action challenging an allegedly wrongful foreclosure. Id.[7]

4
   Plaintiff's Complaint does not include any allegation that Plaintiff reinstated or brought

5  the loan current after the power of sale was exercised or at any time before the filing of this

6
   action as would be required under Nevada law. The loan undisputedly remains in default as

7
   evident by the allegations and exhibits to the Complaint.[8]  Plaintiff's Complaint should be

8
   dismissed to the extent it seeks to challenge the foreclosure.

9

10

11

12  ///

13

14  _____

[7] Nevada follows to a large extent California foreclosure law. California courts have long established the
15  "tender rule," i.e. in order to maintain an action based on any claims challenging foreclosure. The
    borrower must first offer or actually pay the entire loan amount or at least the amount reasonably due.
16  See, Munger v. Moore, 11 Cal.App. 3d 1, 6, 89 Cal.Rptr. 323 (1970); FPCI Re-Hab 01 v. E & G
    Investments, Ltd., 207 Cal.App.3d 1018, 1022 (1989); United States Cold Storage v. Great Western
17  Savings & Loan Association, 165 Cal.App.3d 1214, 1225, 212 Cal.Rptr. 232 (1985); Arnolds
    Management Corp. v. Eishen , 158 Cal.App. 3d 575, 577, 205 Cal.Rptr. 15 (1984); Bisno v. Sax , 175
18  Cal.App.2d 715, 346 P.2d 814 (1995); was due); Arnolds Management Corp. v. Eischen, 158 Cal.App.3d
    575, 577-580, 205 Cal.Rptr. 15 (1984); Karlsen v. American Savings & Loan Association, 15 Cal.App.
19  3d 112 (1971). Courts in Nevada have followed an analogous tender rule as well. The tender rule was
    again recently confirmed by the Court stating that "reversing a [foreclosure] sale would be an
20  extraordinary act of equity in a case where there is in fact a default, and Plaintiffs have not indicated any
    ability or willingness to do equity (by paying the mortgage arrearage) to receive such a remedy." Olivas
21  v. Carrington Mortg. Loan Trust, 2011 WL 240229 * 4 (D.Nev. Jan. 20, 2011); and see, Smith v.
    Community Lending, 2011 WL 1127046 * 2 (D.Nev. March 29, 2011) (Under Nevada law, "no damages
22  claim for wrongful foreclosure lies where there is in fact a default.").

23  [8] Under the effective statutes at the time, a recorded substitution of trustee was not an express or statutory
24  prerequisite to the appointment of an agent of the beneficiary or successor trustee to commence
    foreclosure. N.R.S. §§ 107.080; and see, N.R.S. § 111.020 ("Every instrument…may be subscribed by
25  the lawful agent of such party"). There was no requirement that a Substitution of Trustee or an
    Assignment be recorded prior to a Notice of Default. In any event, the assignment from MERS to HSBC
26  c/o Ocwen as servicing agent was recorded 2/4/08, notice of default on 9/30/10 by WP as authorized
    "agent," followed by substitution of WP as the new trustee on 4/22/11, Certificate of mediation 5/4/11,
27  and then notice of sale on 12/29/2011 in compliance with N.R.S. §§ 107.080 in effect at the time and the
    Deed of Trust. (Wells Fargo and MERS RJN Exhs. 5, 7-9, 11).

28

IV.     **THE SECOND CLAIM FOR BREACH OF THE IMPLIED COVENANT OF**
        **GOOD FAITH AND FAIR DEALING FAILS AGAINST THESE DEENDANTS**

The elements of a claim for breach of the implied covenant are (1) a contract entered into between plaintiff and defendant; (2) an implied duty of good faith; (3) a special element of reliance or fiduciary duty where the defendant was in a superior or trusted position; (4) a breach of the contract by the defendant's misconduct; and (5) damages caused to plaintiff by the breach. Great Amer. Ins. Co. v. Gen. Builders, Inc. 113 Nev. 346, 354-355, 934 P.2d 257, 263 (1997).

Regarding the first element, courts hold that the implied covenant is dependent upon the express and enforceable contractual terms.  It cannot create, expand or contradict contractual terms no matter how seemingly unfair.  See, e.g., Storek & Storek, Inc. v. Citicorp Real Estate, Inc. 100 Cal.App.4th 44, 122 Cal.Rptr.2d 267, 276-77 (2002); Racine & Laramie, Ltd., Inc. v. Dept. of Parks and Recreation, 11 Cal.App.4th 1026, 1032 & 1043-45, 14 Cal.Rptr.2d 335 (1992).  As recognized by the authorities, there can be no claim for breach of the implied covenant if there is no enforceable contract provision or breach thereof.  Carma Developers, Inc. v. Marathon Dev. Cal., Inc., 2 Cal.4th 342, 374-75 (1992); and, c.f., Clark Co. Public Employees v. Pearson, 106 Nev. 587, 590, 798 P.2d 136, 137 (1990) (construction of a contractual term is a question of law).

