1
2
3
4
5
6
7

WRIGHT, FINLAY & ZAK, LLP
Robin Prema Wright, Esq.
Nevada Bar No. 009296
Donna M. Osborn, Esq.
Nevada Bar No. 006527
5532 South Fort Apache Road, Suite 110
Las Vegas, NV 89148
(702) 475-7964; Fax: (702) 946-1345
dosborn@wrightlegal.net
*Attorneys for Defendant,*
*Wells Fargo Bank, NA and Mortgage Electronic Registration Systems, Inc.*

8
9

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

10
11
12
13
14
15
16
17
18
19
20
21
22

DENNIS E. SCARBERRY,

       Plaintiff,

    vs.

FIDELITY MORTGAGE OF NEW YORK, a
Division of Delta Funding Corp.; OCWEN
LOAN SERVICING COMPANY, LLC;
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS (herein MERS);
WESTERN PROGRESSIVE, LLC; HSBC
BANK USA, N.A.; CAL-WESTERN
RECONVEYANCE CORP.; WELLS FARGO
BANK, NA; RENAISSANCE MORTGAGE
ACCEPTANCE CORPORATION; LSI TITLE
AGENCY INC, and DOES 1-50, inclusive.

       Defendants.

Case No.:  2:12-cv-00128-KJD-CWH

23
24
25

## DEFENDANTS, WELLS FARGO BANK N.A. AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC.'S, RESPONSE TO THE PLAINTIFF'S MOTION FOR ORDER TO STAY EVICTION

26
27
28

Defendants, Wells Fargo Bank, N.A. (hereinafter "Wells Fargo") and Mortgage

Electronic Registration Systems, Inc. (hereinafter "MERS"), by and through their attorneys of

record, Robin Prema Wright, Esq. and Donna M. Osborn, Esq. of the law firm Wright, Finlay &

1  Zak, LLP, hereby submit their Response to the Plaintiff's Motion for Order to Stay Eviction.

2  This Response is based on the attached Memorandum of Points and Authorities, all pleadings

3  and papers on file herein, and on any oral or documentary evidence that may be presented at a

4  hearing on this matter.

5

6  DATED this 21ˢᵗ day of May, 2012.

7

8                                        WRIGHT, FINLAY & ZAK, LLP

9                                        _Chelsea Crowton_ #11547

10                                       Donna M. Osborn, Esq.

11                                       Nevada Bar No. 006527
                                         5532 South Fort Apache Road, Suite 110
12                                       Las Vegas, NV 89148
                                         *Attorney for Defendants,*
13                                       *Wells Fargo Bank, NA and Mortgage Electronic*
                                         *Registration Systems, Inc.*
14

15                    **MEMORANDUM OF POINTS AND AUTHORITIES**

16                          **I.       STATEMENT OF FACTS**

17          The Plaintiff purchased the property located at 3005 Milton Place, North Las Vegas,

18  Nevada 89030 (hereinafter Property) on or about November 23, 1996.[1]  On April 30, 2007, the

19  Plaintiff executed a Deed of Trust and Note for $207,500.00.[2]  The Deed of Trust designated

20  Fidelity Mortgage of NY as the Lender, MERS as nominee for Fidelity Mortgage of NY a

21  Division of Delta Funding Corporation, and Cal-Western Reconveyance Corporation as the

22  Trustee.[3]  On September 15, 2008, Quality Loan Service Corporation recorded a Notice of

23  Breach and Default and of Election to Cause Sale of Real property under the Plaintiff's Deed of

24

25

---

26  [1] A true and correct copy of the Grant, Bargain, Sale Deed recorded in the Clark County Recorder's Office as book
    and instrument number 19960731:0356 is attached to Defendant's Request for Judicial Notice attached as **Exhibit 1.**
27  [2] A true and correct copy of the Deed of Trust recorded in the Clark County Recorder's Office as book and
    instrument number 20070511-0002160 is attached to Defendant's Request for Judicial Notice attached as **Exhibit 2**
28  in Docket No. 12.
    [3] Id.

1  Trust.[4]  The Notice of Default stated that the date of default on the Plaintiff's Note was

2  September 1, 2008.[5]  On February 2, 2009, a Substitution of Trustee was recorded, whereby

3  HSBC Bank USA, N.A., as Trustee for Renaissance Equity Loan-Asset-Backed Certificate

4  Series 2007-3 (hereinafter "HSBC Bank"), substituted Quality Loan Service Corporation as

5  Trustee under the Plaintiff's Deed of Trust.[6]  On February 4, 2009, an Assignment of Deed of

6  Trust was recorded whereby MERS, as nominee for Fidelity Mortgage of NY a Division of Delta

7  Funding Corporation, assigned all beneficial interest in the Plaintiff's Deed of Trust and Note to

8  HSBC Bank USA, N.A.[7]  On March 17, 2009, a Notice of Rescission of Notice of Default was

9  recorded by Quality Loan Service Corporation, whereby the Notice of Default recorded on

10  September 15, 2008 was rescinded.[8]

11          On September 30, 2010, a Notice of Default and Default and of Election to Cause Sell of

12  Real Property under Deed of Trust was recorded by Western Progressive, LLC as Trustee,

13  whereby the amount of the arrearages was $6,113.14 as of September 29, 2010.[9]  On April 22,

14  2011, a Substitution of Trustee was recorded by HSBC Bank USA, N.A. appointing Western

15  Progressive, LLC as Trustee under the Plaintiff's Deed of Trust/Note.[10]  On May 4, 2011, a

16  Certificate from the State of Nevada Foreclosure Mediation Program was recorded in the

17

18

19  _____

20  [4] A true and correct copy of the Notice of Default recorded in the Clark County Recorder's Office as book and
instrument number 20081215-0003905 is attached to Defendant's Request for Judicial Notice attached as **Exhibit 3**
in Docket No. 12.

21  [5] Id.

22  [6] A true and correct copy of the Substitution recorded in the Clark County Recorder's Office as book and instrument
number 20090202-0001121 is attached to Defendant's Request for Judicial Notice attached as **Exhibit 4** in Docket
No. 12.

23  [7] A true and correct copy of the Assignment recorded in the Clark County Recorder's Office as book and instrument
number 20090204-003037 is attached to Defendant's Request for Judicial Notice attached as **Exhibit 5** in Docket

24  No. 12.

25  [8] A true and correct copy of the Notice of Rescission recorded in the Clark County Recorder's Office as book and
instrument number 20090317-0000190 is attached to Defendant's Request for Judicial Notice attached as **Exhibit 6**
in Docket No. 12.

26  [9] A true and correct copy of the Notice of Default recorded in the Clark County Recorder's Office as book and
instrument number 201009300001285 is attached to Defendant's Request for Judicial Notice attached as **Exhibit 7**

27  in Docket No. 12.

28  [10] A true and correct copy of the Substitution recorded in the Clark County Recorder's Office as book and
instrument number 201104220004027 is attached to Defendant's Request for Judicial Notice attached as **Exhibit 8**
in Docket No. 12.

1  Washoe County Recorder's Office.[11]  On June 15, 2011, a Notice of Trustee's Sale was

2  recorded, setting a sale date of July 15, 2011.[12]  The amount due and owing on the Deed of Trust

3  and Note was $232,847.45.[13]  A second Notice of Trustee's Sale was recorded on December 29,

4  2011.[14]  On February 8, 2012, a Trustee's Deed upon Sale was recorded in the Clark County

5  Recorder's Office, whereby, HSBC Bank purchased the Plaintiff's Property for $239,131.22.[15]

6  ## II.    LEGAL ARGUMENTS

7  **A. THE PLAINTIFF'S MOTION FOR ORDER TO STAY EVICTION SHOULD BE
8  DENIED BECAUSE THE FEDERAL COURT DOES NOT HAVE
   JURISDICTION TO ISSUE AN ORDER STAYING A STATE COURT
9  EVICTION**

10  The Plaintiff's Motion to Stay is premised on the legal theory that the Federal Court has

11  jurisdiction over a Nevada Justice Court eviction of the Plaintiff from the Property located at

12  3005 Milton Place, North Las Vegas, Nevada 89030.  The Federal Court has no jurisdiction to

13  issue a stay of an eviction that is pending in Nevada State Justice Courts.  The eviction of the

14  Plaintiff from the Property is in the exclusive jurisdiction of the Nevada Justice Courts.  N.R.S.

15  4.370 states,

16  
17  **NRS 4.370   Jurisdiction.**
   1.  Except as otherwise provided in subsection 2, justice courts have jurisdiction of the following civil
   actions and proceedings and no others except as otherwise provided by specific statute:
18            (g)  Of actions for the possession of lands and tenements where the relation of landlord and tenant
   exists, when damages claimed do not exceed $10,000 or when no damages are claimed.
19            (h)  Of actions when the possession of lands and tenements has been unlawfully or fraudulently
   obtained or withheld, when damages claimed do not exceed $10,000 or when no damages are
   claimed.
20  2.  The jurisdiction conferred by this section does not extend to civil actions, other than for forcible entry
   or detainer, in which the title of real property or mining claims or questions affecting the boundaries of land
21  are involved.