Regarding the third element, Nevada courts have consistently held that "'a fiduciary duty exists in Nevada between doctor and patient, *Hoopes v. Hammargren*, 102 Nev. 425, 725 P.2d 238, 242 (Nev. 1986) and between attorney and client, *Stalk v. Mushkin*, 199 P.3d 838, 843 (Nev. 2009), but not between lender and debtor.'"  Weingartner v. Chase Home Fin., LLC, 702 F. Supp. 2d 1276, 1288 (D. Nev. 2010).  "Indeed, such parties are adversaries, not fiduciaries." Id.; and see, Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 882 (9th Cir. 2007) (noting that the district court in that case had held that the Nevada Supreme Court would not recognize a

10

fiduciary relationship as a matter of law between a lender and borrower). A lender or loan assignee does not owe a fiduciary or general negligence duty to a borrower. See, Cascade Investments, Inc. v. Bank of America, N.A., S.A., 2000 WL 1842945 * 2-3 (D.Nev. Sept. 29, 2000) (court granted lender's motion to dismiss because "plaintiffs have failed to establish that the relationship between the bank and the plaintiffs was more than just a normal lender-borrower relationship."); Larson v. Homecomings Financial, LLC, 680 F.Supp.2d 1230, 1236-37 (D.Nev. 2009)("Courts have repeatedly held that a lender owes no fiduciary duties to a borrower absent exceptional circumstances, such as when a special relationship exists between the two parties.").[9]

The Complaint does not include any claim against these Defendants for breach of contract or identify any contractual provision purportedly breached. As alleged and established, the loan contract was not with these Defendants and the Complaint does not allege a breach by Defendants of any consummated forbearance or loan modification agreement. Negotiations of a future possibility of a loan modification do not amount to a contract enforceable under the Statute of Frauds or give rise to a breach of the implied covenant claim. See, Vega v. CTX Mortgage Co., LLC, 2011 WL 192514 * 4 (D.Nev. Jan. 19, 2011) (in rejecting the plaintiff's breach of the implied covenant claim based on a promise of a loan modification and postponement of foreclosure, the Court held, "A promise to negotiate is not a promise to modify"). Without a contractual breach and fiduciary duty, there is no claim for breach of the implied covenant against these Defendants either.

---

[9]  California Courts also follow the general rule of no fiduciary or general negligence duty owed to a borrower by a lender, assignee or servicer. Nymark v. Hart Federal Savings & Loan Assoc. (1991) 231 Cal.App.3d 1089, 1096, 283 Cal.Rptr.53, 56-57 (no negligence duty owed by a conventional lender); and see, United States Cold Storage of Cal. v. Great Western Savings & Loan Assoc. (1985) 165 Cal.App.3d 1214, 212 Cal.Rptr. 232; Abdallah v. United Savings Bank (1996) 51 Cal.Rptr.2d 286, 43 Cal.App.4[th] 1101; Kim v. Sumitomo Bank of California (1993) 17 Cal.App.4[th] 974, 979, 21 Cal.Rptr.2d 834, 836.

**V.     COURTS REJECT PLAINTIFF'S THIRD CLAIM LABELLED LACK OF STANDING IN THIS CONTEXT**

In addition to the points and authorities in Wells Fargo and MERS' Motions, the following authorities reject Plaintiff's legal contentions about standing of MERS and the parties. The foreclosure notices in this matter pre-dated the October 1, 2011 amendments of AB284. The notices were governed exclusively by the Deed of Trust and N.R.S. § 107.080 *et seq.* in effect at the time.[10] The provisions of Section 107.080(b) and (c) at the time conferred the "power of sale" upon the "beneficiary, the successor in interest of the beneficiary or the trustee…or other person authorized." Thus, parties with express authority to foreclose include the loan beneficiary or holder, a designated agent, a substituted trustee, a successor or assignee, or other authorized person or entity including agents of these parties.

Courts across the nation confirm that MERS is an authorized nominee or agent for the lender, successors and assigns, and "any valid note holder" to commence foreclosure, appoint agents, substitute trustees, and assign loans.  Kiah v. Aurora Loan Servs. LLC, 10-40161, 2011 WL 841282 at *4 (D.Mass Mar. 4, 2011); Villa v. Silver State Fin. Services, Inc., 10-02024, 2011 WL 1979868, *6-7 (D.Nev. May 20, 2011) (rejecting plaintiffs' assertion that the beneficiary lacked authority to foreclose under NRS 107.080(2)(c) on basis that MERS could not assign any interest under the deed of trust or in the underlying debt).[11]  Nevada courts agree.[12]

---

[10]   State foreclosure law should not be second guessed or usurped.  BFP v. Resolution Trust Corporation 511 U.S. 531, 539-40, 544, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994); and see, Golden v. Tomiyasu 79 Nev. 503, 387 P.2d 989, 997 (1963).