22

23  ───────────────────
[11] A true and correct copy of the Certificate recorded in the Clark County Recorder's Office as book and instrument
24  number 20110504-0000962 is attached to Defendant's Request for Judicial Notice attached as **Exhibit 9** in Docket
   No. 12.
   [12] A true and correct copy of the Notice of Trustee's Sale recorded in the Clark County Recorder's Office as book
25  and instrument number 201106150000121is attached to Defendant's Request for Judicial Notice attached as **Exhibit
   10** in Docket No. 12.
26  [13] Id.
   [14] A true and correct copy of the Notice of Trustee's Sale recorded in the Clark County Recorder's Office as book
27  and instrument number 20111229-0000456 is attached to Defendant's Request for Judicial Notice attached as
   **Exhibit 11** in Docket No. 12.
28  [15] A true and correct copy of the Trustee's Deed upon Sale recorded in the Clark County Recorder's Office as book
   and instrument number 201202080001824 is attached to Defendants' Response as **Exhibit A.**

1   Unlawful Detainer actions concerning real property located in the State of Nevada are

2   under the jurisdiction of the Nevada State Courts.  The Plaintiff needs to file a potential wrongful

3   eviction claim in the state court where the unlawful eviction was filed.  The Plaintiff needs to file

4   the Motion to Stay or Appeal the issuance of a Writ of Restitution in the Nevada Justice Courts.

5   The Plaintiff has failed to do either of the above stated options, but instead is trying to stay the

6   eviction in a Court forum with no jurisdiction over an eviction and which is not hearing the

7   Complaint for Unlawful Detainer.  Based on the recorded Trustee's Deed upon Sale and the

8   recorded land documents which show a clear trail of legal authority to foreclose, the Defendant,

9   HSBC, has legal authority to evict the Plaintiff from the Property.  The Plaintiff is not the current

10  title owner of the Property and is unlawfully living at the Property.  Therefore, the unlawful

11  detainer action is a valid legal avenue to pursue against the Plaintiff.

12   In addition, the subject matter of the two Complaints does not state the same legal

13  theories of fact or law.  The Complaint for Unlawful Detainer involves the eviction of a

14  trespasser from the Property owned by the current title holder, HSBC.  The Plaintiff's Complaint

15  in Federal Court deals with improper foreclosure and standing to foreclose.  The two Complaints

16  have two different types of relief, eviction and monetary damages.  Second, the eviction of the

17  Plaintiff from the Property is proper and legal based on the default in mortgage payments by the

18  Plaintiff and the sale of the Property to HSBC.  The Notice of Default stated that the date of

19  default on the Plaintiff's Note was September 1, 2008.[16]  On February 8, 2012, a Trustee's Deed

20  upon Sale was recorded in the Clark County Recorder's Office, whereby, HSBC Bank purchased

21  the Plaintiff's Property for $239,131.22.[17]  Based on the recorded Trustee's Deed upon Sale and

22  the recorded land documents which show a clear trail of legal authority to foreclose, the

23  Defendant, HSBC, has legal authority to evict the Plaintiff from the Property.

24   If the Plaintiff is seeking to forestall an eviction, then the Plaintiff needs to file an

25  Appeal to the Unlawful Complaint/Writ of Restitution or a Motion for Preliminary Injunction in

26  Justice Court to forestall any potential eviction.  The Plaintiff is not the current title owner of the

27

28  [16] Id.
[17] A true and correct copy of the Trustee's Deed upon Sale recorded in the Clark County Recorder's Office as book and instrument number 201202080001824 is attached to Defendants' Response as **Exhibit A.**

1  Property and is unlawfully living at the Property; therefore, the unlawful detainer action is a

2  valid legal avenue to pursue against the Plaintiff.  Based on the above, the Plaintiff's Motion for

3  Order to Stay Eviction should be denied because the Federal Court does not have jurisdiction

4  over State Court eviction matters and the eviction of the Plaintiff is proper and legal under state

5  law.

6
7  **B.  THE PLAINTIFF'S MOTION TO STAY EVICTION SHOULD BE DENIED
      BECAUSE THE DEFENDANTS HAD STANDING TO FORECLOSE ON THE
      PLAINTIFF'S PROPERTY.**

8
9  **a.  The Recorded Land Documents show a clear trail of legal authority to
       foreclose on the Plaintiff's Property.**

10       The Plaintiff asserts in his Motion to Stay that the eviction should be stayed because the

11  Defendants do not have standing to foreclose on the Plaintiff's Property.  First, the issue of

12  standing to foreclose is moot because the Plaintiff's Property was sold at a Trustee's Sale on

13  February 1, 2012.  On February 8, 2012, a Trustee's Deed upon Sale was recorded in the Clark

14  County Recorder's Office, whereby, HSBC Bank purchased the Plaintiff's Property for

15  $239,131.22.[18]  Second, the recorded land documents in the Plaintiff's chain of title show a clear

16  trail of legal ownership from the original Lender/Beneficiary to the foreclosing Beneficiary and

17  Trustee.  The Plaintiff purchased the property located at 3005 Milton Place, North Las Vegas,

18  Nevada 89030 (hereinafter Property) on or about November 23, 1996.[19]  On April 30, 2007, the

19  Plaintiff executed a Deed of Trust and Note for $207,500.00.[20]  The Deed of Trust designated

20  Fidelity Mortgage of NY as the Lender, MERS as nominee for Fidelity Mortgage of NY a

21  Division of Delta Funding Corporation, and Cal-Western Reconveyance Corporation as the

22  Trustee.[21]  On September 15, 2008, Quality Loan Service Corporation recorded a Notice of

23  Breach and Default and of Election to Cause Sale of Real property under the Plaintiff's Deed of

24

---

25  [18] A true and correct copy of the Trustee's Deed upon Sale recorded in the Clark County Recorder's Office as book
and instrument number 201202080001824 is attached to Defendants' Response as **Exhibit A.**

26  [19] A true and correct copy of the Grant, Bargain, Sale Deed recorded in the Clark County Recorder's Office as book
and instrument number 19960731:0356 is attached to Defendant's Request for Judicial Notice attached as **Exhibit 1**
in Docket No. 12.

27  [20] A true and correct copy of the Deed of Trust recorded in the Clark County Recorder's Office as book and
instrument number 20070511-0002160 is attached to Defendant's Request for Judicial Notice attached as **Exhibit 2**

28  in Docket No. 12.
[21] Id.

1   Trust.[22] The Notice of Default stated that the date of default on the Plaintiff's Note was

2   September 1, 2008.[23] On February 2, 2009, a Substitution of Trustee was recorded, whereby

3   HSBC Bank USA, N.A., as Trustee for Renaissance Equity Loan-Asset-Backed Certificate

4   Series 2007-3 (hereinafter "HSBC Bank"), substituted Quality Loan Service Corporation as

5   Trustee under the Plaintiff's Deed of Trust.[24] On February 4, 2009, an Assignment of Deed of

6   Trust was recorded whereby MERS, as nominee for Fidelity Mortgage of NY a Division of Delta

7   Funding Corporation, assigned all beneficial interest in the Plaintiff's Deed of Trust and Note to

8   HSBC Bank USA, N.A.[25] On March 17, 2009, a Notice of Rescission of Notice of Default was

9   recorded by Quality Loan Service Corporation, whereby the Notice of Default recorded on

10  September 15, 2008 was rescinded.[26] On September 30, 2010, a Notice of Default and Default

11  and of Election to Cause Sell of Real Property under Deed of Trust was recorded by Western

12  Progressive, LLC as Trustee, whereby the amount of the arrearages was $6,113.14 as of

13  September 29, 2010.[27] On April 22, 2011, a Substitution of Trustee was recorded by HSBC

14  Bank USA, N.A. appointing Western Progressive, LLC as Trustee under the Plaintiff's Deed of

15  Trust/Note.[28] On May 4, 2011, a Certificate from the State of Nevada Foreclosure Mediation

16  Program was recorded in the Washoe County Recorder's Office.[29] Therefore, the assertion by

17

18  [22] A true and correct copy of the Notice of Default recorded in the Clark County Recorder's Office as book and

19  instrument number 20081215-0003905 is attached to Defendant's Request for Judicial Notice attached as **Exhibit 3** in Docket No. 12.
    [23] Id.