[11]   See, e.g., Mortgage Electronic Registration Systems, Inc., v. Oscar Revoredo, 955 So.2d 33, 34 (Fl.App. 3 Dist. 2007) (MERS had standing to foreclose); Mortgage Electronic Registration Systems, Inc., v. George Azize, 965 So.2d 151 (Fl.App. 2 Dist. 2007) (fact that MERS was a nominee beneficiary did not deprive it of standing); Mortgage Electronic Registration Systems, Inc., v. Coakley, 2007 NY Slip Op 05478 (N.Y. App. Div., 6/19/2007); In re Mortgage Elec. Registration Systems (MERS) Litigation, Slip Copy 2011 WL 251453 * 5-6 (D.Ariz January 25, 2011) (in MERS MDL litigation, the court applied Nevada law and granted motions to dismiss as to MERS standing issues finding recent Bankruptcy

The Deed of Trust also authorized, *inter alia*, as follows:

- "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. (Deed of Trust ¶ 20).
- That the lender or beneficiary and its agents, successors and assigns could declare a default and commence foreclosure. (Deed of Trust ¶¶ 22, 24).
- That the lender or beneficiary and its agents, successors and assigns "may from time to time remove Trustee and appoint a successor trustee.... Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable law." (Deed of Trust ¶ 24).

(Wells Fargo and MERS' RJN Exh. 2).  Plaintiff's allegations regarding MERS and lack of standing, or a splitting of the Note and Deed of Trust, and a requirement to produce the original loan documents or proved a holder status prior to a non-judicial trustee's sale, all fail to state a claim as a matter of law.

**A.  Courts Reject Plaintiff's Contention that the Note and Deed of Trust Were Separated or Requirement to Produce the Original Note**

The Court in <u>Smith</u> cited above rejected Plaintiff's contentions about separation or split of the Note and Deed of Trust, and any requirement to produce the originals in this context. Other cases are in accord.  By order by the U.S. District Court Panel on Multi District Litigation

---

opinions otherwise where the creditor seeks affirmative relief to be out of context and inapplicable in wrongful foreclosure actions filed by borrowers); <u>Smith v. Bank of New York, as Trustee</u>, 366 B.R. 149, 151 (Bk.D.Colo. 2007) (court granted motion to dismiss holding that MERS functioning as the nominee for the lender and its assigns including assignees or transferees, had standing to enforce and conduct foreclosure on behalf of the holder beneficiary).

[12] See, <u>Orzoff v. MERS</u> 2:08-cv—01512, 2009 WL 4643229 at *6 (D.Nev. Mar. 26, 2009) ("This Court has previously determined that MERS does have such standing."); <u>Vasquez v. Aurora Loan Servs</u>, 2:08-cv-01800, slip op at 2 (D.Nev. Mar. 30, 2009) (loan documents sufficiently demonstrated standing by defendants including MERS "with respect to the loan and the foreclosure"); <u>Gonzales v. Home American Mort. Corp.</u>, 2:09-cv-00244, slip op at 7-9 (D.Nev. Mar. 12, 2009) (MERS and successor trustee have the power to initiate non-judicial foreclosure without presenting the note); <u>Croce v. Trinity Mortg. Assur. Corp. et al.</u>, 08-01612, 2009 WL 3172119, *5 (D.Nev. Sept. 28, 2009); <u>Ramos v. Mortgage Elec. Registrations System</u>, Inc., 2009 WL 5651132 at * 3 (D.Nev. Mar 05, 2009); <u>Smith v. Community Lending</u>, 2011 WL 1127046 * 1-2 (D.Nev. March 29, 2011) (dismissing claims similar to Plaintiff's herein and also reaffirming that a transfer of the Deed of Trust (e.g. by MERS) "and the interest in the note may follow the deed of trust as a matter of law.  *See* Restatement (Third) of Property (Mortgages) § 5.4(b).").