20  [24] A true and correct copy of the Substitution recorded in the Clark County Recorder's Office as book and

21  instrument number 20090202-0001121 is attached to Defendant's Request for Judicial Notice attached as **Exhibit 4** in Docket No. 12.

22  [25] A true and correct copy of the Assignment recorded in the Clark County Recorder's Office as book and instrument number 20090204-003037 is attached to Defendant's Request for Judicial Notice attached as **Exhibit 5**

23  in Docket No. 12.
    [26] A true and correct copy of the Notice of Rescission recorded in the Clark County Recorder's Office as book and

24  instrument number 20090317-0000190 is attached to Defendant's Request for Judicial Notice attached as **Exhibit 6** in Docket No. 12.

25  [27] A true and correct copy of the Notice of Default recorded in the Clark County Recorder's Office as book and instrument number 201009300001285 is attached to Defendant's Request for Judicial Notice attached as **Exhibit 7**

26  in Docket No. 12.
    [28] A true and correct copy of the Substitution recorded in the Clark County Recorder's Office as book and

27  instrument number 201104220004027 is attached to Defendant's Request for Judicial Notice attached as **Exhibit 8** in Docket No. 12.

28  [29] A true and correct copy of the Certificate recorded in the Clark County Recorder's Office as book and instrument number 20110504-0000962 is attached to Defendant's Request for Judicial Notice attached as **Exhibit 9** in Docket No. 12.

1  the Plaintiff concerning the Defendants not having standing to foreclose on the Plaintiff's

2  Property is meritless based on the recorded land documents.

3      In addition, an assignment to HSBC Bank is the only evidence needed to show HSBC

4  Bank's right to foreclose, for a Note to be enforceable by a party other than whom the Note is

5  originally payable, the Note must either be negotiated or transferred.  Leyva v. National Default

6  Servicing Corp., 255 P.3d 1275, 1280, 75 UCC Rep.Serv.2d 6, 127 Nev. Adv. Op. 40 (2011).

7  On February 4, 2009, an Assignment of Deed of Trust was recorded whereby MERS, as nominee

8  for Fidelity Mortgage of NY a Division of Delta Funding Corporation, assigned all beneficial

9  interest in the Plaintiff's Deed of Trust and Note to HSBC Bank USA, N.A.[30] Leyva and Article

10 3 of Nevada's Uniform Commercial Code states that "negotiation" and transfer are similar, yet

11 distinct processes.  Id. at 255 P.3d at 1280.  When the holder of the Note, endorses the Note and

12 gives possession of the Note to a new entity, the Note is thereby "negotiated" and the new entity

13 becomes the holder.  Id. at 255 P.3d at 1280 (citing, N.R.S. 104.3201).  An endorsement

14 however is not necessary for a valid transfer.  Id. at 255 P.3d at 1281(citing N.R.S. 104.3203(2)

15 ("Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee

16 any right of the transferor to endorse the instrument . . . .")).  Therefore to have standing to

17 foreclose, an **Assignment** of the Note and Deed of Trust is proof that the entity has standing to

18 foreclose.  Leyva, 255 P.3d at 1281 (quoting U.C.C. § 3-203 cmt. 2, which explains the effect of

19 § 3-203(b), codified in N.R.S. 104.3203(2)).

20      Moreover, the Nevada Supreme Court very recently on March 30, 2012, clarified Leyva

21 and also upheld the validity of Assignments signed by MERS as valid "proof" of the transfer of

22 both the Note and Deed of Trust.  See, Miller v. Aurora Loan Services, LLC et al, Advanced

23 Opinion No. 58532, attached hereto and incorporated herein by this reference as Exhibit B.[31]

24 Miller is not being cited as binding authority, but is being cited for its persuasive value and legal

25 analysis of Nevada law.  In Miller, the Court held that "[a]s is customary in the secondary

26

27 [30] A true and correct copy of the Assignment recorded in the Clark County Recorder's Office as book and
   instrument number 20090204-003037 is attached to Defendant's Request for Judicial Notice attached as **Exhibit 5**
   in Docket No. 12.

28 [31] A true and correct copy of the Miller Opinion is attached to Defendant's Response to Plaintiff's Motion to Stay as
   **Exhibit B.**

mortgage market such "proof" [of standing to foreclose] generally comes in the form of a valid assignment of the Deed of Trust and corresponding Promissory Note- which, as explained previously, is what was accomplished with the MERS assignment in the Plaintiff's case.  Miller at pg. 5.

Therefore, based on the recorded Assignment, HSBC Bank, has proven its legal authority to proceed with a foreclosure on the Plaintiff's Property on behalf of the Renaissance Equity Loan Backed Certificate Series.  In addition, the allonge attached to the Plaintiff's Motion for Sworn Affidavit stipulates to the authority of HSBC Bank to enforce the Plaintiff's Note.  The allonges show a clear transfer of interest in the Plaintiff's Note from the original Lender, Fidelity, to the foreclosing Beneficiary, HSBC.[32]  Based on the above, the assertions by the Plaintiff concerning the standing of HSBC Bank to foreclose and eviction the Plaintiff from the Property are meritless and should be disregarded by the Court.

### b.  THE ASSERTIONS BY THE PLAINTIFF CONCERNING THE APPLICABILITY OF AB 284 IS MISPLACED.

The Plaintiff asserts that AB 284 is applicable to the Plaintiff's foreclosure case.  (Motion at pg. 5).  However, AB 284 is inapplicable to Plaintiff's situation because AB 284 only became effective on October 1, 2011.  The Plaintiff's Notice of Default was recorded September 30, 2010.  AB 284 does not have a retroactive provision concerning previously recorded Notices of Default.  Therefore, AB 284 does not apply to Plaintiff's Notice of Default and the Defendants have no duty to produce the original Promissory Note, Assignments, and Endorsement.

Nevada's law governing non-judicial foreclosure, N.R.S. 107.080, is sufficiently clear with respect to whether a Borrower must be provided with the original promissory Note.  The text of N.R.S. 107 does not place a duty on the Lender to provide the original loan documents during the non-judicial foreclosure process. See N.R.S. 107.080 and 107.087.  The legislature found it appropriate to require only that "a copy of the promissory note [be] attached to the notice" in the context of a transfer in trust of an estate in real property, N.R.S. 107.085(3)(b), but did not include such a requirement in the text of N.R.S. 107.080 or N.R.S. 107.087.  The

---

[32] See allonges attached to Plaintiff's Motion for Sworn Affidavit.

1   legislature also created increased burdens in the foreclosure mediation context.  N.R.S.

2   107.086(4), governing foreclosure mediation, requires the Beneficiary of the Deed of Trust to

3   "bring to the mediation the original or a certified copy of the Deed of Trust, the mortgage note

4   and each assignment of the deed of trust or mortgage note." N.R.S. 107.086(4).  The legislature

5   included no such requirement in N.R.S. 107.080 or N.R.S. 107.087.

6          Accordingly, neither N.R.S. 107.080 nor N.R.S. 107.087 requires originals of the deed of

7   trust, promissory note, or assignments.  Courts confronting the issue have uniformly held that the

8   statutes do not require original loan documents in the non-judicial foreclosure context.  Byrd v.

9   Meridian Foreclosure Service, 2011 WL 1362135, *2 (D. Nev. April 8, 2011) ("The ever-

10  expanding body of case law within this district holds that the Nevada law governing non judicial

11  foreclosure, NEV. REV. STAT. § 107.080, does not require a lender to produce the original note

12  as a prerequisite to non-judicial foreclosure proceedings."); see also Kemberling v. Ocwen Loan

13  Servicing, LLC, 2009 WL 5039495, *3 (D. Nev. Dec. 15, 2009) ("Defendants are not required to

14  produce the original loan documents. Courts across the country have rejected claims by plaintiffs

15  asserting a duty by the Lender to provide the original note under the U.C.C. to prove its holder in

16  due course status."); Aguilar v. WMC Mortg. Corp., 2010 WL 185951, at *2 (D. Nev. Jan. 15,

17  2010) ("Nevada's foreclosure statute is comprehensive and does not require production of the

18  original note.").  Further, the Nevada Supreme Court's recent opinion in Thomas v. BAC Home

19  Loans Servicing, LP, 2011 WL 6743-44 (Nevada S. Ct. Dec. 20, 2011) (unpublished)[33],

20  telegraphs how the high court would rule on the instant issue.  Thomas is being cited for its

21  persuasive value and not for binding legal authority.  In Thomas, the Court was asked to

22  determine whether "the Nevada Legislature indirectly adopted a level of documentation

23  necessary to support foreclosure actions with the creation of the Foreclosure Mediation

24  Program." Id. at *4.  The Plaintiff argued that only originals and certified copies of the loan

25  documents were sufficient to support a motion for summary judgment.  In rejecting the

26  Plaintiff's approach, the court noted that only N.R.S. 107.086 (pertaining to foreclosure

27  mediation) requires originals or certified copies of the loan documentation, but the remaining

28

---

[33] A true and correct copy of the Thomas v. BAC opinion is attached to Defendants' Response as **Exhibit C.**

1    subsections of the statute had no such requirement. Id. The Court reasoned that the mediation

2    statute applied only to mediation, and did not have any bearing on judicial actions.