I:\CIVIL\OCWEN\Scarberry, Dennis\Pldgs\MTDFed.doc

1  in consolidated actions concerning MERS loans, the Court granted multiple motions to dismiss

2  by the defendant beneficiaries and loan servicers ruling in pertinent part as follows:

3
> Plaintiffs' "split the note" theory has been recognized by several courts in a
4
> particular context and to a limited extent….However, the situation in the cases
> before the Court differs in one important respect: they concern non-judicial
5
> foreclosures under Nevada law. "Defendants do not need to produce the note to the
> property in order to proceed with a non-judicial foreclosure." *Urbina v. Homeview*
6
> *Lending Inc.*, 681 F. Supp. 2d 1254 (D. Nev. 2009) (dismissing Plaintiffs'
> allegations that Defendants did not possess the original note); *see also Mansour v.*
7
> *Cal-Western Reconveyance Corp.*, 618 F.Supp.2d 1178, 1181 (D. Ariz. 2009)
> (rejecting similar "show me the note" argument under Arizona's non-judicial
8
> foreclosure law and collecting cases with similar holdings).

9
> Plaintiffs further argue that when "the note is split from the deed of trust, then the
10
> note becomes unsecured and a person holding only the note lacks the power to
> foreclose and a person holding only a deed of trust suffers no default because only
11
> the holder of the note is entitled to payment on it." *See, e.g., Dalton* Complaint,
> CV 10-81-PHX-JAT, Doc. 3 at 18. Plaintiffs, however, fail to allege any facts in
12
> their amended complaint that would support such a theory…Therefore, for this
13
> additional reason, Plaintiffs' claims for wrongful foreclosure fail to state a claim.

14
> In sum, Plaintiffs' actions for wrongful foreclosure are all dismissed for failure to
> state a claim.
15

16  In re Mortgage Elec. Registration Systems (MERS) Litigation, 09-md-2119-JAT, slip copy 2011

17  WL 251453 * 5-6 (D.Ariz January 25, 2011), and see also, order of dismissal with prejudice

18  therein at * 4-6 (Oct. 3, 2011) (in rejecting "split" the note arguments, the court held MERS has

19  standing and authority to commence foreclosure, appoint or substitute trustees or agents, and

20  assign loans pursuant to language in deeds of trust and applicable law).

21      Additionally, in granting a motion to dismiss, the Nevada District Court ruled that this

22  "split" the note theory in the MERS context is likely contrary to Nevada law.  The Court

23  explained:
24
> …the Nevada Supreme Court had never explicitly adopted the "mortgage follows the
25
> note" rule (the "Traditional Rule"), and the court anticipated that because the Nevada
> Supreme Court had adopted the Restatement (Third) of Property (Mortgages) in other
26
> contexts, that it would also adopt § 5.4 of the Restatement, which differs from the
27
> Traditional Rule.

28

The Traditional Rule is that the mortgage or deed of trust (the security instrument) automatically follows the secured debt, but not vice versa.  Under the Traditional Rule, when one purports to assign a mortgage without the underlying debt, the mortgage is "split" such that neither the owner of the debt nor the owner of the mortgage may foreclose…The Restatement decisively fixes the problem by providing that whether the debt or the mortgage is separately transferred, the one automatically follow the other, unless the parties agree otherwise…

> (b) Except as otherwise required by the Uniform Commercial Code, *a transfer of a mortgage also transfers the obligation the mortgage secures* unless the parties to the transfer agree otherwise.

Restatement (Third) of Property (Mortgages) § 5.4(a)-(b) (1997) (emphasis added).  The new rule proposed in the Restatement thus binds the note and mortgage as a matter of law…This is a sensible rule…

The Restatement would make it legally impossible (as a default rule) to split the mortgage such that it becomes unenforceable…Incidentally, in Nevada the UCC is no bar to a subsection (b) transfer, because the debt represented by a promissory note may be assigned without a traditional negotiation.  Nev.Rev.Stat. § 104.3203(2)…
Read in conjunction with NRS section 104.3203(2) and subsections (a) and (b) of the Restatement, subsection (c) appears to provide any assignee of the underlying debt or mortgage with the ability to enforce a foreclosure, unless the parties have agreed otherwise.  Because each transfer of the note or mortgage effectively transfers both, the last entity to have the note, mortgage, or both transferred to it would have the ability to foreclose.  Subsection (c) does not even require by its terms that the foreclosing entity be a holder in due course, but only that it be "entitled to enforce the obligation," *id.*, and under Nevada law, any transfer of an instrument, by negotiation or otherwise, gives the transferee the same rights to enforce the instrument as the transferor had, including the rights of a holder in due course.  Nev.Rev.Stat. § 104.3203(2).…
This legislative enactment supersedes any contrary common law or suggested UCC rule.

Vega v. CTX Mortgage Co., LLC, 2011 WL 192514 * 2-3 (D.Nev. Jan. 19, 2011); and see, Cervantes v. Countrywide Home Loans, No. 09-17364, slip op. at 16 (9th Cir. Sept. 7, 2011) (plaintiffs' alleged conclusion of note spitting as a result of a MERS deed of trust such that "no party has the power to foreclose" does not hold).[13]  Accordingly, Plaintiff's legal theory should be disregarded as contrary to the law as decided in Nevada and other jurisdictions.