3         As the Court explained:

4         The language of N.R.S. 107.086 is plain and unambiguous.  By its very terms,
5         the requirements and procedures set forth within its provisions apply only to
          proceedings in the Nevada Foreclosure Mediation Program.  N.R.S. 107.086(4).
6         (The beneficiary of the deed of trust shall bring to the mediation the original
7         or a certified copy of the deed of trust, the mortgage note and each assignment
          of the deed of trust or mortgage note.)  Therefore, it has no applicability to
8         judicial actions, and Nevada's rules of evidence apply.  Id.

9         The text of N.R.S. 107.080 is similarly plain and unambiguous.  It does not establish a

10   level of documentation necessary to support non-judicial foreclosures.  The Nevada Supreme

11   Court has explained that the documentation standards codified in N.R.S. 107.086 are limited to

12   the mediation program.  Based on the N.R.S. 107.080 and case law, the Beneficiary is not

13   required to produce the original Note in order to foreclosure on the Plaintiff's Property.

14        It is well settled Nevada law that the terms of the Deed of Trust are controlling regarding

15   the foreclosure process. Edwards v. John Hancock Mut. Life Ins. Co., 973 F.2d 1027, 1030-1031

16   (1st Cir. 1992) (interpreting Nevada law).  The language of the Deed of Trust itself "establishes

17   the rights and responsibilities of the parties and prescribed certain duties to be performed by the

18   trustees."  In this instance, under the terms of the Deed of Trust provide that assignments can be

19   made *without* notice to appellant.

20        Any insistence by the Plaintiff that the Defendants lacked standing to perform their tasks,

21   or that such standing must be proved is not founded in law or equity.  Under Nevada law, an

22   Assignment is neither required nor necessary for parties to perform the directed acts.  The only

23   statute that references "assignments" of the beneficiary interest is NRS 106.210 which states as

24   follows:

25        **NRS 106.210 Recording of assignments of mortgages or beneficial interests in deeds of
          trust; constructive notice.**
26        1. Any assignment of a mortgage of real property, or of a mortgage of personal property or
          crops recorded prior to March 27, 1935, and any assignment of the beneficial interest under a
          deed of trust *may* be recorded, and from the time any of the same are so filed for record shall
27        operate as constructive notice of the contents thereof to all persons.
          2. Each such filing or recording shall be properly indexed by the recorder. [emphasis added].

28

1   There is no requirement that the beneficiary interest be recorded or that a "chain of

2   beneficiary interest" be proven in order to foreclose.  In fact, the identity of the investor is

3   irrelevant to whether a borrower owes money under the note and Deed of Trust, and is akin to

4   alleging that their default is justified because they do not know who they are failing to pay.  This

5   is false again as the Deed of Trust states that the borrower is to pay the Loan Servicer, not the

6   beneficiary.  The Loan Servicer provides monthly statements to the borrower, not the

7   beneficiary.  Therefore, the identity of the Beneficiary is completely irrelevant for purposes of

8   borrower's payment under the Note and Deed of Trust.

9   Based on the above, the Plaintiff's Motion to Stay Eviction should be denied because AB

10   284 is inapplicable to the Plaintiff's foreclosure situation.

11   **C.  THE ASSERTIONS BY THE PLAINTIFF CONCERNING FRAUD FAIL TO**
12   **MEET THE REQUIRED HEIGHTENED PLEADING STANDARD UNDER**
      **F.R.C.P. RULE 9.**
13

14   The Plaintiff asserts in his Motion that the documents and allonges are fraudulent and are

15   forged by the Defendants.  (See Motion in general).  The Plaintiff's claim for fraud must be pled

16   with particularity under Federal Rule of Civil Procedure 9(b) because the Plaintiff asserts a fraud

17   claim against Defendants.  Yourish v. Cal. Amplifier, 191 F.3d 983, 993 (9th Cir. 1999).  To meet

18   this standard, the Plaintiff must present details regarding the "time, place, and manner of each act

19   of fraud, plus the role of each defendant in each scheme."  Lancaster Com. Hosp. v. Antelope

20   Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991).  To successfully plead a cause of action for

21   fraud, Plaintiff must factually and specifically allege the following elements:

22   (1) Defendants' represented to Plaintiff an important fact was true; (2)Defendants'
     representation was false; (3) Defendants' knew that the representation was false when it
23   was made; or that it made the representation without regard for the truth; (4) at the time
     the representation was made, Defendants' intended Plaintiff to rely on the
24   misrepresentation; (5) Plaintiff justifiably relied on Defendants' misrepresentation in
     taking action or refraining from acting; (6) Plaintiff was harmed; and such harm resulted
25   from the Plaintiff's reliance on the intentional misrepresentation of Defendants.  Lubbe v.
26   Barba, 91 Nev. 598, 600 (1975).

27

28

1        Lubbe, further clarifies that "the false representation must have played a material and

2    substantial part in leading the plaintiffs to adopt his particular course..." Id. The Plaintiff only

3    asserts general statements concerning the Defendants and the alleged fraudulent documents. The

4    Plaintiff does not state the place, manner of fraud, the role of each Defendant in the scheme of

5    fraud, how the Defendants acted in concert to commit the alleged fraud, or the circumstances

6    surrounding the alleged fraudulent documents. The Plaintiff fails to plead beyond mere

7    generalizations concerning an alleged fraud. The Plaintiff fails to assert how the foreclosure

8    documents are fraudulent or manufactured in order to provide substantive support to the broad

9    generalizations asserted in the Motion. The assertions by the Plaintiff are merely a fraudulent

10   attempt by the Plaintiff to create an issue of fact, despite the clear evidence of the recorded land

11   documents and allonges showing the legal authority of the Defendants to enforce the Plaintiff's

12   Deed of Trust and Note. Based on the above, the Plaintiff has failed to plead under the required

13   F.R.C.P. Rule 9.

14       As the Plaintiff has not met the heightened pleading standard by failing to identify acts,

15   committed by specific Defendants, which would constitute fraud, the assertions by the Plaintiff

16   concerning the foreclosure documents being fraudulent should be disregarded by the Court.

17   **D. THE PLAINTIFF'S MOTION TO STAY SHOULD BE DENIED BECAUSE THE**

18       **PLAINTIFF IS NOT LIKELY TO SUFFER IRREPARABLE HARM BECAUSE**
    **THE PLAINTIFF HAS NOT PAID HIS MORTGAGE IN OVER FOUR (4)**

19       **YEARS AND A FORECLOSURE/EVICTION ACTION HAS ALREADY**

20       **OCCURRED ON THE PLAINTIFF'S PROPERTY.**

21       The Plaintiff cannot rightfully allege that he will suffer irreparable harm should his

22   request to stay eviction not be granted because the Plaintiff has been in default on his mortgage

23   and facing impending foreclosure/eviction for over four (4) years since the date of the last

24   "Notice of Default and Sale" was filed against the Plaintiff's Property. The Plaintiff received the

25   first Notice of Default in 2008 and the second Notice of Default in 2010. The Plaintiff has had

26   over four (4) years to plan financially and physically on a pending foreclosure. In addition, the

27   Plaintiff was aware of the impending eviction on the Property. The Trustee's Sale took place on

28   February 1, 2012. The Plaintiff has had over one (1) month to prepare for an impending

1  eviction.  Based on the above, the Plaintiff has had amply time and notice of any impending

2  foreclosure and eviction and the Plaintiff has had sufficient notice to prepare for the

3  consequences of an eviction and foreclosure.

4       The Plaintiff implies that the Plaintiff will be prejudiced if he is evicted and loses the

5  right to occupy the Property. (Motion at pg. 4).  However, the damage alleged by the Plaintiff is

6  the result of the actions of the Plaintiff and are not the result of the actions by the Defendants.