---

[13] Further, courts in Nevada consistently hold that MERS assignments are not a cause to challenge non-judicial foreclosure.  E.g., Roberts v. McCarthy, 2:11-cv-00080-KJD-LRS, 2011 WL 1363811 at *4 (D.Nev. Apr. 11, 2011) (…."a lender is permitted to nominate MERS as nominee under the deeds of trust securing Plaintiff's note.  As the lender's nominee, MERS is permitted to substitute…successor

15

**B.  The Original Endorsed Note is Not Required to Prove Standing to Conduct a Trustee's Sale in this Context**

Nothing in N.R.S. § 107.080 effective at the time of the Notices of Default or Sale prior to October 1, 2011 required the production of the original Note, endorsement, or proof of holder-in-due course status under the UCC.  Court's agree.  For instance, in Croce v. Countrywide, the Court found that there was no requirement that the original promissory note be produced in order to foreclose on the home.  2009 U.S. Dist. LEXIS 89808 at 13; and see, Enriquez v. J.P. Morgan Chase Bank, N.A., 2009 U.S. Dist. LEXIS 4562 (D. Nev. Jan. 22, 2009)(defendants were not required to present the original note to the plaintiff before the foreclosure process); Moon v. Countrywide Home Loans, Inc., 2010 U.S. Dist. LEXIS 11281, 6-7 (D. Nev. 2010)(Nevada law does not require production of the original promissory note prior to non-judicial foreclosure); Kwok v. Recontrust Company, N.A., 09-2298, 2010 WL 4810704, at *4 (D.Nev. 2010) ("NRS 107.080 does not require a lender to produce the original note or prove its status as a real party in interest, holder in due course, current holder of the note, or any other synonymous status as a prerequisite to nonjudicial foreclosure proceedings."); Le Bouteiller v. Countrywide KB Homes, 11-01452, 2011 WL 4852518 (D.Nev. Oct. 13, 2011) ("A lender does not have an affirmative duty to provide the borrower with the original note prior to foreclosure proceedings.").[14] Defendants Motion must be granted as to Plaintiff's erroneous legal contentions.

---

trustee..[which] was permitted under Nevada law to begin and complete foreclosure proceedings due to Plaintiff's default on his home loan"); Roybal v. Countrywide Home Loans, Inc., 2:10-cv-750-ECR-PAL, 2010 WL 5136013 at *4 (D.Nev. Dec. 9, 2010) ("MERS, as the nominee of the lender, has authority to act on behalf of the holder of the promissory note").

[14] Other courts in Nevada and surrounding jurisdictions such as California and Arizona confirm the law does not require a lender, assignee, servicer, or trustee agent to tender the original note as proof of its standing to foreclose, and reject unilateral documents by a borrower seeking to establish other than the terms and law applicable to the loan.  See, e.g., Dobeck v. HomEq Servicing, Inc., U.S.D.C. D.Nev. Case No. 2:08-cv-00871-RCJ-LRL, 2008 WL 4642595 at * 3-4 (Oct. 16, 2008); Ernestberg v. Mortgage Investors Group, U.S.D.C. D.Nev. No. 2:08-cv-01304-RCJ-RJJ, 2009 WL 160241, at *5 (Jan. 22, 2009);

16

**VI.     PLAINTIFF'S FOURTH CLAIM FOR QUIET TITLE ALSO FAILS**

It is long established that a quiet title claim requires a plaintiff to allege and establishe

that the defendant is unlawfully asserting an adverse claim to title to real property. Union Mill &

Mining Co. v. Warren, 82 F. 519, 520 (D.Nev. 1897); Clay v. Scheeline Banking & Trust Co., 40

Nev. 9, 159 P. 1081, 1082 -1083 (1916). As established, Defendants are not unlawfully asserting

a title interest to the property. Plaintiff's fourth claim should be dismissed along with his failed

predicate claims.

**VII.     THE FIFTH CLAIM LABLELLED "PREDATORY LENDING" CANNOT**

**STATE A CLAIM AGAINST THESE DEFENDANTS**

Plaintiff's fifth claim does not appear to be a cognizable cause of action. Once more,

these Defendants were not Plaintiff's lender and by definition there cannot be a claim for

predatory lending asserted against them. Plaintiff again makes passing references without stating

claims under inapplicable Bankruptcy and California law, and under TILA, FDCPA, and

RESPA. Any purported claims under these statutory acts fail as a matter of law against these

Defendants.