7  The Plaintiff would suffer no more harm than anyone would for defaulting on a Deed of

8  Trust/Note.  The Plaintiff cannot expect to stay in a house that he is not paying for or expect a

9  Lender to not foreclose once a Borrower defaults on the mortgage Note.

10       Plus, the Plaintiff does not dispute that he defaulted on his mortgage in the Complaint, for

11  the Plaintiff merely alleges a wrongful foreclosure.  (See Complaint/Motion in general).  The

12  Plaintiff would have to be able tender the principal and interest borrowed regarding the subject

13  loan.  See, Morris v. Homecomings Financial, LLC, 2008 WL 3126258, *3 (S.D. CA 2008),

14  Henderson v. GMAC Mortgage, 2008 WL 1733265, *6-7 (W.D. WA 2008).  The Plaintiff has

15  not demonstrated an ability to tender.  (See Motion to Stay in general).  Therefore, the Plaintiff's

16  Motion to Stay should be denied because the Plaintiff has not and will not suffer irreparable

17  harm if the injunction is denied.

18  **E. THE PLAINTIFF'S MOTION TO STAY SHOULD BE DENIED BECAUSE THE**
**PLAINTIFF CANNOT SHOW THAT THE EQUITIES BALANCE IN FAVOR OF**
19  **THE PLAINTIFF.**

20       The balances of the equities do not tip in favor of the Plaintiff because it cannot be

21  disputed that the Plaintiff stopped making payments on his home loan.[34]  Indeed, the Plaintiff

22  has not offered to tender/cure the amount owing under the Note while the stay is in place nor has

23  the Plaintiff stated that he could pay reasonable rents if the stay is granted in the case.  This

24  violates the time honored maxim that "[h]e who seeks equity must do equity."  In re: Gardenhire,

[34]A true and correct copy of the Notice of Default recorded in the Clark County Recorder's Office as book and instrument number 201009300001285 is attached to Defendant's Request for Judicial Notice attached as **Exhibit 7** in Docket No. 12.

1   209 F.3d 1145, 1152 (9th Cir. 2000) (citing, McQiddy v. Ware, 87 U.S. (20 Wall.) 14, 19, 22

2   L.Ed. 311 (1873)).

3           The Plaintiff has lived mortgage free at said Property for over four (4) years and a

4   Trustee's Sale occurred on February 1, 2012.  The Defendant, HSBC, legally purchased the

5   Property at a Trustee's Sale for $239,131.22.  If the Plaintiff wants to oppose the eviction then he

6   Plaintiff need to file an opposition or Motion to Stay in the proper venue, the State Justice Court.

7   The Plaintiff has had sufficient time and notice to prepare financially and physically for an

8   impending foreclosure and eviction.  However, the Defendant, HSBC, has had to forestall any

9   eviction or pending resale of the Property due to the meritless efforts of the Plaintiff.  In addition,

10  the Defendant, HSBC, was the foreclosing Beneficiary of the Plaintiff's Deed of Trust.[35]  Due to

11  the default by the Plaintiff, the Defendant, HSBC, suffered a loss on the Note totaling

12  $239,131.22.[36]  In addition, any efforts to re-sale the Property and recover any profit from the

13  substantial debt remaining on the Plaintiff's Note have been forestalled by the multitude of

14  pleadings filed by the Plaintiff.  Accordingly, the Plaintiff's Motion to Stay should be denied,

15  due to the substantial hardship to the Defendants if the stay is granted and the minimal hardship

16  to the Plaintiff if the stay is denied.

17  **F.   THE ASSERTIONS BY THE PLAINTIFF CONCERNING "BULLYING" AND**
18  **     THE NATURE OF LITIGATION ARE MERITLESS ARGUMENTS THAT**
19  **     SHOULD BE DISREGARDED BY THE COURT.**

           The Plaintiff asserts throughout the Motion to the "bullying" efforts of the Defendants
20
    and the need for a stay due to the burdensome nature of litigation.  (See Motion in general).  The
21
    assertions by the Plaintiff should be disregarded by the Court as meritless arguments which fail
22
    to provide support to the Motion.  The Plaintiff is the individual who initiated the lawsuit against
23
    the Defendants.  The Plaintiff has filed a multitude of pleadings asserting various degrees of
24
    fraud and malfeasance onto the Defendants without any substantive proof to support the
25
    assertions.  The Plaintiff fails to provide any supportive documentation beyond a generalized
26

27  ─────────────────────

28  [35] A true and correct copy of the Trustee's Deed upon Sale recorded in the Clark County Recorder's Office as book
    and instrument number 201202080001824 is attached to Defendants' Response as **Exhibit A**.
    [36] Id.

1   statement concerning fraud and the need for "wet-ink" signatures on the documents. The

2   Defendants have been forced to defend against meritless pleadings, despite the presentment of

3   proof of Standing to foreclosure on the Property. Therefore, the Plaintiff's Complaint and the

4   actions of the Plaintiff are the true source of the alleged "burdensome" litigation.

5          The basic fact is that the Plaintiff has been living rent and mortgage free at the Property

6   for over four (4) years and still refuses to vacate the Property. The assertion by the Plaintiff

7   concerning consolidation and multiple litigations fails to understand the nature of a foreclosure.

8   The Plaintiff's Complaint and the Complaint for Unlawful Detainer are two separate legal

9   avenues premised on two separate legal theories. The actions of both litigations are independent

10  and should not be consolidated. The Defendant, HSBC, and other Defendants have a choice to

11  appoint multiple law firms to pursue different legal avenues in different court systems in the

12  State of Nevada. It is common practice in wrongful foreclosure cases for an eviction to occur

13  while the litigation is still ongoing in the court system. The mere fact that the multiple litigations

14  and multiple jurisdictions are burdensome fails to assert good "cause" to stay the eviction. Based

15  on the lack of substantive legal arguments to support the Motion, the Plaintiff's Motion to Stay

16  Eviction should be denied.

17                    **III.    CONCLUSION**

18         Based upon the above, the Defendants, Wells Fargo and MERS, respectfully request the

19  Court to enter an Order denying the Plaintiff's Motion to Stay Eviction.

20

21  DATED this 21st day of May, 2012.

22

23                              WRIGHT, FINLAY & ZAK, LLP

24                              _____  #11547

25                              Donna M. Osborn, Esq.
                                Nevada Bar No. 006527
26                              5532 South Fort Apache Road, Suite 110
                                Las Vegas, NV 89148
27                              *Attorney for Defendants, Wells Fargo Bank, N.A.*
                                *and MERS*
28

1

## CERTIFICATE OF MAILING

2     I HEREBY CERTIFY that I am employee of WRIGHT, FINLAY, & ZAK, LLP; that

3   service of the foregoing **DEFENDANTS, WELLS FARGO BANK N.A. AND MERS'S,**

4   **RESPONSE TO THE PLAINTIFF'S MOTION FOR ORDER TO STAY EVICTION** was

5   made on the 21st day of May, 2012, by depositing a true and correct copy of the same in the

6   United States Mail, at Las Vegas, Nevada, addressed as follows:

7   Dennis Scarberry
8   3005 Milton Place
    N. LV, NV 89032
9   *Plaintiff Pro Per*

10                                                    Employee of WRIGHT, FINLAY, & ZAK, LLP

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# EXHIBIT A

# EXHIBIT A

Inst #: 201202080001824
Fees: $18.00 N/C Fee: $0.00
RPTT: $1221.45 Ex: #
02/08/2012 12:41:10 PM
Receipt #: 1060543
Requestor:
LSI TITLE AGENCY INC.
Recorded By: MSH   Pgs: 3
**DEBBIE CONWAY**
CLARK COUNTY RECORDER

A.P.N.: 139-08-112-021

RECORDING REQUESTED BY:
Western Progressive, LLC

AND WHEN RECORDED TO:
**HSBC Bank USA, N.A., as Trustee for the**
**registered holders of Renaissance Equity**
**Loan Asset-Backed Certificates, Series 2007-3**
**c/oOcwen Loan Servicing, LLC**
**1661 Worthington Road**
**West Palm Beach, FL 33409**

**Forward Tax Statements to**
**the address given above**

_____

SPACE ABOVE LINE FOR RECORDER'S USE

T.S. # **2010-05582**       Loan #: **103394516**
Order #: **100583106**

**The undersigned hereby affirms that there is no Social Security number contained in this document.**

## TRUSTEE'S DEED UPON SALE

**THIS TRANSACTION IS EXEMPT FROM THE REQUIREMENTS OF THE REVENUE AND TAXATION CODE, SECTION 480.3**

Transfer Tax: **$1,221.45**
The Grantee Herein was the Foreclosing Beneficiary.
The Amount of the Unpaid Debt was **$239,131.22**
The Amount Paid by the Grantee was **$239,131.22**
Said Property is in the City of **NORTH LAS VEGAS**, County of **Clark**

"This instrument is being recorded as an
ACCOMMODATION ONLY, with no
Representation as to its effect upon title"