**A. No Claim Can Be Stated Under TILA**

The Federal Truth-in-Lending Act ("TILA") and the alleged Regulations promulgated

thereunder govern the loan disclosures required to be given by a lender to a borrower by at the

time the loan is consummated. 15 U.S.C. § 1601, et. seq. The only parties who can be liable for

TILA violations in this context are the original lender and assignees if there is a TILA violation

Putkkuri v. Reconstruct Co., No. 08cv1919 WQH (AJB), 2009 WL 32567, at *2 (S.D. Cal. Jan. 5, 2009); Griffin v. HomEq Servicing et. al., U.S.D.C. D.Nev. Case No. 2:08-CV-00483-RCJ. San Diego Home Solutions, Inc. v. Reconstruct Co., No. 08cv1970 L (AJB), 2008 WL 5209972, at *2 (S.D.Cal. Dec. 10, 2008); Urbina v. Homeview Lending Inc., 681 F. Supp. 2d 1254 (D. Nev. 2009) (dismissing Plaintiffs' allegations that Defendants did not possess the original note); Mansour v. Cal-Western Reconveyance Corp., 618 F.Supp.2d 1178, 1181 (D. Ariz. 2009) (rejecting similar "show me the note" requests under Arizona's non-judicial foreclosure law and surveying cases with similar holdings).

17

apparent on the face of the note, deed of trust, or the TILA disclosure statement.  15 U.S.C. §§

1640, 1641(a) ("apparent on the face of the disclosure statement"); Taylor v. Quality Hyundai,

Inc., 150 F.3d 689 (7th Cir. 1998); Ramadan v. Chase Manhattan Corp., 229 F.3d 194 (3rd Cir.

2000); Balderos v. City of Chevrolet, 214 F.3d 849 (7th Cir. 2000); Smith v. Highland Bank, 915

F.Supp. 281 (N.D.Ala. 1996); Barber v. Fairbanks Capital Corp., 266 B.R. 309, 321

(Bktcy.E.D.Cal. 2001).  Plaintiff's Complaint does not allege that these Defendants were the

lender, or that there were defects apparent to Defendants on the face of the Note, Deed of Trust,

or TILA disclosure statement.

As to Ocwen, TILA exempts loan servicers from liability for disclosure violations.  15

U.S.C. § 1641(f).  "Servicing" is defined as "receiving any scheduled periodic payments from a

borrower pursuant to the terms of any loan."  See, 15 U.S.C. § 1641(f)(3) (stating that the term

"servicer" carries the same definition as in 12 U.S.C. § 2605(i)(2)).  Ocwen cannot be liable

under TILA as a matter of law.

As established in Wells Fargo and MERS' Motion, any TILA claim is time-barred.  TILA

actions for damages or rescission commence from the time of the disclosure violation, i.e. when

the loan was consummated. 15 U.S.C. §§ 1635(f), 1640(e); King v. Cal. 784 F.2d 910, 913-14

(9th Cir. 1986).  An action for damages under TILA is barred after one year.  15 U.S.C. §

1640(e); Hubbard v. Fidelity Federal Bank, 824 F.Supp. 909 (C.D.Cal. 1993) (summary

judgment for bank because plaintiff's TILA action for damages was filed after the TILA one

year limitations period).  There is typically no tolling under TILA.  See, Walker v. Washington

Mut. Bank FA, 63 Fed.Appx. 316, 317 (9th Cir. 2003) (slip opinion);  Rowland v. Novus

Financial Corp., 949 F.Supp. 1447, 1454 (D.Haw. 1996).  As set forth by the authorities, the

TILA periods are absolute and the courts have no subject matter jurisdiction to entertain such a

case afterward.  See, e.g., Miguel v. Country Funding 309 F.3d 1161, 1164 (9th Cir. 2002) (the

18

limitations periods under TILA, such as three years for rescission actions under Section 1635(f), are absolute and bar any claims thereafter).

As established, Plaintiff's loan was consummated on April 30, 2007. Plaintiff's Complaint was filed over four years later on December 13, 2011. Any TILA claim must be dismissed.

**B.  No Claim Can Be Stated Against these Defendants Under the FDCPA**

Courts have held that in order to state a claim under the FDCPA, the specific date and content of each instance allegedly in violation must be pled with particularity. *See,* Townsend v. Chase Bank USA, N.A., 2009 WL 426393 *2 (C.D.Cal. 2009) ("[because] Plaintiffs' [complaint] gives only vague descriptions of false, misleading, or harassing communications Plaintiff received from Defendants and fails to identify the persons making such communications, the dates those communications were received, or even the contents of the communications, Plaintiffs' claims must fail"), citing to Arikat v. J.P. Morgan Chase & Co., 430 F.Supp.2d 1013, 1027 (N.D.Cal. 2006) and Gorman v. Wolpoff & Abranson, LLP, 370 F.Supp.2d 1005, 1013 (N.D.Cal. 2005) (there must be some specifically alleged abuse or violation of the FDCPA, "harassing, threatening, abusive, oppressive, and annoying telephone calls" were insufficient).