**Western Progressive, LLC**, as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

**HSBC Bank USA, N.A., as Trustee for the registered holders of Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3**

(herein called Grantee) but without covenant or warranty, expressed or implied, all rights, title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **Clark**, State of Nevada, described as follows:

LOT SIXTY THREE (63) IN BLOCK TWO (2) OF CASA LINDA UNIT 12 A, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 49 OF PLATS, PAGE 24, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by DENNIS E. SCARBERRY as Trustor, dated 4/30/2007 of the Official Records in the office of the Recorder of Clark, Nevada under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Breach and Election to Sell under the Deed of Trust recorded on **5/11/2007**, instrument number **20070511-0002160** Book —, Page --- **and rerecorded on --- as ---** of official records. Trustee having complied with all applicable statutory requirements of the State of Nevada and performed all duties required by the Deed of Trust including sending a Notice of Breach and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified return receipt mail, postage pre-paid to each person entitled to notice in compliance with Nevada Civil Code 107.050

# TRUSTEE'S DEED UPON SALE

T.S. #: 2010-05582
Loan #: 103394516
Order #: 100583106

All requirements per Nevada Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with.  Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on 2/1/2012.  Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being **$239,131.22**, in lawful money of the United States, in pro per, receipt thereof is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, Western Progressive, LLC, as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws

Date: 2/6/2012                                      Western Progressive, LLC as trustee

Natalie Howard

State of Georgia
County of Dekalb

On  **February 6, 2012** before me, the undersigned Tunisha Jennings Notary Public, personally appeared Natalie Howard, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature

Tunisha Jennings

TUNISHA JENNINGS
NOTARY
EXPIRES
GEORGIA
JUNE 13, 2015
PUBLIC
DEKALB COUNTY

STATE OF NEVADA
DECLARATION OF VALUE FORM
1. Assessor Parcel Number(s)
   a) 139-08-112-021
   b)_____
   c)_____
   d)_____
2. Type of Property:
   a) [ ] Vacant Land      b) [x] Single Fam. Res.
   c) [ ] Condo/Twnhse     d) [ ] 2-4 Plex
   e) [ ] Apt. Bldg        f) [ ] Comm'l/Ind'l
   g) [ ] Agricultural     h) [ ] Mobile Home
      [ ] Other

| FOR RECORDER'S OPTIONAL USE ONLY |
|---|
| Book:_____ Page:_____ |
| Date of Recording:_____ |
| Notes: |

3. Total Value/Sales Price of Property          $ $239,131.22
   Deed in Lieu of Foreclosure Only (value of property)  (_____)
   Transfer Tax Value:                          $ $239,131.22
   Real Property Transfer Tax Due               $ $1,221.45
4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section _____
   b. Explain Reason for Exemption: *Bid Plus Cost*

5. Partial Interest: Percentage being transferred: _____ %
   The undersigned declares and acknowledges, under penalty of perjury, pursuant to
NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and
belief, and can be supported by documentation if called upon to substantiate the information provided herein.
Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional
tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030,
the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature_____ Capacity *agent*

Signature_____ Capacity _____

| **SELLER (GRANTOR) INFORMATION**<br>**(REQUIRED)** | **BUYER (GRANTEE) INFORMATION**<br>**(REQUIRED)** |
|---|---|
| Print Name: **Western Progressive** | Print Name: **HSBC Bank USA, N.A., as Trustee**<br>**for the registered holders of Renaissance Equity Loan**<br>**Asset-Backed Certificates, Series 2007-3** |
| Address: **P.O. Box 105265** | Address: **C/O Ocwen Loan Servicing, LLC**<br>**1661 Worthington Road** |
| **Atlanta, GA 30304** | **West Palm Beach, FL 33409** |

**COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**
Print Name:_____ LSI Title Agency, Inc. _____    Escrow #: *1005 831 06*
Address:_____ 3220 El Camino Real _____
City:_____ Irvine CA 92602 _____    State:_____ Zip:_____

**AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED**

**EXHIBIT B**

**EXHIBIT B**

**EXHIBIT B**

## IN THE SUPREME COURT OF THE STATE OF NEVADA

BEN M. MILLER,
Appellant,
  vs.
AURORA LOAN SERVICES, LLC, A
NEVADA LIMITED LIABILITY
COMPANY,
Respondent.

No. 58532

FILED

MAR 3 0 2012

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
   DEPUTY CLERK



### ORDER OF AFFIRMANCE

This is an appeal from a district court order denying a petition for judicial review in a foreclosure mediation action. Second Judicial District Court, Washoe County; Patrick Flanagan, Judge.

Following an unsuccessful mediation conducted under Nevada's Foreclosure Mediation Program (FMP), appellant Ben Miller filed a petition for judicial review in district court. Miller contended that respondent Aurora Loan Services' conduct was sanctionable because it failed to comply with the FMP's statutory requirements.[1] See NRS 107.086(4), (5). The district court denied Miller's petition and ordered that a foreclosure certificate be issued. We affirm.

Standard of review

We review a district court's factual determinations deferentially, Ogawa v. Ogawa, 125 Nev. 660, 668, 221 P.3d 699, 704 (2009) (a "district court's factual findings . . . are given deference and will be upheld if not clearly erroneous and if supported by substantial evidence"), and its legal determinations de novo, Clark County v. Sun

---

[1]The parties are familiar with the facts, and we do not recount them further except as necessary to our disposition.

12- 10110

State Properties, 119 Nev. 329, 334, 72 P.3d 954, 957 (2003).   Absent factual or legal error, the choice of sanction in an FMP judicial review proceeding is committed to the sound discretion of the district court. Pasillas v. HSBC Bank USA, 127 Nev. ___, ___, 255 P.3d 1281, 1287 (2011).

The district court did not abuse its discretion in ordering that a foreclosure certificate be issued

To obtain a foreclosure certificate, a deed of trust beneficiary must strictly comply with four requirements: (1) attend the mediation, (2) participate in good faith, (3) bring the required documents, and (4) if attending through a representative, have a person present with authority to modify the loan or access to such a person.   NRS 107.086(4), (5); Leyva v. National Default Servicing Corp., 127 Nev. ___, ___, 255 P.3d 1275, 1279 (2011) (concluding that strict compliance with these requirements is necessary).

Here, Miller's only arguments that are properly presented on appeal relate to document production.[2]   Specifically, Miller contends that

---

[2]Miller's opening brief makes several observations in its "Statement of the Case" regarding alleged shortcomings at the mediation: (1) Deutsche Bank, and not Aurora, actually owns his loan; (2) Aurora failed to provide any of the required documents prior to the mediation; and (3) Aurora's document certification did not certify that Aurora was in possession of the original copy of the MERS assignment.

Because Miller's brief does not make clear whether these observations are meant as additional bases for reversing the district court's order, we decline to consider them as such.   Specifically, if Miller's observations were intended as arguments in this regard, we would have expected Miller to discuss them in the "Argument" section of his brief and allude to them in his "Statement of Issues Presented for Review."   See NRAP 28(a)(8) ("The appellant's brief shall . . . contain . . . a summary of *continued on next page...*

the documents produced by Aurora were deficient in two respects: (1) the assignment produced by Aurora was not effective to assign the interest in his promissory note, and (2) his original lender did not endorse the note before transferring it to Aurora. We address each argument in turn.

<u>The MERS assignment effectively assigned the interest in Miller's deed of trust and promissory note</u>

At the mediation, Aurora provided a copy of Miller's deed of trust, his promissory note, and an assignment generated by MERS. In relevant part, the assignment stated:

> [S]aid Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust, secured thereby, <u>with all moneys now owing or that may hereafter become due or owing in respect thereof</u> . . . .

(Emphasis added.)

We disagree with Miller's contention that this language was insufficient to transfer ownership of the note in addition to the beneficial interest in the deed of trust. To be sure, as Miller points out, most MERS assignments expressly assign "the said Deed of Trust together with the Note." And while such language makes clear what the assignment is purporting to do, it is not necessary for an assignment to expressly refer to "the Note" in order to transfer ownership of the note.

As for the assignment in this case, we conclude that the aforementioned underlined language purports to transfer ownership of the note. Because nothing is "owed" under a deed of trust, the only reasonable interpretation of this language is a reference to the underlying note.

---

*...continued*
the argument, which must contain a succinct, clear, and accurate statement of the arguments made in the body of the brief . . . .").

Thus, the MERS assignment was sufficient to transfer both the beneficial interest in Miller's deed of trust and ownership of Miller's note from his original lender to Aurora.

<u>The note did not need to be endorsed</u>

  This conclusion obviates the need for the note to have been endorsed. As we observed in <u>Leyva</u>, "[f]or a note in order form to be enforceable by a party other than to whom the note is originally payable, the note must be <u>either</u> negotiated <u>or</u> transferred." 127 Nev. at ___, 255 P.3d at 1280 (emphases added).