The FDCPA governs primarily collection communications and efforts by third-party collection agencies. A defendant must be a "debt collector" as defined to be subject to a claim under the FDCPA. Heintz v. Jenkins, 514 U.S. 291, 294 (1995); Izenberg v. ETS Services, LLC, 589 F.Supp.2d 1193, 1199 (C.D.Cal., 2008). A "debt collector," as defined by the FDCPA, is a person who "regularly collects or attempts to collect, directly or indirectly, debts

owned or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6).[15]   Additionally,

"Creditors, mortgagors, and **mortgage servicing companies** are not debt collectors and are

statutorily exempt from liability under the FDCPA." Scott v. Wells Fargo Home Mortg., 326

F.Supp.2d 709, 718 (2003), McAnaney v. Astoria Financial Corp Scott v. Wells Fargo Home

Mortg., 357 F.Supp.2d 578, 592-593 (2005).  This creditor exemption should generally be

resolvable on a motion to dismiss.  Showalter v. Chase Manhattan/Providian, WL 2000943

(N.D.Cal. Aug. 19, 2005).

The activity of foreclosing on secured residential property is not the collection of a debt

under either the FDCPA or similar state debt collection acts.  *See, e.g.*, Hulse v. Ocwen Federal

Bank, FSB, 195 F.Supp.2d 1188, 1204 (D.Or., 2002); Gallegos v. Reconstruct Co., 2009 WL

215406 (S.D.Cal. 2009); Williams v. Countrywide Home Loans, Inc., 504 F.Supp.2d 176, 190

(S.D.Tex.2007); Ines v. Countrywide Home Loans, Inc., 2008 WL 2795875 (S.D.Cal.).  As

established by the Complaint and Wells Fargo and MERS' Motion, the servicing of the loan was

transferred to Ocwen at a time before the loan went into default.  In any event, the foreclosure is

not a debt collection under the FDCPA.

**C. No Claim is Stated Under RESPA**

Other than passing references or conclusions, Plaintiff's complaint gives no details and

states no claim under the Federal Real Estate Settlement Procedures Act ("RESPA") whether by

way of undisclosed fees, charges or yield spread premiums which are allowed, or otherwise. 12

---

[15]   Further, the FDCPA expressly excludes from the definition of "debt collector" "any persons collecting
or attempting to collect a debt owed or due or asserted to be due another to the extent such activity...(iii)
concerns a debt which was not in default at the time it was obtained by such person."  15 U.S.C.
1692(6)(F).  "The plain language of § 1692a(6)(f) tells us that an individual is not a 'debt collector'
subject to the Act if the debt he seeks to collect was not in default at the time he purchased (or otherwise
obtained) it."  Bailey v. Sec. Nat'l Servicing, Corp., 154 F.3d 384, 387 (7th Cir. 1998).  Here, the FAC
alleges that Plaintiff defaulted on the loan on or about July 20, 2009 which reflects that the loan was in a
default status when it was service transferred to Ocwen almost a year later on April 21, 2010.  (FAC ¶¶
11-12, 18).

1   U.S.C. § 2607(b), (c).  Schuetz v. Banc One Mortg. Corp., 292 F.3d 1004, 1007-08 (9th Cir.

2   2002); 61 F.R. 26126-27 (1996); see also, 61 F.R. 49237-39 (1996); 12 C.F.R. § 226, Supp. I,

3   Sec. 4(a)(3)-3; Bjustrom v. Trust One Mortgage Corp., 322 F.3d 1201 (9th Cir. 2003)(yield

4   spread and service release premiums that broker received from lender with which it placed loan

5   were not impermissible referral fees under RESPA); McWhorter v. Ford Consumer Finance Co.,

6   Inc., 33 F.Supp.2d 1059 (N.D.Ga. 1997)(4% fee paid by lender to broker, in addition to 4% fee

7   paid by borrower for broker, did not violate RESPA); Geraci v. Homestreet Bank, 203 F.Supp.2d

8   1211 (W.D.Wash. 2002) (lender's payment of yield spread premium to broker did not violate

9   RESPA's anti-kickback provisions); Hirsch v. BankAmerica Corp., 328 F.3d 1306 (11th Cir.

10   2003)(yield spread premium paid by lender to broker based upon interest rate was not an

11   improper kickback or referral fee under RESPA).