  <u>Leyva</u> and Article 3 of Nevada's Uniform Commercial Code make clear that "negotiation" and "transfer" are two similar, but nevertheless distinct, concepts. When the holder of a note in order form endorses the note and gives possession of the note to a new entity, the note is thereby "negotiated," and the new entity becomes the holder. <u>Id.</u> at ___, 255 P.3d at 1280 (citing NRS 104.3201).

  However, an endorsement is not necessary for a valid transfer. <u>Id.</u> at ___, 255 P.3d at 1281; <u>cf.</u> NRS 104.3203(2) ("Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument . . . ."). Because a transferred note is not endorsed, the party seeking to establish its right to enforce the note "'must account for possession of the unendorsed instrument by proving the transaction through which the transferee acquired it.'" <u>Leyva</u>, 127 Nev. at ___, 255 P.3d at 1281 (quoting U.C.C. § 3-203 cmt. 2, which explains the effect of § 3-203(b), codified in Nevada as NRS 104.3203(2)). In other words, because the party seeking to enforce the note cannot "prove" its right to enforce via a valid endorsement, the party must "prove" by some other means that it was given possession of the note for the purpose of enforcing it. <u>Id.</u>

As is customary in the secondary mortgage market, such "proof" generally comes in the form of a valid assignment of the deed of trust and corresponding promissory note—which, as explained previously, is what the MERS assignment in this case accomplished. Consequently, Aurora was entitled to enforce the note even though the note was not endorsed. We therefore

ORDER the judgment of the district court AFFIRMED.[3]

_____ , J.
Gibbons

_____ , J.
Pickering

_____ , J.
Parraguirre

---

[3]We conclude that Miller's bad-faith-mediation argument is without merit. Miller's argument is based almost exclusively on Aurora's alleged document-production shortcomings considered above. Miller also argues that Aurora mediated in bad faith by falsely representing that it had produced a "true and correct copy" of his note at the mediation. Specifically, because the note produced at the mediation did not contain a "pre-payment penalty addendum" that was purportedly attached to his original note, Miller contends that Aurora's representation was knowingly false and amounted to bad faith.

Foreclosure Mediation Rule 11.3 requires production of "the mortgage note" at the mediation—not the note and all attachments. Thus, Aurora complied with the Foreclosure Mediation Rules. Absent other evidence pertaining to Aurora's alleged mindset, we reject Miller's allegation that Aurora's representation in the document certification amounted to bad faith.

cc:   Hon. Patrick Flanagan, District Judge
      Robertson & Benevento/Reno
      McCarthy & Holthus, LLP/Las Vegas
      McCarthy & Holthus, LLP/Reno
      Washoe District Court Clerk

# EXHIBIT C

# EXHIBIT C

# EXHIBIT C

# IN THE SUPREME COURT OF THE STATE OF NEVADA

TERRY J. THOMAS,
Appellant,
    vs.
BAC HOME LOANS SERVICING, LP,
D/B/A BANK OF AMERICA HOME
LOANS SERVICING, LP, A FOREIGN
LIMITED PARTNERSHIP; AND
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., A
FOREIGN ENTITY,
Respondents.

No. 56587

**FILED**

DEC 2 9 2011

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
    DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a district court order in a foreclosure action. Second Judicial District Court, Washoe County; Steven R. Kosach, Judge.

Appellant Terry Thomas obtained a $242,000 mortgage from First Magnus Financial Corporation to purchase real property. Thomas executed a promissory note in favor of Magnus and a deed of trust naming Magnus as the lender and respondent Mortgage Electronic Registration Systems, Inc., (MERS) as the nominee beneficiary. Magnus negotiated[1] Thomas's mortgage to Countrywide Bank, who subsequently negotiated it to Countrywide Home Loans. Countrywide Home Loans placed a blank endorsement on the promissory note. In 2008, Countrywide Home Loans

---

[1]The term "negotiated," as used in the context of this appeal, means "a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder." NRS 104.3201.

11-39227

was acquired by Bank of America.  The loan was serviced by respondent BAC Home Loans Servicing, LP, d.b.a. Bank of America Home Loans Servicing, LP.

BAC sent Thomas a letter in late 2009, stating that BAC was now the loan servicer for his mortgage and Freddie Mac was the owner of the note due to a separate contractual relationship with Bank of America. In September 2009, Thomas commenced a quiet title action against BAC, Magnus, and MERS.  All of the defendants defaulted, and the district court entered a default judgment against them.  BAC, Bank of America,[2] and MERS (collectively, respondents), filed a motion to set aside the default judgment, which the district court granted.[3]  Subsequently, respondents filed an answer to the quiet title action and a motion for summary judgment.  The district court found that because respondents were in possession of the promissory note and deed of trust, they were entitled to judgment as a matter of law.  Thomas now appeals.

_____

[2]There is a dispute between the parties regarding the nature of the relationship between Bank of America and BAC; however, because this fact is not material to Thomas's claims, we do not address this issue. Moreover, although Thomas argues that Bank of America was improperly joined to the action, Thomas offered no arguments or authority to support this contention.  Accordingly, we decline to consider an issue that was not briefed by the appellant as required by NRAP 28.

[3]Thomas argues that MERS was never represented by respondents' counsel and that it never appeared in this action.  This contention is without merit and contrary to the evidence in the record.

Discussion

      Thomas presents multiple issues for review, only two of which we address in detail in this order:[4] (1) whether the district court erred in granting summary judgment, an d (2) whether the Nevada Legislature indirectly established the level of documentation necessary for foreclosure actions with the creation of the Foreclosure Mediation Program.[5]

      We conclude that there is no genuine issue of material fact at issue in this case and respondents are entitled to judgment as a matter of law.  Furthermore, we hold that the Nevada Legislature did not limit the admissibility and authentication of promissory notes, deeds of trusts and assignments in civil proceedings to original or certified copies.  Rather, the Nevada Rules of Evidence govern the admissibility and authentication of

---

[4]Thomas also argues that BAC and Bank of America lacked standing to file a motion to set aside the district court's default judgment. We find this contention to be without merit and decline to address it in this order.

[5]Thomas's opening brief lists six issues but fails to discuss three: (1) whether Bank of America was improperly joined to this action, (2) whether documents filed by the Washoe County Recorder's office should be treated like business records for evidentiary purposes, and (3) whether BAC and MERS "have legally cognizable standing to be awarded summary judgment."

NRAP 28(a)(8)(A) requires an appellant's brief to contain "appellant's contentions and the reasons for them" in its argument section. Because Thomas's brief does not comply with NRAP 28 with respect to these three issues, we do not consider them. See NRAP 28(j).

Furthermore, Thomas also argues that respondents lacked standing to file a motion to set aside default judgment.  We conclude that this contention is wholly without merit.

these negotiable instruments and security instruments.   Accordingly, we affirm the district court's judgment.

I.    The district court did not err in granting summary judgment for
      respondents

        Thomas argues that the district court erred in granting summary judgment because (1) respondents did not present any admissible evidence in support of their motion, and (2) respondents have no legal right to the promissory note.[6]  Thomas contends that respondents did not proffer any admissible evidence to support their motion and only offered counsel's statements, and uncertified and unauthenticated photocopies of the promissory note and deed of trust.   Thomas also argues that respondents could not claim ownership of the promissory note because the endorsement from Magnus to Countrywide Bank was on a separate page, and Countrywide Home Loans' endorsement did not contain a payee.   Thomas contends that respondents cannot claim

------

[6]Thomas notes correctly that the district court's order referring to a prior order directing respondents to produce a certified or original copy of the promissory note was erroneous because no such order was ever issued by the district court.  Thomas, however, does not demonstrate how this error was prejudicial to him.  After an examination of the record, we conclude that this misstatement was entirely harmless.

Thomas also asks us to compare a promissory note and endorsement submitted in a related federal court case involving him and Freddie Mac. However, the federal court submissions and the federal court's order were not presented to the district court below.  See Carson Ready Mix v. First Nat'l Bk., 97 Nev. 474, 476, 635 P.2d 276, 277 (1981) (stating that this court cannot consider matters not properly appearing in the record on appeal and has no power to look outside the record of a case).  Further, Thomas did not ask this court to take judicial notice of the submitted materials. Therefore, we decline to consider these materials.

ownership if they were not named in the promissory note and the note was not endorsed to them.