12        Again, these Defendants cannot be liable for any RESPA claim because they were not

13   parties to the loan disclosures or origination in April 2007.  Further, a claim for failure of or

14   improper disclosures under RESPA is subject to a one year limitations period.  12 U.S.C. § 2614.

15   Any RESPA claim in this regard is time-barred in that Plaintiff's Complaint was not filed until

16   December 13, 2011.

## VIII.   PLAINTIFF'S LIS PENDENS SHOULD BE EXPUNGED

Under N.R.S. 14.015, the Notice of Lis Pendens must be expunged unless Plaintiffs established two elements:

(1)   The action is for the foreclosure or affects title or possession to the property described in the notice; the action was not brought in bad faith or for an improper motive; the plaintiff will be able to perform any conditions precedent to the relief sought; and the plaintiff will be injured by any transfer of the property before the case is concluded; **and**

(2)   That the plaintiff is likely to prevail on the merits; or that the plaintiff has a fair chance on the merits, the alleged injury would be sufficiently serious such that the hardship on the event of a transfer would be greater than the hardship on the

1    defendant resulting from the Lis Pendens, and that if the plaintiff prevails it will
2    be entitled to the relief sought concerning title to the property.

3    These elements are conjunctive such that a plaintiff must establish all the factors in the first

4    element and a probability of success on the merits.  NGA #2 Ltd. Liability Co. v. Rains, 113

5    Nev. 1151, 946 P.2d 163 (1997).

6         As established above, Plaintiffs are not likely to prevail on the failed claims.  No basis is

7    served to further cloud title on the property in the struggling Las Vegas real estate market.  The

8    Court should order the lis pendens expunged as against these Defendants as well pursuant to

9    Wells Fargo and MERS' Motion to Expunge which is joined herein.

10   **IX.    CONCLUSION**

11        For the reasons set forth above, it is respectfully requested that the Motions be

12   GRANTED and judgment of dismissal be entered for Defendants with prejudice, that the Court

13   order the expungement of Plaintiff's lis pendens herein recorded in the Clark County Recorder's

14   Office on December 15, 2011 as Instrument No. 20111215-0000389, and for such other and

15   further relief as requested or deemed just and appropriate.

16               **AFFIRMATION PURSUANT TO N.R.S. 239B.030**

17        The undersigned hereby affirms that the above document does not contain a social

18   security number pursuant to N.R.S. § 239.030B.

19
20   DATED: January 21, 2012                    HOUSER & ALLISON
21                                              A Professional Corporation

22
23                                                /s/ Jeffrey S. Allison
24                                              Jeffrey S. Allison, Esq.
25                                              Attorneys for Defendants
                                                OCWEN LOAN SERVICING, LLC;
26                                              WESTERN PROGRESSIVE, LLC; and
                                                HSBC BANK USA, N.A., as Trustee for the
27                                              registered holders of Renaissance Equity
                                                Loan Asset-Backed Certificates, Series
28                                              2007-3

                                    22

**CERTIFICATE OF MAILING**

I hereby certify that I am over the age of eighteen (18), that I am not a party to this action, and that on this date I caused to be served a true and correct copy of the following documents:

**NOTICE OF JOINDER IN MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT AND TO EXPUNGE LIS PENDENS [DOCKET NOS. 8-9]; SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES**

By:     X      U.S. Mail

         ___      Facsimile transmission
         ___      Overnight Mail
         ___      Hand and/or Personal Delivery

and addressed to the following:

DENNIS E. SCARBERRY
3005 Milton Place
North Las Vegas, NV 89032
(702) 648-8711
dennisscarberry@cox.net

Plaintiff *In Pro Per*

Robin Prema Wright, Esq.
Donna M. Osborn, Esq.
WRIGHT, FINLAY & ZAK, LLP
5532 South Fort Apache Rd., Ste. 110
Las Vegas, NV 89148
(702) 475-7964
(702) 946-1345 fx
dosborn@wrightlegal.net

Attorneys for Defendants WELLS FARGO BANK, NA and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

Kristin A. Schuler-Hintz, Esq.
Christopher M. Hunter, Esq.
MCCARTHY & HOLTHUS, LLP
9510 W. Sahara, Ste. 110
Las Vegas, NV 89117
(702) 685-0329
(866) 339-5691 fx
khintz@mccarthyholthus.com

Attorneys for Defendant LST TITLE AGENCY, INC.

1

I:\CIVIL\OCWEN\Scarberry, Dennis\Pldgs\MTDFed.doc

1

2    Dated:  January 31, 2012

3                                              An employee of HOUSER & ALLISON, APC

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I:\CIVIL\OCWEN\Scarberry, Dennis\Pldgs\MTDFed.doc