We review orders granting summary judgment de novo. <u>Yeager v. Harrah's Club, Inc.</u>, 111 Nev. 830, 833, 897 P.2d 1093, 1094 (1995). Summary judgment is proper only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. NRCP 56(c); <u>see</u> <u>Wood v. Safeway, Inc.</u>, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). The burden of proving that there is no genuine issue of material fact lies with the moving party. <u>Maine v. Stewart</u>, 109 Nev. 721, 726-27, 857 P.2d 755, 758 (1993). However, once the moving party satisfies his or her burden, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. <u>Id.</u> at 727, 857 P.2d at 759. "[W]hen reviewing a motion for summary judgment, the evidence, and any reasonable inferences drawn from it, must be viewed in a light most favorable to the nonmoving party." <u>Wood</u>, 121 Nev. at 729, 121 P.3d at 1029.

A.   <u>Respondents' motion for summary judgment was supported by admissible evidence</u>

NRCP 56(c) requires a party's motion for summary judgment to contain a concise statement of facts that it claims to be disputed or undisputed with citation to "any pleading, affidavit, deposition, interrogatory, answer, admission, or other evidence upon which the party relies."[7] Evidence introduced in support of, or opposition to, a motion for

---

[7]Thomas argues that respondents' motion did not contain a concise statement as required by NRCP 56(c), but this claim is not supported by the record.

summary judgment must be admissible evidence.   NRCP 56(e); <u>Henry Prods., v. Tarmu</u>, 114 Nev. 1017, 1019, 967 P.2d 444, 445 (1998).   Because authentication is a condition precedent to admissibility, all evidence presented in connection with a summary judgment proceeding must be authenticated.   NRS 52.015.

In this case, Thomas presented no evidence to rebut the authenticity of the promissory note or the deed of trust, nor does he even claim that the documents were not genuine.   Furthermore, the testimony of a witness with personal knowledge that a matter is what it is claimed to be is sufficient for authentication purposes.   NRS 52.025.   Respondents submitted an affidavit by counsel to authenticate the promissory note and deed of trust.   Counsel's affidavit stated that he had personal knowledge of the matter, that he was in possession of the original documents, and that the copies attached to the motion were true and correct copies of the relevant documents.   Therefore, the promissory note and deed of trust used to support respondents' motion for summary judgment were properly authenticated and are admissible.   Thus, respondents' motion was supported by admissible evidence.

   B.   <u>Thomas's arguments concerning ownership of the promissory note are without merit</u>

Thomas makes four arguments regarding the enforceability of the promissory note: (1) because the endorsement by Magnus to Countrywide Bank was on a separate page, it was invalid, (2) Countrywide Home Loans' endorsement was improper because it did not state a payee, (3) an entity cannot claim an interest in a promissory note if it is not named in the promissory note, and (4) there is no evidence that BAC is a beneficiary under the deed of trust.   An examination of the

applicable authority demonstrates that these arguments are without merit.

A promissory note that satisfies the requirements of NRS 104.3104 is a negotiable instrument.[8]   A negotiable instrument is enforceable by a holder or a nonholder who has the rights of a holder. NRS 104.3301.  A holder is a person who acquires the instrument by negotiation.   NRS 104.3201.   An instrument that is payable to an identified person is negotiated by the transfer of possession and endorsement by the holder.   <u>Id.</u>   An instrument payable to bearer, however, may be negotiated by mere transfer of possession alone.  <u>Id.</u>

An endorsement is a signature on an instrument for the "purpose of negotiating the instrument, restricting payment of the instrument, or incurring endorser's liability on the instrument."   NRS 104.3204.  There are two types of endorsements: special and blank.  NRS 104.3205.  A special endorsement is made by the holder and payable to an identified person, while a blank endorsement is made by the holder and is not made payable to an identified person.  <u>Id.</u>  A negotiable instrument with a blank endorsement is payable to bearer.  <u>Id.</u>  Regardless of whether the instrument is payable to an identified person or payable to bearer, the holder may convert the instrument by using either a special endorsement or a blank endorsement.   <u>Id.</u>   Furthermore, a paper affixed to the instrument is considered to be a part of the instrument for the purpose of

---

[8]The parties do not dispute that Article 3 of the Uniform Commercial Code as adopted by the Nevada Legislature (NRS 104.3101 through NRS 104.3605) applies in this case.  <u>See</u> NRS 104.1101, NRS 104.3101.

determining whether a signature was made on the instrument. NRS 104.3204.

Finally, a deed of trust conveys to the trustee the legal title of the property for the purpose of securing the borrower's performance under the note and deed of trust for the benefit of the beneficiary. See NRS 107.020. Generally, the transfer or assignment of a negotiable promissory note carries with it the deed of trust. 55 Am. Jur. 2d Mortgages § 927 (2009) ("The mortgage follows the debt, in the sense that the assignment of the note evidencing the debt automatically carries with it the assignment of the mortgage.").

Here, Thomas executed a promissory note naming Magnus as the payee. Magnus then transferred the promissory note with an endorsement naming Countrywide Bank as the payee on a separate piece of paper affixed to the instrument, which is permissible under NRS 104.3204. Countrywide Bank subsequently negotiated the note to Countrywide Home Loans. Finally, Countrywide Home Loans converted the promissory note from one payable to an identified person to one payable to bearer by placing a blank endorsement on the promissory note.[9]

---

[9]Thomas notes that in a separate but related action in the United States District Court, District of Nevada, that he instituted against Freddie Mac, Freddie Mac had claimed ownership of the promissory note. He makes an argument in his reply brief that "holder" is synonymous with "owner," and questions how both BAC and Freddie Mac could claim ownership of the note. NRS 104.3301(2) specifically states that "a person entitled to enforce the instrument" may be one who "is not the owner of the instrument or is in wrongful possession of the instrument." Furthermore, the status of holder merely pertains to one who may enforce the debt and is a separate concept from that of ownership. U.C.C. § 3-203 cmt. 1 (2004). BAC, as a holder of the note, is entitled to enforce the note

continued on next page . . .

Because BAC is now in possession of the original promissory note and is the holder of the note, BAC is entitled to enforce the instrument against Thomas.  Additionally, since the transfer of the promissory note carried with it the deed of trust, MERS as the nominee beneficiary holds the deed of trust for BAC's benefit.

Thus, respondents hold a valid and legal debt against Thomas that is secured by a deed of trust on the subject property.  Therefore, because no genuine issue of material fact exists regarding the legal title to the property at issue, respondents are entitled to judgment as a matter of law.

II.   <u>The Legislature did not indirectly establish a level of documentation with the creation of the Foreclosure Mediation Program</u>

Thomas argues that the Nevada Legislature indirectly adopted a level of documentation necessary to support foreclosure actions with the creation of the Foreclosure Mediation Program.  He claims that

_____

*. . . continued*

regardless of who has legal title over the instrument.  Finally, BAC does not appear to ever have claimed ownership of the instrument.  It merely maintains that it has the status of a holder.

Thomas also argues that respondents provided no proof of the alleged contractual relationship between BAC and Freddie Mac, or that BAC is a wholly owned subsidiary of Bank of America.  These contentions are irrelevant because they do not affect Thomas's obligations under the deed of trust and promissory note, or respondents' rights.  Thomas does not contend that he is subject to multiple claims and any third-party relationships have no bearing on the relationship between Thomas and the note holder.

only original or certified copies of promissory notes and deeds of trust are admissible into evidence.

Statutory interpretation is a question of law, and we review the district court's interpretation of a statute de novo. <u>Sims v. Dist. Ct.</u>, 125 Nev. 126, 129-30, 206 P.3d 980, 982 (2009). "'Where the language of a statute is plain and unambiguous and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself.'" <u>Madera v. SIIS</u>, 114 Nev. 253, 257, 956 P.2d 117, 120 (1998) (quoting <u>Erwin v. State of Nevada</u>, 111 Nev. 1535, 1538-39, 908 P.2d 1367, 1369 (1995)).

The language of NRS 107.086 is plain and unambiguous. By its very terms, the requirements and procedures set forth within its provisions apply only to proceedings in the Nevada Foreclosure Mediation Program. NRS 107.086(4) (The beneficiary of the deed of trust shall bring to the mediation the original or a certified copy of the deed of trust, the mortgage note and each assignment of the deed of trust or mortgage note.) Therefore, it has no applicability to judicial actions, and Nevada's rules of evidence apply. Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____ C.J.
Saitta

_____, J.          _____, J.
Douglas                              Cherry

_____, J.          _____, J.
Gibbons                              Pickering

_____, J.          _____, J.
Hardesty                             Parraguirre

SUPREME COURT
OF
NEVADA

10

O) 1947A

cc:    Hon. Steven R. Kosach, District Judge
        Patrick O. King, Settlement Judge
        Terry J. Thomas
        Miles, Bauer, Bergstrom & Winters, LLP
        Washoe District Court Clerk