## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

2012 MAY 29  A 10: 32

Dennis E Scarberry

        Plaintiff(s)

   -Vs.-

| | |
|---|---|
| Fidelity Mortgage of New York, a   ) <br> Division of Delta Funding Corp;   ) <br> Ocwen Loan Servicing Company;   ) <br> LLC.; Mortgage Electronic   ) <br> Registration Services (herein MERS);) <br> Western Progressive, LLC; HSBC   ) <br> Bank USA, NA; Cal-Western   ) <br> Reconveyance Corp; Wells Fargo   ) <br> Bank, NA; Renaissance Mortgage   ) <br> Acceptance Corporation; LSI Title   ) <br> Agency Inc, and Does 1-50 Inclusive;) | **CASE NO.** <br><br> **2:12-cv-00128-KJD-CWH** <br><br> **PLAINTIFF'S ANSWER TO** <br> **TO DEFENDANT(S) RESPONSE** <br> **TO PLAINTIFF'S MOTION AND** <br> **FOR ORDER TO STAY** <br> **EVICTION;** |

        Defendant(s)

(SIX PAGE FILING WITH JUSTICE
COURT OF NORTH LAS VEGAS)

---

**PLAINTIFF'S ANSWER TO DEFENDANT(S) WELLS FARGO BANK N.A.. AND
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S
RESPONSE TO PLAINTIFF'S MOTION AND ORDER TO STAY EVICTION**

Plaintiff has read the response from counsel on behalf of Defendant(s), Wells

Fargo Bank and MERS. They make many arguments all or most of which are not

supported by the documents and/or their misreading of those document(s). Defendant(s)

are making claims that Plaintiff believes not true and that they are doing so knowingly and

including this court in their fraud.

> *"If you tell a lie that's big enough, and you tell it often enough, people will
> believe you are telling the truth, even when what you are saying has no basis in
> truth or fact."*

Plaintiff would like to note that no matter what level of conviction that    1

Defendant(s) appear to have in their argument(s), that bravado does not render their statement(s) true. Defendant(s) are painting a picture that portrays them in the best light. That is only understandable, Plaintiff admits to being his own advocate as well. The difference is that Plaintiff knows that the facts support his position(s), and that he is the only party that has first hand knowledge of any of the transaction(s) and/or event(s) of this business dealing. Whatever argument(s) Defendant(s) present are based on hearsay, falsified document(s), and assumption(s) as Plaintiff believes that no one can step forward with personal knowledge of the actual occurrences of the actions in question other than Plaintiff.

Plaintiff also takes this opportunity to point out that Defendant(s) are making every effort they can think of to avoid showing and/or proving their Standing, by simply being forthcoming with document(s) that support their position that they are the Owner and Holder of Plaintiff's Promissory Note, or in any way have standing as a Party of Interest to move against Plaintiff and/or his property.

Plaintiff also hoped that opposing counsels would have in fact simply cooperated with Plaintiff's request, so that this Court and the Plaintiff, did not have to waste it's/their time reading argument(s) from Defendant(s) as to why they don't have to produce document(s) to prove their actions as a Party in Interest are in fact legal. Plaintiff alleges that it is because they can't, not that they won't. Plaintiff also knows that if they cannot produce those document(s) as is Plaintiff's right to request, then it is only reasonable that Plaintiff wouldn't know in fact who can/could deliver him the Deed of Trust when all is said and done. Plaintiff believes that none of the Parties other than Plaintiff that has any standing in relationship to the property in question.                2

In the Response from Defendant(s) that Plaintiff is addressing here, Counsel has all but said outright that they do NOT possess the proper document(s). This is more reason that this Court should compel Defendant(s) to prove their Standing as per their insinuated, near admission(s) of such.

These are some of the exact reasons that Plaintiff brought this action forward in the first place. Defendant(s) wanted Plaintiff to continue to pay, give them blind unquestioned authority, and began to bully him when they knew that they could not deliver what was requested by Plaintiff or would be required when and if the debt would be cured by Plaintiff, which would be the ability of Defendant(s) to sign off on the Deed of Trust, rendering Plaintiff in a situation where he would not have all right(s) of ownership for the property that had been released from the paid mortgage. The title is so clouded that Defendant(s) would not be able to do that.

Plaintiff will now proceed to belabor the points brought up by Defendant(s) arguments(s) and will do so in a fashion that represents the same order of presentation by Defendant(s).

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1. STATEMENT OF FACTS

Defendant(s) hold up for proof to Plaintiff, on page 2 of 17, under [1]. Statement of Facts of their response . Defendant(s) make note of the Deed of Trust signed on 30 Apr 2007. They mention that Fidelity Mortgage of New York as Lender, designated MERS as "Nominee", for Fidelity Mortgage of New York, a Division of Delta Funding Corporation.

> Black Law defines a Nominee as *"[a] person designated to act in the place of another, usually in a very limited way."*

3

beneficiary *n pl* **-ciaries**
*1. a person who gains or benefits in some way from something*
*2. (Law) Law a person entitled to receive funds or other property under a trust,*
*will, or insurance*

MERS is an electronic registration company and nothing more. The real question
is whether MERS is a Nominee or a Beneficiary and what "actual" right(s) have been
transferred and/or bestowed through a verifiable request from the Lender? MERS has
testified in Court several times that they are not a party of interest and suffer NO harm if
the debt is, or is not paid. They have NO skin in the game. As defined above, a Beneficiary
must gain or benefit in some way, or suffer loss or harm, and is a person who is entitled to
receive funds/property under a trust. In MERS case, the funds or other benefit are not
paid or due to MERS. MERS loaned absolutely nothing to Plaintiff, and has/have NO
interest in whether the Plaintiff's Promissory Note is paid or not and suffers no harm or
damage as a result .

> *On September 25, 2009, Mr. R.K. Arnold was deposed in Alabama. Mr. Arnold*
> *(officer of MERS), admitted MERS does not have a beneficial interest in any*
> *loan, does not loan money and does not suffer a default if monies are not paid.*
>
> *On November 11, 2009, William C. Hultman (Secretary and Treasurer of MERS)*
> *was deposed in Alabama and made the same admissions.*

Herein following Plaintiff is setting stones in place that will play later as the
premeditated fraudulent and unethical business practices of Defendant(s) all come together
to show the intricate web that has been woven as a foundation to deceive Plaintiff and
millions of other Homeowners throughout the United States.

### MERS has absolutely NO EMPLOYEES! "Deposition of Secretary and Treasurer of MERSCORP- William C. Hultman";

Q Does MERS have any salaried employees? A No.                    4

Q Does MERS have any employees? A Did they ever have any? I couldn't hear you.

Q Does MERS have any employees currently? A No.

Q In the last five years has MERS had any employees? A No.

Q To whom do the officers of MERS report? A The Board of Directors.

Q To your knowledge has Mr. Hallinan ever reported to the Board? A He would have reported through me if there was something to report.

Q So if I understand your answer, at least the MERS officers reflected on Hultman Exhibit 4, if they had something to report would report to you even though you're not an employee of MERS, is that correct? MR. BROCHIN: Object to the form of the question. A That's correct.

Q And in what capacity would they report to you? A As a corporate officer. I'm the secretary.

Q As a corporate officer of what? A Of MERS.

Q So you are the secretary of MERS, but are not an employee of MERS? A That's correct. [etc...]

Q How many assistant secretaries have you appointed pursuant to the April 9, 1998 resolution; how many assistant secretaries of MERS have you appointed? A I don't know that number.

Q Approximately? A I wouldn't even begin to be able to tell you right now.

Q Is it in the thousands? A Yes.

Q Have you been doing this all around the country in every state in the country? A Yes.

Q And all these officers I understand are unpaid officers of MERS? A Yes.

Q And there's no live person who is an employee of MERS that they report to, is that correct, who is an employee? MR. BROCHIN: Object to the form of the question. A There are no employees of MERS.

This model used by MERS constitutes a license for MERS to use people they

don't even know, that have absolutely no knowledge of what they are doing,          5

and/or the "nominal" employee has no knowledge of what they are being asked to do. They act by as per MERS election of any employee of one of it's member(s) to act as an uncompensated, unsalaried, "Vice-President(s)" of their Corporation. In fact MERS will have these "elected" agent(s) of MERS multiple times for multiple companies, in multiple capacities and titles. *"It's like a box of chocolates!"*

That is why/how the infamous, Ms. Linda Green in/of Florida was Vice President for twenty (20) different Lender(s) and financial institution(s) and banks, at the same time.

In fact, Ms. Green was a mail clerk at DOX, making $10.00 per hour, while forty (40) people were busy signing her name on critical document(s), recreating them. Testimony by the tabled Robo-Signer(s) was that up to forty (40) of them would sit around a table signing thousands of manufactured document(s) a day, with absolutely no idea or knowledge of what it was that they were signing.

**Banks, Mortgages, Forgeries and Foreclosures**: 60 Minutes, CBS News, 4-3-2011

http://www.youtube.com/watch?v=IKwB1BaFu9Q&feature=related

**The Evidence of Bankster fraud:**

http://www.youtube.com/watch?NR=1&feature=endscreen&v=oYCsQ_naLI4

**Mortgage Fraud Linda Green 60 Minutes document courtroom video:**

http://www.youtube.com/watch?v=O5As9KRGtHE

Therefore not only does MERS randomly select/elect Vice Presidents, people they don't even know, that work at other companies, and do so to facilitate the fraudulent activities that they must perform in order to "fill" the gaps and omissions or rearrange their shoddy (paper)work, fraudulent or NON-filings, and to "manufacture" false, after the fact document(s) in order to give the appearance of having done things the           6

correct way in the first place.

## The Nature of MERS' Business

MERS does not take applications for, underwrite or negotiate mortgage loans. MERS does not make or originate mortgage loans to consumers. MERS does not extend any credit to consumers. MERS has no role in the origination or original funding of the mortgages or deeds of trust for which it serves as "nominee". MERS does not service mortgage loans. MERS does not sell mortgage loans. MERS is not an investor who acquires mortgage loans on the secondary market. MERS does not ever receive or process mortgage applications.

*MERS simply holds mortgage liens in a limited nominee capacity* and through its electronic registry, tracks changes in the ownership of mortgage loans and servicing rights related thereto.

MERS© System is not a vehicle for creating or transferring beneficial interests in mortgage loans. MERS is not named through assignment of the Promissory Note, as a beneficiary of the alleged promissory note.

Plaintiff goes on to state additional fact(s) regarding MERS;

## Ownership of Promissory Notes or Mortgage Indebtedness

MERS is never the owner of the promissory note. MERS has no legal or beneficial interest in the promissory note underlying the security instrument for which it serves as "nominee". MERS has no legal or beneficial interest in the loan instrument underlying the security instrument for which it serves as "nominee"

MERS has no legal or beneficial interest in the mortgage indebtedness underlying the security instrument for which it serves as "nominee". MERS has no interest      7

at all in the promissory note evidencing the mortgage indebtedness. MERS is not a party to the alleged mortgage indebtedness underlying the security instrument for which it serves as "nominee". MERS has no financial or other interest in whether or not a mortgage loan is repaid.

MERS is not the owner of the promissory note secured by the mortgage and has no rights to the payments made by the debtor on such promissory note. MERS does not make or acquire promissory notes or debt instruments of any nature and therefore cannot be said to be acquiring mortgage loans.

MERS has no interest in the notes secured by mortgages or the mortgage servicing rights related thereto. MERS does not acquire any interest (legal or beneficial) in the loan instrument (i.e., the promissory note or other debt instrument). MERS has no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans.

> *The note owner appoints MERS to be its agent to only hold the mortgage lien interest, not to hold any interest in the note, as a very restricted "nominee" or otherwise "nominal officer" with very limited right(s), including the Right(s) to transfer only WITH a verifiable direct request/order from the lender, or lender's servicing company, however MERS, even with this authorization must be in possession of the promissory note at the time they make/perform, any/all assignment(s) of any beneficial right(s) to a successor(s) benefit.*

MERS does not hold any interest (legal or beneficial) in the promissory notes that are secured by such mortgages or in any servicing rights associated with the mortgage loan. The debtor on the note owes no obligation to MERS and does not pay MERS on the note.

8

## **MERS' Accounting of Mortgage Indebtedness / MERS Not At Risk**

MERS is not entitled to receive any of the payments associated with the alleged mortgage indebtedness. MERS is not entitled to receive any of the interest revenue associated with mortgage indebtedness for which it serves as "nominee". Interest revenue related to the mortgage indebtedness for which MERS serves as "nominee" is never reflected within MERS' bookkeeping or accounting records nor does such interest influence MERS' earnings. Mortgage indebtedness for which MERS serves as the "nominee" is not reflected as an asset on MERS' financial statements. Furthermore...

Failure to collect the outstanding balance of a mortgage loan will not result in an accounting loss by MERS. When a foreclosure is completed, MERS never actually retains or enjoys the use of any of the proceeds from a sale of the foreclosed property, but rather would remit such proceeds to the true party at interest. MERS is not actually at risk as to the payment or nonpayment of the mortgages or deeds of trust for which it serves as "nominee". MERS has no pecuniary interest in the promissory notes or the mortgage indebtedness for which it serves as "nominee". MERS is not personally aggrieved by any alleged default of a promissory note for which it serves as "nominee".

There exists no real controversy between MERS and any mortgagor alleged to be in default. MERS has never suffered any injury by arising out of any alleged default of a promissory note for which it serves as "nominee".

## **MERS' Interest in the Mortgage Security Instrument**

MERS holds the mortgage lien as nominee for the owner of the promissory note. MERS, in a nominee capacity for lenders, merely acquires legal title to the          9

Security instrument (i.e., the deed of trust or mortgage that secures the loan). MERS simply holds legal title to mortgages and deeds of trust as a nominee for the owner of the promissory note. *MERS immobilizes the mortgage lien while transfers of the promissory notes and servicing rights continue to occur.*

The investor(s) continue to own and hold the promissory note, but under the MERS® System, the servicing entity only holds contractual servicing rights and MERS holds legal title to the mortgage as nominee for the benefit of the investor (or owner and holder of the note) and not for itself.

In effect, the mortgage lien becomes immobilized by MERS continuing to hold the mortgage lien when the note is sold from one investor to another via an endorsement and delivery of the note or the transfer of servicing rights from one MERS member to another MERS member via a purchase and sale agreement which according to MERS, is a non-recordable contract. Legal title to the mortgage or deed of trust remains in MERS after such transfers and is tracked by MERS in its electronic registry.

*Local Jurisdictions who are suffering revenue loss do not agree with MERS assertion of being "non-recordable".*

### Beneficial Interest in the Mortgage Indebtedness

MERS holds legal title to the mortgage for the benefit of the owner of the note. The beneficial interest in the mortgage (or person or entity whose interest is secured by the mortgage) runs to the owner and holder of the promissory note and/or servicing rights thereunder. MERS has no interest at all in the promissory note evidencing the mortgage loan. MERS does not acquire an interest in promissory notes or debt instruments of any nature. The beneficial interest in the mortgage (or the person or entity whose interest is

10

secured by the mortgage) runs to the owner and holder of the promissory note (NOT MERS).

## MERS As Holder

MERS is never the holder of a promissory note in the ordinary course of business. MERS is not a custodian of promissory notes underlying the security instrument for which it serves as "nominee". MERS does not even maintain copies of the promissory notes underlying the security instrument for which it serves as "nominee".

Sometimes when an investor or servicer desires to foreclose, the servicer obtains the promissory note from the custodian holding the note on behalf of the mortgage investor and places that note in the hands of a servicer employee who has been *appointed as an officer (vice president and assistant secretary) of MERS by corporate resolution.*

When a promissory note is placed in the hands of a servicer employee who is also a MERS officer, MERS asserts that this transfer of custody into the hands of this nominal officer (without any transfer of ownership or beneficial interest), renders it an *"in-house"* transaction or assignment and according to MERS, does not then require that MERS file at the appropriate local recording office to where the loan was made, the transaction conducted, and the property located within.

This is obviously a circumvention of following the chain of proper authority and having document(s) executed in a proper manner, filed as they should be, as they blatantly attempt to ignore five (5) centuries of established land and property recording and tracking procedure(s)/processes.

This would only be possible if the criminal has/had a shill, and that multiple Defendant(s), each and every one of them, had to act in concert at some time,      11

to commit every offense against Plaintiff that have they committed, and very indicative of mutual back scratching by the Defendant(s) collectively. The Defendant(s) and everyone of them are in on it together.

No consideration or compensation is exchanged between the owner of the promissory note and MERS in consideration of this transfer in custody. Even when the promissory note is physically placed in the hands of the servicer's employee who is a nominal MERS officer, MERS has no actual authority to control the foreclosure or the legal actions undertaken in its name. MERS will never willingly reveal the identity of the owner of the promissory note unless ordered to do so by the Court. MERS will never willingly reveal the identity of the prior holders of the promissory note unless ordered to do so by the Court.

Since the transfer in custody of the promissory note is not for consideration, this transfer of custody is not reflected in any contemporaneous accounting records. MERS is never a holder in due course when the transfer of custody occurs after default. MERS is never the holder when the promissory note is shown to be lost or stolen.

### MERS' Role in Mortgage Servicing

MERS does not service mortgage loans. MERS is not the owner of the servicing rights relating to the mortgage loan and MERS does not service loans. MERS does not collect mortgage payments. MERS does not hold escrows for taxes and insurance. MERS does not provide any servicing functions on mortgage loans, whatsoever. Those rights are typically held by the servicer of the loan, who may or may not also be the holder of the note.

### MERS' Rights To Control the Foreclosure                    12

MERS must all times comply with the instructions of the holder of the mortgage

loan promissory notes. MERS only acts when directed to by its members and for the sole

benefit of the owners and holders of the promissory notes secured by the mortgage

instruments naming MERS as nominee owner. MERS' members employ and pay the

attorneys bringing foreclosure actions in MERS' name.

### MERS' Access To or Control Over Records or Documents

MERS has never maintained archival copies of any mortgage application for which

it serves as "nominee". In its regular course of business, MERS as a corporation does not

maintain physical possession or custody of promissory notes, deeds of trust or other

mortgage security instruments on behalf of its principals. MERS as a corporation has no

archive or repository of the promissory notes secured by deeds of trust or other mortgage

security instruments for which it serves as nominee. MERS as a corporation is not a

custodian of the promissory notes secured by deeds of trust or other mortgage security

instruments for which it serves as nominee.

MERS as a corporation has no archive or repository of the deeds of trust or other

mortgage security instruments for which it serves as nominee. In its regular course of

business, MERS as a corporation does not routinely receive or archive copies of the

promissory notes secured by the mortgage security instruments for which it serves as

nominee. In its regular course of business, MERS as a corporation does not routinely

receive or archive copies of the mortgage security instruments for which it serves as

nominee.

Copies of the instruments attached to MERS' petitions or complaints do not come

from MERS' corporate files or archives. In its regular course of business, MERS as a corporation does not input the promissory note or mortgage security instrument ownership registration data for new mortgages for which it serves as nominee, but rather the registration information for such mortgages are entered by the "member" mortgage lenders, investors and/or servicers originating, purchasing, and/or selling such mortgages or mortgage servicing rights.

MERS does not maintain a central corporate archive of demands, notices, claims, appointments, releases, assignments, or other files, documents and/or communications relating to collections efforts undertaken by MERS officers appointed by corporate resolution and acting under its authority.

### Management and Supervision

In preparing affidavits and certifications, officers of MERS, including Vice Presidents and Assistant Secretaries, making representations under MERS' authority and on MERS' behalf, are not primarily relying upon books of account, documents, records or files within MERS' corporate supervision, custody or control.

Officers of MERS preparing affidavits and certifications, including Vice Presidents and Assistant Secretaries, and otherwise making representations under MERS' authority and on MERS' behalf, do not routinely furnish copies of these affidavits or certifications to MERS for corporate retention or archival. Officers of MERS preparing affidavits and certifications, including Vice Presidents and Assistant Secretaries, and otherwise making representations under MERS' authority and on MERS' behalf are not working under the supervision or direction of senior MERS officers or employees, but rather are supervised

14

by personnel employed by mortgage investors or mortgage servicers.

*"Fox in the henhouse"*

This is the fraudulent and "MERS" way of changing five (5) centuries of land document recording process(es), without legislation, and thereby, in their mind, justify circumventing the need to record said assignment(s) with the proper local land record(s) recording offices. MERS is falsely asserting that it is/was the owner of the promissory note. Whether MERS is or was ever even the holder is a FACT QUESTION which can be determined only by ascertaining true and recorded chain of custody of the promissory note. When the promissory note is lost, missing or stolen, MERS is NOT the holder.

Plaintiff cites MERS's own "Rules of MERS membership regarding "transfer of rights",

> *Rule 2 section 5, of MERS Membership, rule requires a member to warrant to MERS that the mortgage either names MERS as mortgagee or that they prepare an assignment of mortgage naming MERS as mortgagee.*

> *MERS does not as to Plaintiff's ability determine that they are even registered with the NMLS and/or possess a NMLS number as required for any mortgage loan originator, lender, servicer, Promissory Note holder/owner, even the person who takes the application must be registered and have a NMLS Number assigned personally to them, that does any activity or business, in the United States.*

> *MERS-designated mortgages by definition "split" the security instrument (the mortgage) from the debt (the promissory note) when they are signed. This "split" invalidates the mortgage under law.*

> Carpenter v. Longan, 83 U.S. 271,274 (1872)

> **DEED OF TRUST FOLLOWS NOTE**: The concept that a deed of trust follows the Note is long standing law. *The United States Supreme Court first articulated this principle in 1872 in* Carpenter v. Longan, *83 U.S. 271,274 (1872):* "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

15

**The Colorado Supreme Court upholds this principle. "The transfer or assignment of a promissory note carries with it, as an incident, the deed of trust or mortgage upon real estate or chattels that secure its payment." <u>Columbus Investments v. Lewis</u>, 48 P.3d 1222 (Colo. 2002). <u>Stetler v. Winegar</u>, 226 P. 858, 859 (1924). The concept is codified in C.R.S. § 4-9-203(g).**

Where the security interest is invalid upon the signing of the mortgage, MERS cannot occupy the legal position of a "mortgagee" under law no matter what language MERS inserts into their mortgages language that purports to give them the legal position of "mortgagee". Since MERS-designated mortgages are invalid at their inception, it follows logically therefore that MERS mortgages are not legally capable of being recorded in Nevada by its (local) County recording offices.

Second, even if a MERS-designated mortgage were found to be a valid security instrument in Nevada, each and every assignment of the mortgage and note "behind" a MERS-designated mortgage must be recorded on the public land records of the counties of Nevada in order to comply with the law(s) which requires that "conveyances of an estate" be recorded to be valid. A mortgage is a "conveyance of an estate" under law.

Since MERS-designated mortgages exist for the primary purpose of holding "legal" title on the public land records while the "beneficial" interest is transferred and sold multiple times (and a mortgage cannot exist without a note under long establish law). MERS-mortgages unlawfully avoid recording fees due the Counties of Nevada, for the transfer(s) of interests under MERS-designated mortgages.

This type of activity is robbing the local recording offices of fees and monies due them. These fund(s) are very important to our State Government(s) especially in these times of financial problem(s) for the State of Nevada and all other States       16

effected by this practice of circumventing payment(s) away from those local jurisdiction(s). THERE ARE CLASS ACTION LITIGATIONS BEING BROUGHT FORTH AGAINST MERS FOR THOSE FEES. One of the most notable is the collective of County Recorders Offices in Florida that are suing MERS for approximately one-hundred-sixty-million-dollars ($160,000,000.00), of fees that they have been denied their county coffers by execution of the model that MERS follows.

This practice is touted by MERS as one of the advantages of how they save their "members" money. People are being laid off after years of service to their city, county and state jobs due to funding issues, while MERS is robbing local and state offices and agencies revenue legally due them. Why is MERS not compelled to file the assignment(s) as required by Nevada State Law. *Remember, MERS is national, property is LOCAL!*

MERS is perpetrating foreclosure fraud all across the nation. Its business model makes it impossible to legally foreclose on any mortgaged property registered within its System, which includes half of the outstanding mortgages in the US. MERS was a fraud from day one, whose purpose was to evade property recording fees and to subvert five centuries of property law only to facilitate the expedited trading of Securities that are claimed to be backed by home mortgages, the reality of which is not possible as if the "securitized trust/note" would go bankrupt or otherwise cease to exist or do business, the homeowner(s) home would not be in jeopardy of foreclosure if the mortgage was current. As it pertains to the Promissory Note. This indicates that the "individual" component(s) of the Trust are treated differently. Investors risk lose and gain as the nature of their work.

Wall Street wanted to transform America's housing sector into the world's biggest casino and needed to undermine property rights to make it easier to run the

17

scam. The payoffs were bigger for lenders who could induce homeowners to take

mortgages they could not possibly afford. The mortgages were packaged into securities

sold-on to patsy investors who were defrauded by the "reps and warranties" falsely

certifying the securities as backed by top grade loans. In fact the securities were not

backed by mortgages, and in any case the mortgages were sure to go bad. Given that

homeowners would default, the Wall Street banks that serviced the mortgages needed a

foreclosure steamroller to quickly and cheaply throw families out of the homes so that

they could be resold to serve as purported collateral for yet more gambling bets. MERS,

the industry's creation, stepped up to the plate to facilitate the fraud.

   We will discover in this litigation that in reality, Plaintiff's Promissory Note has

been deemed paid and destroyed. Sending the "released lien" Promissory Note to

Plaintiff as required by law that the note is returned to borrower, marked paid, and with

the appropriate lien release(s), as well as the necessary filing(s), releases as they

would pertain to proper execution(s) on the Deed of Trust, would be impossible as

Defendant(s) do not have the Promissory Note, and cannot prove that they are in fact a

real Party in Interest.

   Plaintiff is sure that eventually the Defendant(s) will apply for a lost Note if

Plaintiff does not prevail, and this will prove Plaintiff's position, but Plaintiff is confident

that he will prevail as he speaks only the truth in and to this Court.

   The reality then becomes that the "true" party in Interest has been paid, the

Promissory Note destroyed, and the mortgage becomes a non-descript slice of the security

that is now dependent on market(s), while holding the Plaintiff to an obligation that was

paid in full, and then collected on by Defendant(s) through their default          18

insurance riders anyway.

It seems that while Defendant(s) infer that Plaintiff just want(s) a free house, Plaintiff can show that Defendant(s) are trying to get paid three (3) times the principal amount. How greedy are they? Ruining families, destroying homes, and still whining cause they want three (3) + times their investment.

Maybe by this model, the true Party in Interest is the Insurance Company that paid off the default rider. The Defendant(s) get to collect that on day sixty-one (61) from/of the Foreclosure Sale, their default rider payment. That is exactly why HSBC, as Trustee for the Registered Holders of the Renaissance Mortgage Asset-Backed Securities, 2007-3, "purchased" a toxic asset for three (3) times it's value, was to collect the Default Insurance, and to change the "Status Quo" that existed when Plaintiff filed his complaint.

A mortgage has two parts, the "note" and the "security" (not to be confused with the MBS) or "deed of trust" that is usually just called the "mortgage". The idea behind MERS was that the "note" would be transferred from seller to purchaser, but the "mortgage" would be held by MERS. In fact, MERS recommended that the "note" be held by the mortgage servicer to facilitate foreclosures, but in practice it seems that the notes were often lost or destroyed (which is why all those Burger King Kids were hired to Robo-sign "lost note affidavits").

> Are mortgages processed through the MERS system properly perfected and valid liens? See *Carpenter v. Longan, 83 U.S. at 274* (finding that an assignment of the mortgage without the note is a nullity);
>
> *Landmark Nat'l Bank v. Kesler, 216 P.3d 158, 166-67 (Kan. 2009)* ("[I]n the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable")."

19

To Plaintiff's knowledge of and/or by discovery was, the fatal action of Defendant(s) preparing the assignment naming MERS as mortgagee was never performed, and thereby rendering MERS authority a nullity and ANY subsequent assignment(s) a nullity as well. In fact there has never been real proof shown by Defendant(s) that there was ever a "transfer of rights" to MERS as per assignment on the Promissory Note.

*Plaintiff will be sure to add this to his discovery request(s) for document(s).*

TRANSFER OF PROPERTY RIGHTS heading on page 3 of 16 of the Promissory Note, "MERS is the beneficiary of this security instrument but "solely" as a "nominee" for Lenders and Lender's successors and assigns, and the successors and assigns of MERS." Plaintiff will reference herein below findings and rulings indicate the vagueness of the language as to what/which specific Property Right(s) had been bestowed upon MERS. Counsel for the Defendant(s) should really clarify MERS' role and right as either beneficiary or nominee and explain how MERS can serve as both.

Plaintiff has no trust (pun not intended). Plaintiff did not sign up for a security. A security that everyone except Plaintiff benefits from. Plaintiff signed a Promissory Note and wants Defendant(s) to produce it for examination as requested in the current process of discovery before the Court.

> "The parties appear to have defined the word [nominee] in much the same way that the blind men of Indian legend described an elephant-their description depended on which part they were touching at any given time." Landmark Nat'l Bank v. Kesler, 216 P.3d 158, 166-67 (Kan. 2010). Landmark National Bank vs. Kessler 216 P.3d 158, 166-67 (Kan. 2010).

We have issues here as far as selecting or choosing, which, what, or whom, and what is what, and who is who, so Plaintiff will peel back some layers.

*Paragraph 2 of the MERS terms and conditions provide that*                    20

*"MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee in an administrative capacity", and that "MERS agrees not to assert any rights (other than rights specified in the governing documents) with respect to such mortgage loans or mortgaged properties". Assigning or alienating a mortgage without an explicit instruction from the lender to do so, is not acting in an administrative capacity.*

With that MERS Membership Rule and the term(s) of that rule, MERS must show

that they "in fact", received assignment of "mortgagee" from the "original" lender, on the

Promissory Note, not just a recording of the Deed of Trust saying so. There is no

recording of that transaction, so without Defendant(s) being compelled by this Court to

prove their position among all Plaintiff's concern(s) and that which he brings forth in this

action are repeatedly and undeniably present in the way Defendant(s) have done business

with and treated Plaintiff. By law, the notes are supposed to be at REMIC trustees, held

against the MBS's sold on to investors, and must be presented to foreclose.

*MERS does not create or transfer beneficial interests in mortgage loans or create electronic assignments of the mortgage. What MERS does do, is eliminate the need for subsequent recorded assignments altogether. The transfer process of the beneficial ownership of mortgage loans does not change with the arrival of MERS. Promissory notes still require an endorsement and delivery from the current owner to the next owner in order to change the beneficial ownership of a mortgage loan.*

MERS says, once MERS is named in the original security instrument or by way of

an assignment, the document is then recorded in the appropriate public land records. From

this point on, no subsequent assignments of the mortgage to a MERS member needs to be

recorded. MERS remains in the land records, as mortgagee, throughout the life of the loan

so long as servicing is not sold to a non-MERS member. All subsequent transfers of

ownership in mortgage loans and servicing rights for that loan are tracked electronically

between MERS members through the MERS System. This process eliminates the

21

opportunity for a break in the chain of title. *Sounds good in theory.*

So the basic scam is that when a loan is securitized, MERS is named as the mortgagee of record ("MOM"). Yet MERS does not hold the note. Instead, MERS pretends to hire someone in the firm that holds the note to maintain the fiction that it holds the note. Yet, it is the REMIC trustee that must hold the note **to make the securities lawful**. It is clear throughout that proper procedure is never recommended by MERS, instead, it is recommended that the servicer hold the note in almost all cases.

MERS has recommended that mortgage servicers retain the "wet ink" notes that borrowers signed. These notes are required in 45 states to foreclose on a home. Not only does the foreclosing party need to physically hold the note, but the note must be properly endorsed and transferred every time a mortgage is sold. **A clear chain of title must be demonstrated to make the note valid.** This is to protect borrowers from fraud -- *no one can manufacture a note, claim to be a creditor, and then take a homeowner's property.* And *this is especially important when mortgages are securitized* and bought and sold a dozen times -- *if there is no clear chain of title, the borrower can never be sure who is really the creditor.*

But, in fact, the notes were never transferred, there is no clear chain of paperwork, and in many cases the notes have "disappeared" so that when the servicers or MERS tries to foreclose, they must file "lost note affidavits" claiming rightful ownership even though they do not have evidence. They have also been caught using "robo-signers" to forge documents -- and sometimes they have foreclosed on the wrong properties and even seized homes on which there was no mortgage. That is precisely why the law requires proper transfers of the note. Without that, the mortgage is a fraud and foreclosure  22

is fraudulent.

By itself, all of this is a horrific scandal, involving up to 65 million mortgages, the number of mortgages registered at MERS, most of which presumably were subjected to MERS's guidelines and extremely sloppy record-keeping. But like Shrek's onion, it is much more complicated than that -- with layer after layer of fraud piled on fraud. There are many angles to be explored, most of them very complex and arcane.

Plaintiff will discuss the implications for the securities that bundled the fraudulent mortgages registered at MERS. Not only did MERS defraud the counties out of their recording fees and the homeowners out of their homes, but it also helped to perpetrate securities fraud and federal tax fraud. Fortunately for the investors in these securities, the securitization process was fatally flawed, meaning that they can return to the issuing banks and demand their money back. Every one has a way out except the homeowner(s) and the taxpayer(s), every one else has no responsibility and Plaintiff declares that it is not fair or in any other way an appropriate role for Plaintiff to have to play or a responsibility he should bear to facilitate the greed of the Defendant(s).

Federal Court *Judge Michael Simon in the case of Douglas James v. Recon Trust (Bank of America) reversed* the earlier ruling of a magistrate judge who held that the Mortgage Electronic Registration System (MERS) had the status of a lender or mortgage note holder. Judge Simon wrote: "Because *MERS is neither a lender nor a lender's successor, it is not a beneficiary within the meaning of the statute*..."

*In his 41 page decision, Judge Simon* reversed the earlier holding and meticulously examined the legal status of MERS under Oregon law which will be a powerful resource for Plaintiff's case. The ruling also makes clear that lenders          23

will now have to show who the owner of the loan is and not hide or obscure who is actually owed the money.

The decision also reinforces earlier rulings against MERS, US Bank and others such as *Hooker v. N.W. Trustee Services and In re: McCoy who was represented by Good Grief America attorney network lawyers.*

"The decision of Judge Simon should be seen as reaffirming our Court(s) a place where the rule of law matters. Plaintiff did not set out to seek a free house but only wished to deal with the party who actually owns their loan, try to negotiate a sustainable loan modification with the party who actually owns the note." Because Defendant(s), each and every one of them denied Plaintiff his right to know who he rightfully owed. This was apparently not too easy to do, supported by the fact that three (3) years Defendant(s) did not find a way to make it happen, and to this date, still has not occurred..

*Enough about MERS and the multiple nullities it created to include* not being assigned as beneficiary on the Promissory Note, before assigning to others, but in reality that required action was just passed over and it is Plaintiff's opinion that NO assignment(s) were made and that only when Plaintiff challenged the Standing of the Defendant(s), did they begin to come up with manufactured, fraudulent, document(s).

*On  page 3 of 17* where Defendant(s) are pointing out that there was an earlier Notice of Default that had been rescinded is prejudiced and plays a moot point to the issues at hand.

Also on page 3 of 17 Defendant(s) counsel cites filings in the Recorders Office of the County of Clark, Nevada, but does not cover them in detail but only refers to aspects that they feel support their claim. Basically a "here it is", so we are supported.          24

In reality the document(s) represent the following;

On 02 Feb 2009, a substitution of Trustee was filed in the Recorders Office of the County of Clark, Nevada, citing Plaintiff as original Trustor, Cal Western Reconveyance Corporation was Original Trustee, and that Mortgage Electronic Registration System, Inc., as Nominee for Fidelity Mortgage of New York, a Division of Delta Funding Corporation, as the Original Beneficiary under that said Deed of Trust, and whereas the undersigned (HSBC Bank USA, N.A. as Trustee for the Registered Holders of Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3 / by Michael Moreland, Director of Mortgage Services for), whereas the undersigned substitutes Quality Loan Service Corporation (Ocwen), as Trustee under the Deed of Trust.

We have a couple of problems here, some previously addressed, that there NEVER was an assignment of the Note to MERS in the first place, second that the document only indicates the "original" Trustor, Trustee, and Beneficiary, with NO reference as to why they had to be declared original. Obviously there were other substitutions and or other activities that they were trying to clean up, nonetheless,

At what time or event did HSBC Bank USA, N.A. as Trustee for the Registered Holders of Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3 become as Plaintiff's Lender. They are not Plaintiff's servicer, Who are they?

On 04 Feb 2009, an Assignment of Deed of Trust was recorded at Recorders Office of the County of Clark, Nevada, that this Assignment of the Deed of Trust is from MERS, as nominee for, Fidelity Mortgage of New York, a Division of Delta Funding Corporation (Assignor), to HSBC Bank USA, N.A. as Trustee for the Registered Holders of Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3, with           25

Cal-Western Reconveyance Corporation, still acting as Trustee on the document, two (2)

days after substituting themselves with Quality Loan Services, Corporation (Ocwen).

This also calls for a breakdown and subsequent explanation by Defendant(s) as to

what the heck is going on here.

On 02 Feb 2009 Quality Loans Services Corporation (Ocwen) was appointed as

Trustee by Cal-Western Reconveyance Corporation who substituted themselves as

Trustee. Cal-Western later went on 04 Feb 2009, still acting as Trustee and was part of

the Assignment as the Beneficiary, Fidelity Mortgage of New York, a Division of Delta

Funding Corporation by filing in the Clark County Recorders Office, Nevada.

On 04 Feb 2009 HSBC Bank USA, N.A. as, Trustee for the Registered Holders of

Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3 was assigned by

MERS as Nominee, in the hand of Scott Anderson, as Vice President for MERS is invalid.

Not just because Scott Anderson is a confirmed Robo-Signer, but that HSBC Bank USA,

N.A. as, Trustee for the Registered Holders of Renaissance Equity Loan Asset-Backed

Certificates, Series 2007-3 signed off on the Substitution of Trustee two (2) days earlier

on 02 Feb 2009, before ever even being placed in capacity or otherwise named on the

Deed of Trust. Also, it was done so through the Trustee named on the document as Cal-

Western reconveyance that had substituted themselves two (2) days earlier with Ocwen

and still, as demonstrated earlier, MERS did not have the authority as Nominee to do

anything, the Lender, person owed money to is bankrupt and out of business two years..

In summary, we have a non-rightful beneficiary appointed by a non-rightful

beneficiary, by a Trustee that had substituted themselves two (2) days earlier. Cal-Western

acted as the Trustee two (2) days after substituting themselves, and                26

HSBC Bank USA, N.A. as, Trustee for the Registered Holders of Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3, signed off on the Substitution of Trustee two (2) days before They had any "beneficial" assignment. This is fraudulently and wrongly recorded as such at the Clark County Recorders Office, Nevada. Both of these recordings should be declared a nullity by this Court.

Plaintiff was able to demonstrate fully and accurately how the events have transpired, but the Plaintiff was getting dizzy doing so. As promised, I dug a little deeper than Defendant(s) counsel. It is not the supporting document(s) that they purport it to be, but just more evidence that Defendant(s) were as confused as Plaintiff is as to who could do what, and when and where, and had Standing. The Defendant(s) and Plaintiff have apparently entered into their own Joinder of not really knowing.

Plaintiff also wants to point out to the Court that the Defendant(s) have professed the accuracy and verity of the document(s) they present it with a bravado of enthusiasm that must exist in hopes that it would or will cover up or help veil the real truth.

Plaintiff holds Defendant(s) each and every one of them responsible as only through working in concert could they perpetrate this planned process of money grabbing and property theft by Defendant(s), each and every one of them.

The problems here are that first as argued above by Plaintiff that MERS has NO authority other than that given by the Beneficiary that MERS acts as Nominee for, as there has never been an assignment of MERS to the Note and that claim has not been denied by the Defendant(s). Let's say that they Defendant(s) come up with the original, wet-ink, Promissory Note that would now after all this time miraculously appear for inspection, MERS can only act at the order/request of the TRUE Beneficiary, who is out          27

of business, defunct, dissolved, and technically incapable of performing the verifiable act of directing or otherwise requesting that MERS would/could act on their behalf.

The fact that Fidelity Mortgage of New York, a Division of Delta Funding Corporation, could give such authorization after being out of business almost two (2) years is an enigma. How could this happen? It is a "technical impossibility" for a company two (2) years defunct to order or direct MERS to do anything on their behalf and that is the Limited Authority of MERS as Nominee. Without that request, MERS can do nothing.

So not only have we discovered that the Promissory Note was a nullity practically upon Plaintiff's signature being placed on said Promissory Note by virtue of NO assignment of that Note, on that Note, by Fidelity Mortgage of New York, a Division of Delta Funding Corporation to MERS, and/or subsequent assignment(s) were not recorded on the Note as well.

We aren't done with these document(s) that the Defendant(s) hold up as supporting their Standing as a True Party in Interest, *HSBC v TAHER | Judge SCHACK* Plaintiff's Counsel, Ocwen Robo-Signers Christina Carter, Scott Anderson, Margery Rotundo Dismissed w/ PREJUDICE! The following should sound familiar as Plaintiff shares the same conditions and Defendant(s) are mostly the same, and after all it is the company that he/her is representing here and now.

> *The assignment of the subject mortgage and note to HSBC, by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), in the instant foreclosure action is without legal authority. MERS never possessed the TAHER note it allegedly assigned to plaintiff HSBC. Thus, plaintiff HSBC lacked standing to commence the instant foreclosure action. Therefore, the assignment is defective and the instant action is dismissed with prejudice.*

*Mr. Cassara's affirmation, affirmed "under the penalties of perjury," that to the best of Mr. Cassara's "knowledge, information, and belief, the Summons and Complaint, and other papers filed or submitted to the [\*4]Court in this matter contain no false statements of fact or law," is patently false. Moreover, the Court is troubled that: the alleged representative of plaintiff HSBC, Christina Carter, who according to Mr. Cassara, "confirmed the factual accuracy and allegations set forth in the Complaint and any supporting affirmations filed with the Court, as well as the accuracy of the notarizations contained in the supporting documents filed therewith," is not an employee of HSBC, but a robosigner employed by OCWEN LOAN SERVICING, LLC [OCWEN], whose signature on legal documents has at least three variations; the MERS to plaintiff HSBC assignment of the subject mortgage and note was executed by Scott W. Anderson, a known robosigner and OCWEN employee, whose signature is reported to have appeared in at least four different variations on mortgage assignments; and, the instant affidavit of merit was executed by Margery Rotundo, another robosigner, OCWEN employee and self-alleged employee of various other banking entities.*

**"that the affidavits submitted by HSBC contain serious irregularities that make them inherently untrustworthy." (HSBC Mortg. Services, Inc. v Murphy, 19 A3d 815, 2011 ME 59, \* 3).**

**Last month, on May 19, 2011,** *in a case involving a defective MERS to HSBC assignment by a robosigner, Maine's highest court, the Supreme Judicial Court, found that HSBC's affidavits and the assignment of the note and mortgage by MERS to HSBC contained serious defects. The Maine Court held "that the affidavits submitted by HSBC contain serious irregularities that make them inherently untrustworthy." (HSBC Mortg. Services, Inc. v Murphy, 19 A3d 815, 2011 ME 59, \* 3). HSBC has a history of foreclosure actions before me with affidavits of merit executed by Margery Rotundo and MERS to HSBC assignments executed by Scott Anderson that "contain serious irregularities that make them inherently untrustworthy."* **Moreover, Mr. Cassara was put on notice, in my November 8, 2010 decision and order, that "[t]he wrongful filing and prosecution of foreclosure proceedings which are discovered to suffer from these defects may be cause for disciplinary and other sanctions upon participating counsel."** Decided on July 1, 2011Supreme Court, Kings County HSBC Bank USA, N.A., AS INDENTURE TRUSTEE FOR THE REGISTERED NOTEHOLDERS OF RENAISSANCE HOME EQUITY LOAN TRUST 2007-2 Against Ellen N. Taher, et. al.

So when counsel for the Defendant(s) attest and swear to the accuracy of their

claims they should know that they will be held to such as in the directly before herein

above mentioned ruling, the "Counsel(s)" for the Defendant(s) were named as well by the

29

Court. Make sure you know what you tell me, or the Court, or present in evidence is true and correct and that you, personally have knowledge of the activities and/or document(s) that you present with confidence and bravado are true, correct, and verifiable.

You may see the whole case and samples of Scott Robison's many different signatures at http://stopforeclosurefraud.com/2011/07/06/hsbc-v-taher-judge-schack-grand-slam-mers-plaintiffs-counsel-ocwen-robo-signers-christina-carter-scott-anderson-margery-rotundo-dismissed-w-prejudice/ .

*Page 3 of 17 continued...*

Defendant(s) mention that on 30 Sep 2010 that A Notice of Default and of Election to Cause Sell of Real Property under Deed of Trust was recorded by Western Progressive, LLC, as Trustee., whereas on 22 April 2011, a Substitution of Trustee was recorded by HSBC Bank USA, N.A. as, Trustee for the Registered Holders of Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3, appointing Western Progressive, LLC as Trustee under Plaintiff's Deed of Trust/Note.

Who appointed who in this scenario? Two (2) points here are 1) When did Western Progressive become Trustee, and by virtue of who. 2) It says that HSBC Bank USA, N.A. as, Trustee for the Registered Holders of Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3, appointed Western Progressive, LLC as Trustee, but as mentioned herein above there are multiple reason(s) that the assignment of HSBC Bank USA, N.A. as, Trustee for the Registered Holders of Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3, was invalid and in fact HSBC Bank USA, N.A. as, Trustee for the Registered Holders of Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3, performed assignment(s) on the Deed of Trust before they were even assigned that role or standing, and that the very document that gives the standing   30

they allege to have came two (2) days after they had already acted as such. HSBC Bank USA, N.A. as, Trustee for the Registered Holders of Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3, that alleged authority was filed by a Trustee that had substituted themselves only two (2) days before.

Here again several anomalies exist aside from the assertion by Defendant(s) counsel that she/he has verified all paperwork and makes their assertion(s) and declaration(s) that Plaintiff is incorrect and that a proper chain of title has been maintained. These assertion(s) are NOT true and fail by the same standard(s) as presented by the Defendant(s) . Plaintiff will move to hold Counsel(s) responsible for what they say, do, and present in Court on behalf of their client(s). If Counsel is caught spreading lies and unverified truth(s), Plaintiff will sue directly. Defendant(s) Counsel(s), this is the only warning that Plaintiff will give. From here any and all agent(s), counsel(s), representative(s), law firm(s), and without limit to whom he has, would and might further name. You WILL be sued.

Plaintiff wonders if Defendant's counsel ever even reads these document(s). It is clear throughout and at every event or happenstance that the Defendant(s) do not in fact understand or otherwise know what they are talking about and that Plaintiff as a layman can find the inconsistencies that Defendant(s) counsel attests and swears do not exist. The inconsistencies and failure of Defendant(s) failure to preserve a clean and clear chain of Plaintiff's title are right here in black and white. Plaintiff swears to the Court that he is NOT making this stuff up, but simply looking at the same document(s) that the Defendant(s) Counsel is.. It is probably reasonable for Plaintiff to say at this point, that *"If you don't look, you can't find!"*                 31

Furthermore, HSBC Bank USA, N.A. as, Trustee for the Registered Holders of Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3, this is a nullity as well, as they did not become Trustee in a true, clear and identifiable chain of title (referring to the assignment(s) by non-standing [P]erson(s) filed on 02 and 04 Feb 2009).

Their substitution came, if you remember, as a result of a substituted Trustee making the assignment two (2) days after they substituted themselves as Trustee. The Court cannot support that a party or person can do what they want, then not be held responsible for it, especially when there is so many questions and raised doubts about the transactions and the business activities of Defendant(s) themselves..

This document referred to by counsel for the Defendant(s) and is held up by them as evidence of a process that they affirm and declare is proper and does not cloud Plaintiff's title in any way. This document also features the infamous Geraldine Sheppard of Nevada Robo-Signing fame. She is the signor on this document as "Western Progressive, LLC, as agent for beneficiary by LSI TITLE AGENCY, Inc. as Agent."

Yes, Plaintiff has yet another verifiable Robo-Signer. What does that mean? Plaintiff is sure that Defendant(s) can't explain this one effectively. I say "effectively", as it is becoming apparent to Plaintiff and hopefully to this Court that the Defendant(s) each and every one of them is/are acting outside of their authority and causing Plaintiff undo time, trouble, and expense in pushing back Defendant(s) argument(s) that they are saying whatever they need to say, regardless of the fact(s) that might or would apply.

These criminal(s) know no limits to their lying, cheating ways. All Defendant(s), their counsel(s), their Agent(s), any and all of them have acted in concert to totally screw up Plaintiff's chain of title and then they want to act like an innocent. Give          32

Plaintiff a break. Really?

Make these criminals responsible for what they have done to millions of homeowners.

> **This in regarding Geraldine Sheppard, who signed the very document that Western Progressive, LLC and LSI Title Agency, Inc. is holding up as evidence. A notable omission here is that HSBC is NOT named on it, and it was signed by Geraldine Sheppard. Read about Ms. Sheppard below...**

## 2 indicted in Vegas foreclosure robo-signing case (Headline);

**Grand jury in Las Vegas indicts 2 title officers in foreclosure document robo-signing case:**

> LAS VEGAS (AP) -- *Two title officers have been indicted on more than 600 charges alleging they directed a "robo-signing" scheme that led to the filing of tens of thousands of fraudulent foreclosure documents, the Nevada attorney general's office said Wednesday.*
>
> *A Clark County District Court judge issued warrants for California residents Gary Randall Trafford, 49, and Geraldine Ann Sheppard, 62, after a grand jury handed up the 439-page indictment. Their hometowns were unavailable, and they could not be immediately located for comment.*
>
> *The indictment says that between 2005 and 2008, Trafford and Sheppard directed employees to forge their names on foreclosure documents, then notarize the signatures they just forged. The defendants then had the employees file the fraudulent notices of default with the county recorder's office to begin Foreclosures on homes.*
>
> *Trafford and Sheppard face more than 200 felony charges of offering a false instrument and false certification of an instrument, and more than 100 misdemeanor notarization charges, Attorney General Catherine Cortez Masto said. Jennifer Lopez, a spokeswoman for Masto, said Trafford and Sheppard had not yet been arrested.*
>
> *Nevada has been the state hit hardest by the recession and the housing crisis, leading the nation in bankruptcies, foreclosures and unemployment. Yet, the problem of shoddy mortgage paperwork, which comprises several shortcuts known collectively as "robo-signing," is more widespread.*
>
> *Judges who handle foreclosures in Maine, California, Arizona, New York and other states have thrown out foreclosure cases because documents apparently were robo-signers. The nation's largest banks, including*                33

*Bank of America Corp., JPMorgan Chase & Co., Wells Fargo & Co., and other lenders temporarily halted foreclosures nationwide last fall because of the issue.*

*In Michigan, the attorney general took the rare step in June of filing criminal subpoenas to out-of-state mortgage processing companies after 23 county registers of deeds filed a criminal complaint with his office over robo-signed documents they say they have received.*

*New York Attorney General Eric Schneiderman's office has said it is conducting a banking probe that could lead to criminal charges against financial executives, and the attorneys general of Delaware, California and Illinois have been conducting their own probes.*

*Meanwhile, federal bank regulators have focused on getting banks to clean up their act in the future, not on fixing the potentially millions of tainted documents that have been filed across the country.*

*Continuing with page 3 & onto 4 of 17...*

Defendant(s) also state on page three that on 24 May 2011, a Certification from the State of Nevada Foreclosure Mediation Program was recorded in the County of Washoe, Nevada, in the county Recorders Office. Why Washoe, and not Clark County where required and/or Ormsby County, which would encompass the Carson City Township? In reality the document itself says Clark County, but again it begs Plaintiff to ask the question, are the Defendant(s) and their counsels actually looking at the document(s), or are they really taking this serious?

The point about the State of Nevada Foreclosure Mediation Program , is that program has to be offered by the Lender or Servicer, it cannot be initiated by the Homeowner/Borrower. Plaintiff wanted to take advantage of the State of Nevada Foreclosure Mediation Program but was never given the opportunity to do so by Lender or Servicer.

Plaintiff even contacted all contactable parties by phone and requested that

34

they do their due diligence and get him the paperwork. Plaintiff even went so far as to draw the paperwork up himself and see if he could get the Mediation started. Plaintiff was told in no uncertain terms that the Lender or Servicer had to initiate.

There was no reason to deny Plaintiff the opportunity to attend the State of Nevada Foreclosure Mediation Program other than Plaintiff received a notice informing him that he was NOT eligible for the Program. This made no sense to Plaintiff as he was the Owner, Occupier of the home and it was his and his families private residence.

Plaintiff was cheated out of that opportunity as he believes that the Defendant(s) knew they could not stand up to the requirement(s) of those proceedings.

Plaintiff asserts and declares that the Defendant(s), each and every one of them worked in concert to deny Plaintiff his right to the State of Nevada Foreclosure Mediation Program .

Next on The Defendant(s) list;

## II. LEGAL ARGUMENTS;

**A. The Plaintiff's motion for Order to Stay Eviction Should Be Denied Because the Federal Court does not have the Jurisdiction to Issue an Order Staying a State Court Eviction.**

Plaintiff responds that, that may ordinarily be true, however in this case, to remove Plaintiff from his home would place him a severe disadvantage by not possessing the property in question. How would as Defendant(s) counsel suggest that upon Plaintiff's prevailing in this action, would you restore him? Not possible!

The Ownership of the home vs. possession is an arguable issue, however that argument will NOT prevail here in this action against you and your cohorts. Of course the two (2) are of separate nature, however when the action of one Court would        35

place so many prejudices and disadvantage on the Plaintiff and his action in this Court that could cause additional suffering, and damages to Plaintiff.

The reason the Defendant(s) counsel sounded in on the issue that they insist is no business of theirs and is a totally separate action, the business of another Court, is that they know the extreme disadvantage they would create for Plaintiff in the prosecution of this action. Possession is nine-tenths of the law and the fact that if Defendant(s) were able to move Plaintiff from his home would be highly detrimental to the issues at hand in this litigation. Removing Plaintiff from his family home would forever create an un-restorable position for Plaintiff when he prevails in this action. It could/would also appear to prejudice Plaintiff in the eyes of a court or a jury, by Defendant(s) being able to stand on points while indicating a Court of another jurisdiction ruled in their favor of Eviction of Plaintiff.

Plaintiff also argues that Defendant(s), and each and every one of them by virtue of their existing Joinder and that they are in this case rendering argument(s) to a Court that they say shouldn't even hear them, regarding a case that is none of their or the Court's Business, according to them. Plaintiff asserts that by this/these action(s), Defendant(s) have also caused Joinder with The Law Offices of Les Zieve, by Grace M. Kim, Esq. (NV No. 9268), and Benjamin D. Petiprin, Esq. (NV Bar No.11681), Attorney(s) for: HSBC Bank USA, NA, as Trustee for the registered holders of Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3, 3753 Howard Hughes Parkway, Suite 200, Las Vegas, NV 89169, who are counsel for the same client, HSBC Bank USA, NA, as Trustee for the registered holders of Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3, and that they are all working in concert with the other Defendant(s),        36

each and every one of them. They claim to be of separate interest but brought forth by the same Defendant(s), regarding the same exact property and interest. Defendant(s) that are attempting an illegal pre-litigation removal from and seizure of Plaintiff's property.

Defendant(s) that were served the Complaint way before they began to move for an eviction of Plaintiff. There has been considerable altering of the status quo that existed when Plaintiff filed his Complaint by Defendant(s), which Plaintiff alleges the further demonstration(s) of their arrogance and lack of respect for Plaintiff or this Court.

In order to preserve the integrity of Plaintiff's litigation, Plaintiff made Motion to this Court at the request of Judge Stephen J. Dahl, of the North Las Vegas Justice Court, who asked Plaintiff to seek the Stay from the U.S. Court. This was all covered in the Motion to Stay the Eviction. I simply did what the Judge of that Court requested.

Now is the question, was Judge Dahl wrong in asking Plaintiff to seek a Stay in U.S. Court, did he not know the law? I would think that Counsel for the Defendant(s) is in tricky territory if it comes to lecturing a Judge on the Law, in Court. I wouldn't want to be that person.

Is it possible that Counsel was wrong and that it is possible. Plaintiff had previously submitted the cite **LR 7-2.1 NOTICING THE COURT ON RELATED CASES.**

Apparently, counsel again has not read Plaintiff's submissions as in their rebuttal of Plaintiff's request for Stay Defendant(s) Counsel neglects or forgets to address the law that Plaintiff cited, **LR 7-2.1 NOTICING THE COURT ON RELATED CASES., in which Plaintiff argues that all points are relevant and directly pertains to this action against Defendant(s).**                                                                          37

Plaintiff qualifies on all bullets below, a thru d, and since opposing counsel did not address or argue against his citing of **LR 7-2.1,** or attempted to render it invalid in any way for Consideration of and by the other argument(s) made herein by Plaintiff as per Defendant(s) collective motives, regarding the severe disadvantage, great burdens, prejudice, and extended additional damages that it would cause to Plaintiff if forced from his home through pre-litigation Eviction activities, that this Court should, either order the stay as "requested" by Judge Dahl for Plaintiff to seek, or bring all in Joinder and consolidate representation. This should be automatic as Defendant(s) here, have plead for the Plaintiff there.

### LR 7-2.1 NOTICING THE COURT ON RELATED CASES.

*Counsel who has reason to believe that an action on file or about to be filed is related to another action on file (whether active or terminated) shall file in each action and serve on all parties in each action a notice of related cases. This notice shall set forth the title and number of each possibly related action, together with a brief statement of their relationship and the reasons why assignment to a single district judge and/or magistrate judge is desirable. An action may be considered to be related to another action when:*

*(a) Both actions involve the same parties and are based on the same or similar claim; (b) Both actions involved the same property, transaction or event; (c) Both actions involve similar questions of fact and the same question of law and their assignment to the same district judge and/or magistrate judge is likely to effect a substantial savings of judicial effort, either because the same result should follow in both actions or otherwise; or, (d) For any other reason, it would entail substantial duplication of labor if the actions were heard by different district judges or magistrate judges. The assigned judges will make a determination regarding the  consolidation of the actions.*

***FRCP 19. Id. at 770-71. The purpose of FRCP 19*** *is to join "all persons whose joinder would  be desirable for a just adjudication of the matter." Id. In this case, joinder is required because "as a practical matter [failure to join will] impair . . . The person's ability to protect the interest." Id. at 771*

*Addressing item on page 5 of 17...*

1

2          Again Defendant(s) Counsel here again says that the action(s) being brought forth

3      are based on her/his affirmation which according to him/her shows a clear trail of legal

4      authority to foreclose. Considering everything Plaintiff has brought forth in this

5      Opposition and Response and in the body of this litigation up until now? Defendant(s)

6

7      cannot be serious.

8              *"A dog knows the difference between being kicked and tripped over"*

9              *"You can't put the toothpaste back in the tube."*

10

## B. THE PLAINTIFF'S MOTION TO STAY EVICTION SHOULD BE
11
## DENIED BECAUSE THE DEFENDANTS HAD STANDING TO
12
## FORECLOSE ON THE PLAINTIFF'S PROPERTY

13
           Everything Plaintiff has said is true and he can back it up, whereas, Defendant(s)
14
15     continue to go on here on page *6 of 17* again and say that they have Standing to move

16     against Plaintiff and suggest that all issues are moot as per their illegal sale and

17
       purchase of Plaintiff's property after the Complaint had been filed. Plaintiff reminds the
18
19     Court that he believes that was a maneuver necessary to collect their Mortgage

20     Default Insurance. In the wake of their greed they paid absolutely NO respect of the status

21
22     quo of the issues and property at the time of filing, which demonstrates even more

23     disrespect and contempt for the Plaintiff and this Court. These guys are incredible.

24
## B. THE PLAINTIFF'S MOTION TO STAY EVICTION SHOULD BE
25
## DENIED BECAUSE THE DEFENDANTS HAD STANDING TO
26
## FORECLOSE ON THE PLAINTIFF'S PROPERTY

27
### a. The Recorder Land Documents show a clear trail of legal authority to
28
### foreclose on the Plaintiff's Property.

       Really? So much of what has been said would need to be said again to

       address This/these points that Counsel for the Defendant(s) attempts to make, and 39

they all seem to make all of their arguments around them having Standing as a Party in Interest. Plaintiff has covered that area enough that he is sure the Court understands his position on the Defendant(s) claim to Standing and that Plaintiff have/has created enough merit in his fact(s) and argument(s). What has been presented by Plaintiff is not a complete detail of his argument(s) and fact(s), but is substantially sufficient to demonstrate that what Defendant(s) say with conviction, is NOT true.

Plaintiff will in subsequent filing(s) demonstrate that the Defendant(s) are not Person(s) or Party(s) of Interest, with Standing, but merely bill collector(s) and are breaking many law as a debt collector.

Plaintiff will be rendering other filing(s) and Motion(s) directly, that will bring the truth out and render the Defendant(s) defenseless. The Defendant(s) make every motion and then they take every action except to prove their Standing. When does that become suspicious to the Court as sufficiently indicating through their reluctance to simply come forward with the proper documentation? At what juncture do we compel the "fraudclosure" bill collectors to prove what they say is in fact true?

Plaintiff has shown multiple times that what he claims to be true is true and the most unbelievable thing about Plaintiff's allegations are that there are so many and they are ALL true. Simply unbelievable. Plaintiff is proving his point(s) with the Defendant(s) own evidence. If you made a movie out of this no one would believe it! It would go in the fiction aisle, but it is in fact really happening. Plaintiff cannot be the only one to see the ridiculousness herein regurgitated by Defendant(s) and their counsel(s). Prove you have the right to be at this party, or get on home, but remember to pay me before you go.

Plaintiff wonders if Counsel here has first hand knowledge of the                    40

transactions she/he holds up as evidence and will/would sign an affidavit as a person who has that first hand personal knowledge and would swear to the validity of the document(s), under penalty of law and perjury what you are attesting to be bona-fide and in fact true?

### b. THE ASSERTIONS BY THE PLAINTIFF CONCERNING THE APPLICABILITY OF AB 284 IS MISPLACED

Counsel for Defendant(s) also assert that Plaintiff's wrong concerning the applicability of AB 284. Plaintiff begs to differ as AB 284 that was not effective until 01 Oct. 2011, the Nevada Judiciary had informed the Nevada State Mediation Program mediators to use the tenants of AB 284 even though it had not arrived at it's effective date.

Based on this, Plaintiff suggests that the tenants and requirements of all the parties that are in this current litigation, take the administrative ruling of the Nevada Judiciary to heart. You have argued against AB 284 and I think that the same standards that were suggested by the Nevada Judiciary should also take root here as if we were in the District Court of Nevada. If not then Plaintiff will stand on AB 273 which will not give Defendant(s) the same cause as the dates are in line and much of what Plaintiff would use is in AB 273 anyway. Plaintiff still prays to the Court to adopt the standards of AB 284 and AB 273 when compelling Defendant(s) to show their Proof of Standing.

Again, Defendant(s) are finding ways to NOT prove their standing. Are Defendant(s) "afraid" to be held to the standard(s) as set forth by AB 284. It further makes Plaintiff's point that the Defendant(s) are not even in possession of the document(s) that would support their position and opinion and will make any claim or argument they

41

can to avoid being compelled to do the "right" thing and simply prove their position. Plaintiff asserts here that it is because they cannot.

Plaintiff states that even in non-judicial foreclosure there is an assumption by the Court(s) that the underlying supporting document(s) are in place and proper possession, whereas herein Plaintiff has more than sufficiently shown that this is NOT the case and Defendant(s) should now be compelled to provide their "Proof of Standing" and authority of a "real" Party in Interest as per the clouds on Plaintiff's chain of title that are documented herein. The assumption of/by the Court(s) in a Non-judicial foreclosure that the underlying and supporting document(s) has been made suspect through Defendant(s) own submission(s) of evidence and Plaintiff's detailing of the inconsistencies, lost Promissory Note, illegal assignment(s), and the fraudulent document(s) presented by Defendant(s) to support their position should more than demonstrate that the Court CANNOT reasonably assume that the document(s) exist or that they are proper and compliant recording(s) and filing(s).

Simply recording with the Recorder Office of Clark County, Nevada is NOT proof that Defendant(s) filings are legal, complete, accurate, or compliant. The Recorder simply records. They do not examine and dissect the truth and verity of the document(s). No background checks here, but they basically check the Notary and other affirmation(s) of identity and that procedurally the document(s) and the signatures thereon are complete and in place. This is in NO way a vetting of the information or a confirmation of the information contained therein. You may file just about anything that pertains to the Recorders Office domain as long as signature(s) for all parties appear and that the identity of those signer(s) have been duly and properly notarized. The Recorders Office       42

then assumes the validity of the document(s) presented for recording. That is basically the

function of the Recorders Office... to record. They DO NOT verify the information.

## C. ASSERTIONS BY THE PLAINTIFF CONCERNING FRAUD FAIL TO MEET THE REQUIRED HEIGHTENED PLEADING STANDARD UNDER F.R.C.P. RULE 9

Plaintiff responds to Defendant(s) assertion(s) that his claim for fraud is sufficient.

First, Plaintiff cannot meet the standard(s) of time, place and manner of each fraud

as that information is not contained in the document(s) that Defendant(s) and their counsel

present as proof of assignment(s).

On 30 April 2007 as a result of telemarketing contact by Defendant(s) Plaintiff

suffered unknowingly at the time from being the victim of Predatory Lending practices.

(FRAUD & DECEPTION & PREDATORY LENDING PRACTICES)

Plaintiff was not informed that his chain of title would be destroyed by the

method(s) of tranfer(s), assignment(s), and/or any other and all conveyances or activities

that were performed by Defendant(s) and that those activities would injure Plaintiff and

cloud his ownership of his property even after the debt had been cured. This was not

represented or disclosed to Plaintiff at the time of his signing. (FRAUD / DECEPTION)

Plaintiff was then victimized by the non-transfer or assignment of the Promissory

Note to MERS as required to accurately portray ALL of the assignment(s) performed in

the due course of proper process which Defendant(s) had NOT performed, namely the

assignment on the Promissory Note to MERS as Beneficiary. Doing so on the Deed of

Trust alone does not create an assignment. The assignment must take place in the same

fashion as any change in Beneficial Interest would be required to perform. Defendant(s)

did not, thereby making the "mortgage" unenforceable and rendering it a nullity    43

from practically the moment after Plaintiff signed the Promissory Note in good faith,

trusting and relying on the ethics, information, and knowledge of the Defendant(s).

(FRAUD,INCOMPETENCE & DECEPTION)

Plaintiff cannot comment on the date(s), location(s), or the manner of the fraud

and how it was perpetrated in regard to the allonge(s) as there is No date of the

assignment, there is NO location specified, and Plaintiff can only guess as to the manner,

fashion, or reason that Defendant(s) chose to "manufacture" these document(s). Again,

Defendant(s) can evidence the validity if they chose to, but continue to resist supporting

their claim(s) as a Party in Interest. (FRAUD THROUGH CONCEALMENT and the

MANUFACTURE of and the ALTERING OF VITAL DOCUMENT(S) AND

INFORMATION AND THE MANUFACTURING OF THE ALLONGE(S) and OTHER

DOCUMENT(S))

> *"acts committed by WAMU, Chase and Shapiro amount to a "knowing deception intended to prevent the Defendants from discovery essential to defending the claim" and are therefore fraud."* (**referenced in more detail, herein below**)

In deference to Defendant(s) assertion(s), the Plaintiff without having to restate

and or have this Court reread the account(s) of fraud and improper activities by

Defendant(s), Plaintiff defers to the herein above and below detailed account(s) of

fraudulent activities perpetrated by the Defendant(s), each and every on of them as

Plaintiff feels that this Court has heard and understand(s) Plaintiff's concern and point(s)

as detailed hereinabove.

As such and as already stated herein by Plaintiff he will not restate already stated

position(s). If Defendant(s) were unclear of any detail(s) of the claim(s) made and alleged

by Plaintiff, this document should remedy that concern.                                   44

Plaintiff want(s) to state that the representation(s) of fraud and misconduct by Defendant(s), each and every one them, is not to be construed a complete rendering of every fraud and misconduct perpetrated by Defendant(s), but substantially complete enough to cause question as to the claim(s) and assertion(s) brought forth by Defendant(s).

Plaintiff also reserves the right to add at any time any allegation(s) of fraud as they are discovered, found, uncovered, of a past or future attempt of fraud and/or misconduct that may have existed, will exist, or could exist.

Plaintiff has satisfied most if not all of the referenced requirement(s) listed by Defendant(s) Counsel, that Plaintiff must factually and specifically allege the following element(s).

1) Defendant(s) represented to Plaintiff an important fact that was true.
*Plaintiff will not contest that somewhere and in some way, the Defendant(s) represented a fact to Plaintiff that was true.*

2) Defendant(s) representation(s) were false.
*Plaintiff has more than satisfied the time, place and manner of multiple transgression(s) by Defendant(s) and has substantially proved that Defendant(s) have made representation(s) that were/are false.*

3) Defendant(s) knew the representation(s) was false when it was made, Defendant(s) intended Plaintiff to rely on the misrepresentation.
*This is a major piece of Plaintiff's claim(s). This was a premeditated fraud that was perpetrated on millions of homeowners in this country. Defendant(s) at some time or another will make claim that there were mistake(s) made and other incompetence's that occurred, however, the mistake(s) were made all over the country almost sixty-six million (66,000,000) times by all types of banks, servicers, title companies, and any other agent(s) that were necessary to work in concert by playing their role(s) in the perpetration of these fraudulent activities upon Plaintiff. Plaintiff argues that his claim(s) made are and have been more than adequately described and have been made clear to both the Defendant(s) and this Court throughout this Response and detailed repeatedly throughout the body of this lawsuit and in the original Complaint filed by Plaintiff, however in particular to Plaintiff is the assertion that the Allonge(s) supporting*   45

the claim(s) of being a Party in Interest and the assertion(s) that the proper chain of title was clear and unclouded. Both of these representation(s) meet the requirement(s) set forth here.

4) At the time the representation(s) were made, Defendant(s) intended Plaintiff to rely on the misrepresentation. *Plaintiff has been expected by Defendant(s) to "take their word for it" time after time as the court can see from their document(s) and filing(s). This an unacceptable path as Defendant(s) have already lied to, misled, and produced fraudulent document(s) to support their position. Under what reality would Plaintiff believe anything that the Defendant(s) say or affirm, and Plaintiff hopes that the Court will share in the same suspicion(s) as Plaintiff as to the verity of what Defendant(s) say, affirm and/or attest.*

5) Plaintiff justifiably relied on Defendant(s) misrepresentation in taking action or refraining from acting. *Action(s) that Plaintiff took was entering into the loan agreement in the first place by relying on information given by Defendant(s) and or their agent(s) or representatives. Defendant(s) made up or otherwise disclose to underwriters that Plaintiff's income did not support the loan and Plaintiff with the assurances of Defendant(s) agent(s) or Representative(s), and made a "Stated Income" loan that Plaintiff refused to state as he in informed Narissa Raber that he would not state anything other than the truth and that she had all of Plaintiff's Income documents including W2's and Pay Stubs right in her file with the application made by Plaintiff for the loan. In Plaintiff's case, he suggest that one vivid, undeniable example of the many would be the Defendant(s) desire for Plaintiff to simply take their word as to what authority(s) they may have and to not be required to render it certifiable in the presence of the Court with sworn affidavit(s) and/or sworn statement(s) in Court, combined with the appropriate underlying and supporting document(s). Defendant(s) also want Plaintiff to take their word on the "manufactured:" Allonge(s), another example.*

6) Plaintiff was harmed; and such harm resulted from the Plaintiff's reliance on the intentional misrepresentation(s) of Defendant(s). *Plaintiff was harmed in variety of ways that has been detailed throughout the body of filing(s) of this litigation. Defendant(s) need only to read the prior filing(s) and this current Response in order to have a crystalline grasp and knowledge of the ways that Plaintiff has been damaged by Defendant(s), among them,*

*1) Payment to a [p]erson(s) that has no right to the payment(s), so damages would be in the amount of every cent that Plaintiff ever paid Defendant(s) or the Servicers, or any and all "other" Agent(s) of the Defendant(s) that have collected from Plaintiff illegally. Reward to be determined.*

*2) The face amount of the Promissory Note as allegedly paid by Defendant(s) approximately two-hundred-forty-thousand-dollars ($240,000.00).*       46

*3) Clouded title to Plaintiff's property that would render a worthless Deed of Trust to Plaintiff as Defendant(s) would have to submit an affidavit of "Lost Note" to provide that which Plaintiff had paid for when debt is/was cured. Again the amount of the Promissory Note (approximately $240,000.00) alleged by Defendant(s) when they "illegally purchased" Plaintiff's property for the purpose of collecting the Default Insurance on the Promissory Note, thereby as a side effect.*

*4) Extreme emotional distress not only on Plaintiff but to facilitate the auxiliary damages to Plaintiff's family as well. Plaintiff has suffered indignation, shame, anxiety, hopelessness, doubt, sleeplessness, restlessness, diminished appetite, aggravated health issue, undo stress, loss of sense of security for family, loss of faith in business ethic(s), trust in professional(s), job loss, marital disharmony, Spartan lifestyle, time, expense, and other condition(s) or circumstances, that currently do or do not exist, and certainly not limited to the brief summary damages listed here. Reward to be determined.*

*5) Plaintiff is being forced by Defendant(s) in this litigation through other counsel in what they claim to be an unrelated Action. Plaintiff knows, especially since "unrelated" counsel is making an argument for something that they claim, state is none or their 's or this Court's business. Plaintiff has argued that by virtue of Defendant(s) taking up the cause of arguing for the "non-related" action, has in fact by natural process caused a Joinder of Defendant(s) counsel and thereby should have ALL consideration(s) remanded and removed to this Court.*

## D. PLAINTIFF'S MOTION TO STAY SHOULD BE DENIED BECAUSE THE PLAINTIFF IS NOT LIKELY TO SUFFER IRREPARABLE HARM BECAUSE THE PLAINTIFF HAS NOT PAID HIS MORTGAGE IN OVER FOUR (4) YEARS AND A FORECLOSURE/EVICTION ACTION HAS ALREADY OCCURRED ON THE PLAINTIFF'S PROPERTY.

First off the Defendant(s) Counsel states a non-fact at the outset of his/her Response that Plaintiff has not made a payment in OVER four (4) years. It is true that Plaintiff has not made "the" payment(s) since Plaintiff was current on "the" payment(s) until and through 19 April 2010, so the "fact(s) would be two (2) years, not four (4). (Plaintiff will not characterize payment(s) as his, as Defendant(s) have/had not satisfied Plaintiff as to who the payment(s) would be due to.) That is why payment(s)          47

have not, are not being made as Defendant(s) are illegally attempting to collect without

any reason or authority to do so. Defendant(s) are NOT the Party(s) in Interest that would

have the right to do so. I am sure that the Defendant(s) would not be holding the fund(s)

in escrow while Plaintiff takes them to task in Court, and waiting for a decision in this

litigation. The Court cannot expect Plaintiff to throw his money away.

http://scholar.google.com/scholar_case?case=15952441306028509721&hl=en&as_sdt=2,
10&kqfp=16139611122081980124&kql=177&kqpfp=5718301205103314182#kq
*When interpreting the attachment requirement, the courts "have been of one mind" that
the lack of an indorsing signature on the instrument itself, or on a sheet "firmly affixed"
to the instrument, is fatal to holdership. See, e.g., Bailey v. Mills, 257 Ala. 239, 58 So.2d
446, 447 (1952); Lopez v. Puzina, 239 Cal.App.2d 708, 49 Cal.Rptr. 122, 124-25 (1966);
Lamson, 531 P.2d at 968; Shepherd Mall State Bank v. Johnson, 603 P.2d 1115, 1118
(Okla.1979); Estrada, 550 S.W.2d at 725; Crossland Sav. Bank FSB v. Constant, 737
S.W.2d 19 (Tex.Ct.App. — Corpus Christi 1987); Crosby, 16 Wis. at 627. As one treatise
states, "[t]he unanimity of the courts in cases where the signature is separate from the
instrument can be explained by a judicial perception that it is sound policy to require the
endorsement to be on the instrument." R. Hillman, J. McDonnell, & S. Nickles, Common
Law and Equity Under the Uniform Commercial Code ¶ 11.02[1][b], at 11-18 (1985).
This applies to all 50 states.*

*http://www.bubbleinfo.com/2011/06/02/settlements-may-not-be-enough/*

*Last month, the Maine Supreme Court reversed the foreclosure of Dana and
Robin Murphy of Auburn, Me., after concluding that the mortgage company, a
unit of HSBC Holdings PLC, filed "inherently untrustworthy" documents. An
HSBC spokesman declined to comment.*

*Attorneys for borrowers reject the view that they are using arcane legal rules to
secure free houses for clients who aren't paying their bills. Efforts to gloss over
incomplete or falsified evidence "can't be tolerated by a free society," says
Thomas Ice, an attorney in Royal Palm Beach, Fla., who has a similar case
before the Florida Supreme Court. "This is a huge assault on our legal system"
that risks "turning us into a banana republic."*

*In March, an Alabama court said J.P. Morgan Chase & Co. couldn't foreclose on
Phyllis Horace, a delinquent homeowner in Phenix City, Ala., because her loan
hadn't been properly assigned to its owners—a trust that represents investors—
when it was securitized.*

*The Murphy's found discrepancies in the newly presented document(s)*     48

*and alleged that the documents were backdated. The court voided the foreclosure and sent the case back to the lower court to determine potential penalties.*

*Curing incomplete mortgage assignments can be tricky because many lenders that originated subprime loans are still listed as the owner but have gone out of business.*

The following here shows that one (1) of the Defendant(s) here are named

in this action as, Quality Loan Services (Ocwen).

*http://www.loansafe.org/attorneys-hit-nevada-foreclosure-processors-with-class-action-suit*

**(Source: Steve Green Las Vegas Sun)** – *Two attorneys announced Monday they're suing six companies they claim have been processing Nevada home foreclosures without authorization.*

*The companies named in the suit: 1)* **(Defendant)** *Quality Loan Service Corp., believed to be a California corporation. 2) Appleton Properties LLC, a Nevada company. 3) MTC Financial Inc. dba Trustee Corps. and believed to be a California corporation. 4) Meridian Foreclosure Service dba MTDS Inc. dba Meridian Trust Deed Service, described in the lawsuit as a Nevada and California company. 5) National Default Servicing Corp., believed to be an Arizona company. 6) California Reconveyance Co., described as a California company.*

*The suit against the foreclosure processors is also in addition to suits filed by Cortez Masto and homeowners last year against Lender Processing Services Inc. over alleged widespread robosigning problems involving forged signatures on foreclosure documents.*

*http://www.8newsnow.com/story/16401524/nevada-supreme-court-case-could-impact-homeowners*

**Nevada Supreme Court Case Could Impact Homeowners;** *This is the first time the state supreme court will consider issues related to the use of MERS, the Mortgage Electronic Registration System.*

*http://www.abiworld.org/committees/newsletters/consumer/vol8num8/cases.pdf*

**ABI 18th ANNUAL SOUTHWEST BANKRUPTCY CONFERENCE
Four Seasons Resort Las Vegas, NV September 23-25, 2010**

**RESOLVED: SERVICERS LACK STANDING TO PROSECUTE**          49

**MOTIONS FOR RELIEF FROM STAY ON BEHALF OF UNNAMED
BENEFICIARIES; PRO: Ford Elsaesser Elsaesser, Jarzaber, Anderson, Marks,
Elliott & McHugh, Chtd. 102 S. Euclid Avenue, Suite 307 Sandpoint, ID 83864-4912
CON: Rudy J. Cerone McGlinchey Stafford, PLLC 601 Poydras Street, 12th Floor
New Orleans, LA 70130**

*These materials summarize several prominent decisions by bankruptcy courts
faced with deciding whether to grant automatic stay relief for purported lenders,
servicers and/or their agents to foreclose on property. These cases address the
constitutional standing and real party in interest status of parties to foreclose
where they cannot show they hold the past due note or that they are entitled to
enforce it.*

***As required by the Constitution,*** *courts must confirm that a lender actually has
standing and will benefit from the court granting relief from an automatic stay
before the court can do so.*

***Therefore, a nominee or agent*** *will have to prove both (1) that it is an agent with
the authority to act on behalf of the principal and (2) that the principal has both
constitutional standing and prudential standing.*

***The standing requirement is*** *"an essential and unchanging part of the case-
or controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 US
555, 560 (1992).*

***The standing question is a threshold issue,*** *required before a court may entertain
a suit. Warth v. Seldin, 422 U.S. 490, 495 (1975). Thus, if a lender cannot prove
standing, the court has no authority to hear its motion for relief from stay and it
must dismiss the motion.*

***Prudential requirements also require*** *that a party bringing a motion be the real
party in interest. Rule 17 of the Federal Rules of Civil Procedure ("FRCP")
requires "[a]n action must be prosecuted in the name of the real party in
interest." Fed. R. Civ. P. 17. The purpose is to ensure the party bringing forth the
action is the party who "possesses the substantive right being asserted under the
applicable law." 6A Wright, Miller & Kane, Federal Practice and Procedure §
1541 (Westlaw current through 2009 update). This reflects the fact that the
federal judiciary also adheres to certain prudential principles concerning
standing. Bennett v. Spear, 520 U.S. 154, 162 (1997). The real party in interest
inquiry is one of the prudential considerations the judiciary self-imposes to limit
the role of courts in democratic society. See, e.g., In re Village Rathskeller, 147
B.R. 665, 668 (Bankr. S.D.N.Y. 1992). Because Rule 17 applies in adversarial
bankruptcy proceedings, parties must adhere to Rule 17 in order to seek relief
from automatic stay. Rules 9014 and 7017, Federal Rules of Bankruptcy
Procedure (the "Bankruptcy Rules");*                                        50

*In re Hwang, 396 B.R. 757, 766 (Bankr.C.D. Cal. 2008).*

**Even if IndyMac Bank ( the Bank)** proved it was the servicing agent for the
owner of the note, it must bring the action in the real party in interest's name
rather than its own name, or join that party to the action to satisfy FRCP 19. Id.
at 770-71. The purpose of FRCP 19 is to join "all persons whose joinder would
be desirable for a just adjudication of the matter." Id. In this case, joinder is
required because "as a practical matter [failure to join will] impair . . . the
person's ability to protect the interest." Id. at 771.

*Deutsche Bank National Trust Company,* **in its capacity as Trustee under a
securitization Pooling and Servicing Agreement** *(a "PSA"), the moving party
under the stay relief motion, did not prove that the mortgage at issue ever was
assigned to the Depositor under the PSA. Id. at 268. The court noted that both it
and the debtor "are entitled to insist that the moving party establish its standing
in a motion from a relief from stay through the submission of an accurate history
of the claim of ownership of the mortgage. Absent such proof, relief from the stay
is unwarranted and a proof of claim filed by the moving party, to which an
objection is filed, must be disallowed." Id. at 269.*

**Ominously for counsel** *for the mover, the court noted that inaccurate
representations about the moving party's status as a holder and may
warrant sanctions under 28 U.S.C. § 1927. Hayes, 393 B.R. at 269; see also In re
Fitch, 2009 WL 1514501 (Bankr. N.D. Ohio, May 28, 2009).*

*Bankruptcy Court for the Western District of Washington* **denied the motion for
relief from automatic stay** *because the moving party, UBS AG, could not show it
had standing, nor that it had authority to act for anyone that did have standing.
In re Jacobson, 402 B.R. 359, 369 (Bankr. W.D. Wash. 2009).*

*The court instructed that it is possible to prove the identity of the various holders
and servicers* **by putting forth evidence** *and stated that some* **courts require such
evidence to be admissible before considering it.** *Id. at 367.*

*The movant here asserted that it was the servicer of the note and acting on behalf
of the holder. In addition,* **neither UBS AG nor ACT had actual possession of the
note and thus neither appeared to have any right to enforce it.** *Id. at 370. While
establishing that UBS AG is the agent rather than the noteholder seems like it
might be an easier standard to meet,* **it must still show it is the agent of ACT.** *Id.
Even if it could, it* **must also show ACT is the real party in interest** *and join ACT
as a party or litigate in its name instead of its own name. Id. Because UBS AG
was not the real party in interest nor could it show it was acting on behalf of the
real party in interest,* **the court denied the motion for relief from stay.** *Id.*

**In re Sheridan;** *In this case, the Bankruptcy Court for the District* 51

of Idaho considered a stay relief motion brought by MERS as **nominee for HSBC Bank USA ("HSBC")**. In re Sheridan, 2009 WL 631355 (Bankr. D. Idaho, Mar. 12, 2009). MERS not only asserted it was nominee, but also characterized itself as a "secured creditor and Claimant." Id. at *1. MERS was designated a beneficiary on the Deed of Trust and as nominee for the noteholder at the time of execution. Id. at *6 The court still found this insufficient, as there was no showing made as to who the current noteholder was. The court also held MERS was **not an actual beneficiary, despite the Deed naming it one, since no actual economic benefit accrued to it.** Id. at * 4.

**The Court found the "titular designation"** of MERS as "beneficiary" on the Deed **insufficient to establish** it as such; and (2) there was no evidence or explanation presented showing whether HSBC had any current interest in the note. Id.

Merely **naming a party as a beneficiary of an instrument is not    sufficient** to make it one. Id., Idaho Code § 45-1502(1) which defines a beneficiary for purposes of the trust deed statute as "the person for whose benefit a trust deed is given." Id.

**In re Mitchell, 2009 WL 1044368 (Bankr. D. Nev., Mar. 31, 2009).** Like Sheridan, this court denied the motions in both cases because MERS was not the noteholder nor did it show the authority to act on behalf of one who was the noteholder. Id. at *4.

**In re Wilhelm, 407 B.R. 392 (Bankr. D. Idaho 2009).** In his decision, Judge Myers held that the movants in five different actions for relief from stay lacked standing to bring such motions because: (1) they were not named on the notes at issue; (2) the notes were not indorsed in blank or to any specific person or entity (such as the movants); (3) the movants failed to prove that they held the notes; and (4) the movants were not proper assignees of the notes even though they argued that MERS assigned the notes to them because the notes named MERS as beneficiary acting solely as nominee with no right to assign the notes.

In reaching its decision, the court did add one important admonition to counsel: **"In general, counsel should gather the appropriate documents and factual data before filing the motions (as required by Rule 9011 in any event), rather than attempting to cure patently defective motions with serial supplemental filings."** Id. at 403 (emphasis in original).

**In re Foreclosure Cases, 2007 WL 3232430, *2 (N.D. Ohio, Oct. 31, 2007),** the United States District Court for the Northern District of Ohio dismissed fourteen (14) foreclosure actions because the DB failed to establish diversity jurisdiction and standing. In the foreclosure actions, Judge Christopher Boykin issued an Order requiring DB to prove that it was the holder and owner of the            52

*underlying notes and mortgages that were the basis for each of the foreclosure actions. DB was required to file a copy of the executed Assignment demonstrating that DB was the holder and owner of the Note and Mortgage as of the date the Complaint was filed. The original lender was reflected as the mortgagee and no assignment to DB was reflected in the chain of title. Under Ohio law, assignments of mortgages are subject to recording requirements. Therefore, in addition to execution of a mortgage assignment, recording may also be required to establish standing. DB produced Mortgage Assignments dated after the date of the original foreclosure complaint. These Mortgage Assignments were attached to pleadings in support of DB's position that the Mortgage Assignments were sufficient to establish standing to prosecute the foreclosure actions, even though such Mortgage Assignments were entered into after the commencement of the foreclosure actions. The Court disagreed. It found that DB was not the holder of the notes when the complains were filed and dismissed all 14 foreclosure actions.*

Other recent, notable cases dealing with standing issues in state law foreclosure proceedings are:

***Mortgage Electronic Registration System, Inc. v. Southwest Homes of Ark., 302 S.W. 3d 1 (Ark. 2009); Landmark Nat'l Bank v. Kesler, 216 P.3d 158,***

The cases discussed above highlight the failure of several lenders to keep adequate records of transfers of underlying notes. *Without a proper paper trail, lenders cannot show that they have standing or are the real parties in interest entitled to bring a motion for Relief* from the automatic stay or a subsequent foreclosure action. In addition, attorneys should take note of how courts will regard conclusory affidavits in support of these motions as well as the potential for ***Rule 11 land mines when taking a client's averments regarding the ownership of a note or deed at face value without making a reasonable and independent inquiry before submitting such statements to a court.***

http://www.uiowa.edu/~ilr/issues/ILR_96-5_Froehle.pdf , In the first instance listed under Article 3, a party is the holder of the note if the note is indorsed to the party or, as is common practice in mortgages destined for securitization, indorsed in blank.38 The blank indorsement allows a party to transfer the note merely by possession.39 Possession of the note provides evidence of the obligation of the debt, while the mortgage provides security of payment of the debt. ***The note is thus required for a party to show authorization that it may foreclose***   53

*on the property.*

*Assignments of the mortgages along the chain of titles must show a proper conveyance of the note and mortgage from the originator to the final party* seeking to foreclose on the homeowner. In the process of securitizing a mortgage, the originating lender will typically assign the mortgage to a trustee who then combines that mortgage with a bundle of other similar mortgages to form a single secured asset.88 The originating lender usually retains the right to service the mortgage, but the interest in the property (and status as real party in interest) has been transferred to the trustee.89...

To collect on the mortgage note, the creditor "must;

      (1) be the holder of the note,
      (2) have constitutional standing and
      (3) be the 'real party in interest '

..."90 A problem in these proceedings arises because of the increase in the practice of securitization of residential mortgages in which the entity seeking foreclosure on the mortgage may not ultimately fulfill one or more of the elements of this three-part test due to the complex structure of the securitization process.91 party of interest to the mortgage.96 IndyMac sold the note to Mr. Hwang's mortgage through Freddie Mac, likely into a securitization trust.97 At the time of filing its motion for relief from the automatic stay, "IndyMac [did] not know who own[ed] the note . . . although it still ha[d] possession of the note and there [wa]s nothing on the note to indicate that it ha[d] been transferred."98 Freddie Mac and the investors in the securitization trust had not been joined in the motion for relief, and IndyMac "failed to provide any documents showing its sale of the note or its status as a servicing agent for the note's new owner."99 An illustrative example of the complexity of the securitization process appears in the bankruptcy case of In re Hwang.92 The beneficiary of the mortgagor's deed of trust was initially a broker, Mortgageit, Inc.93 At some point before the bankruptcy petition was filed, Mortgageit transferred the mortgage to IndyMac Bank.94 The deed of trust named Mortgage Electronic Registration Systems, Inc. ("MERS")—"a national electronic registry of mortgage loans"95—as the beneficiary; however, MERS had transferred the deed of trust back to IndyMac by the time of the case and was no longer a The bankruptcy court was satisfied that IndyMac was the holder of the original note and that it had sufficient constitutional standing due to IndyMac's ability to show that Mr. Hwang's failure to make payments on the mortgage debt constituted an injury to IndyMac.100 However, on the issue of "real party in interest," the court determined that, because it was a securitized mortgage, only the trustee of the securitization trust as the owner of the note, and not IndyMac as the servicer, could be the real party in interest.101 The court denied IndyMac's motion to avoid the stay on Hwang's property until it could discover and join the proper trustee in the action for relief from the automatic stay.    54

http://www.thehomeownersrevolt.com/?cat=196 ; On your mortgage, you will have language that gives the "Lender" the right to assign the mortgage. If the party doing the foreclosing is the servicer, then the servicer will need to prove standing. The Servicer is not "the lender". These are two different parties.

An interesting development out of Jean Johnson, Circuit Judge in Duval Country, Florida, where in a case filed by JPMorgan/WaMu, as Plaintiff, and law firm of Shapiro and Fishman, attempted to evict defendants Hank and Marilyn Pocopanni. As basis for the legal case, WaMu had submitted an assignment of mortgage, which however the court just found never actually belonged to WaMu, and instead was carried on the books of Fannie Mae.

Once this was uncovered is where this case gets really interesting: In point 5 of the filing we read that the "plaintiff predecessor counsel made "clerical errors" when it represented to the Court that the plaintiff was the *owner* and holder of the note and mortgage rather than *the servicer for the owner*."

Which means that only Fannie had the right to foreclose upon the Pocopannis, yet JPM, as servicer, decided to take that liberty itself. And here the Judge got really angry: "The court finds WAMU, with the assistance of its previous counsel, Shapiro and Fishman, submitted the assignment when [they] knew that only Fannie Mae was entitled to foreclose on the Mortgage, and that WAMU never owned or held the note and Mortgage."

And, oops, "the Court finds by clear and convincing evidence that WAMU, Chase and Shapiro & Fishman **committed fraud on this Court**" and that these "*acts committed by WAMU, Chase and Shapiro amount to a "knowing deception intended to prevent* 55

*The Defendants from discovery essential to defending the claim" and are therefore fraud.*

While the Judge in this case did not also find declaratory damages against the plaintiff, and while the case of the defendants is unclear (we would expect Fannie to file a foreclosure act on its own soon enough), the question of just how pervasive this form of "fraud" in the judicial system is certainly relevant. If JPM takes the liberty of foreclosing on mortgages as merely servicer, when it has no legal ground for such an action, who knows how many such cases the legal system is currently clogged up with. The implications for the REO and foreclosures track for banks could be dire as a result of this ruling, as this could severely impact the ongoing attempt by banks to hide as much excess inventory in their books in the quietest way possible.

Any party caught in a foreclosure process is to immediately go to www.fnma.com and use the Lookup Tool to see if Fannie is still mortgage owner of record, if a foreclosure suit has been brought up by a plaintiff other than the GSE. We are confident quite a few other such cases will promptly appear.

http://www.thehomeownersrevolt.com/?cat=212 ;
**Banks Lose Pivotal Foreclosure Case in Massachusetts High Court,** By *Thom Weidlich Jan 7, 2011 8:44 AM PT*

US Bancorp and Wells Fargo & Co. lost a foreclosure case in Massachusetts's highest court that will guide lower courts in that state and may influence others in the clash between bank practices and state real estate law. The ruling drove down bank stocks.

The state Supreme Judicial Court today upheld a judge's decision saying two foreclosures were invalid because the banks didn't prove they owned the                56

mortgages, which he said were improperly transferred into two mortgage-backed trusts. "We agree with the judge that the plaintiffs, who were not the original mortgagees, failed to make the required showing that they were the holders of the mortgages at the time of foreclosure," Justice Ralph D. Gants wrote. Wells Fargo, the fourth-largest U.S. lender by assets, dropped $1.10, or 3.4 percent, to $31.05 at 11:41 a.m. in New York Stock Exchange composite trading. US Bancorp declined 28 cents, or 1.1 percent, to $26.01. The 24-company KBW Bank Index fell as much as 2.2 percent after the decision was handed down.

Claims of wrongdoing by banks and loan servicers triggered a 50-state investigation last year into whether hundreds of thousands of foreclosures were properly documented as the housing market collapsed. The probe came after JPMorgan Chase & Co. and Ally Financial Inc. said they would stop repossessions in 23 states where courts supervise home seizures and Bank of America Corp. froze U.S. foreclosures. Teri Charest, a spokeswoman for Minneapolis-based US Bancorp, didn't immediately return a call for comment. Jason Menke, a spokesman for San Francisco-based Wells Fargo, didn't have an immediate comment.

> ***Foreclosures Voided ;*** Charest previously referred questions on the case to the loan servicer for both mortgage-backed trusts, American Home Mortgage Servicing Inc. Philippa Brown, a spokeswoman for Coppell, Texas-based American Home Mortgage, didn't have an immediate comment.
> In March 2009, Massachusetts Land Court Judge Keith C. Long voided the foreclosures, finding that the mortgage transfers were done months after the house sales. October of that year, Long declined the banks' request to reverse that ruling after they argued that the documents that bundled together the mortgages had transferred those instruments to them.
>
> Today's court decision held out the possibility of securitization documents properly transferring mortgages. Such documents, along with "a schedule of the pooled mortgage loans that clearly and specifically identifies the mortgage  57

at issue as among those assigned, may suffice to be proof that the assignment was made by a party that itself held the mortgage," Gants wrote. "However, there must be proof that the assignment was made by a party that itself held the mortgage."

In the **United States Court of Appeals for the Eleventh District,** No. 10-14366, D.C. Docket No. 1:09-cv-02435-WCO, Izell and Raven Reese, Plaintiff(s)-Appellant(s) vs. Ellis, Painter, Ratterree & Adams, LLP,(Defendant(s)-Appellee(s)

*"A law firm is a debt collector if it regularly attempt(s) to collect debt(s)"*

**A debt collector within the meaning of the FDCPA;** *any person...*

*... 15 USC § 1692a*

The District Court Judge in this case ruled in favor of Defendant(s), but upon

appeal it was reversed in Appeals Court.

**Same here another United States Appellate Court decision from a different**

**Circuit;** *BRIDGES v. OCWEN | 6th Circuit Court of Appeals* "as to a specific debt, one

cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA"

**Pursuant to Sixth Circuit Rule 206, File Name: 12a0112p.06;**

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

LISA BRIDGE;WILLIAM W. BRIDGE, III, Plaintiffs-Appellants,
v.
OCWEN FEDERAL BANK, FSB; OCWEN FINANCIAL CORPORATION; OCWEN LOAN SERVICING, LLC; AAMES CAPITAL CORPORATION; FIRSTAR BANK, nka US BANCORP; OCWEN FEDERAL LOAN SERVICING COMPANY; DEUTSCHE BANK, NATIONAL TRUST CO., fka BANKERS TRUST COMPANY OF CALIFORNIA, Defendants-Appellees.

No. 09-4220, Appeal from the United States District Court for the Northern District of Ohio at Cleveland. No. 07-02739—David D. Dowd, Jr., District Judge.

Decided and Filed: April 30, 2012

Before: CLAY and STRANCH, Circuit Judges; BARRETT, District Judge.*

We conclude that the district court's judgment must be vacated because the Bridges have sufficiently alleged that the Defendants are debt collectors    58

within the coverage of the FDCPA.

Under the FDCPA, a "debt collector" is defined as: any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. . . . The term does not include (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; [or] (iii) concerns a debt which was not in default at the time it was obtained by such person (*15 U.S.C. § 1692a(6)*)

The same is true of a creditor who uses any name other than his own which would indicate that a third person is attempting to collect the debt. See 15 U.S.C. § 1692a(6) ("Notwithstanding the exclusion provided in clause (F) of the last sentence of this paragraph, the term [debt collector] includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."). *No such creditor may escape liability by alleging that it is neither a creditor nor a debt collector* and thus not subject to the FDCPA.

This is a very recent case and it applies to these issues at hand.

http://deadlyclear.files.wordpress.com/2012/03/williamses-order1.pdf

*You are a debt collector, this applies to you and Fraud nullifies any contract which was also signed under duress by me due to your fraudulent behavior.*

The common-law standing requirements are proof of injury in fact, causation, and redressability.65 Because standing is a "threshold question,"66 courts have stated that "a defect in standing cannot be waived; it must be raised, either by the parties *or by the court,* whenever it   becomes apparent."67 ("It is fundamental in American jurisprudence that in order to bring a lawsuit against an opposing party, one must have standing to do so. Without standing, a party is not properly before the Court to advance a cause of action.");

*(Defendant(s) bears the burden of demonstrating standing and must plead its components with specificity."). 63. (In re Vill. Rathskeller, Inc., 147 B.R. 665, 668 (Bankr. S.D.N.Y. 1992) (citing Warth, 422 U.S. at 498).*

Under Leyva vs NDSC, Well's Fargo, the Nevada Supreme                59

Court held: As discussed below, we conclude that Article 3 clearly requires

Wells Fargo to demonstrate more than mere possession of the original note

to be able to enforce a negotiable interest under the facts of this case…If an

instrument is payable to an identified person, negotiation requires transfer of

possession of the instrument and it's endorsement by the holder." NRS

104.3204(2) An" endorsement" is a signature that is made on the instrument."

NRS 104.3204(1). Thus, if the note is payable to the order of an identifiable

party, but is then sold or otherwise assigned to a new party, it must be

endorsed by the party to whom it was originally payable for the note to be

considered properly negotiated to the new party." There is no signature

endorsement from an actual officer of Community Bank to Acquired Capital

as required under Nevada Law and the law in all 50 states.

An 'Attorney in Fact' signing as another is not a valid endorsement. If you

obtained the title under false pretenses which it appears you did, then you are

guilty of several atrocities against Plaintiff to include but not limited to fraud and

extortion.

You also sued me under a defunct contract. Please note that your so

called 'assignment(s)' makes no warrantees of any kind. It is no more than a

piece of paper you had manufactured. It is not valid.

"Good and valuable consideration" is not a monetary damage. You did

not have or had 'standing' to move against Plaintiff in the Foreclosure, Election

for Trustee Sale, or any and all other action(s) that you will as you are not the

damaged party. As noted in the first case above Williams order of            60

dismissal for the same reasons I've cited is a very recent case.

In http://stopforeclosurefraud.com/2012/05/01/bridges-v-ocwen-6th -circuit-court-of-appeals-as-to-a-specific-debt-one-cannot-be-both-a-creditor-and-a-debt-collector-as-defined-in-the-fdcpa/

it is clear that each and every one of you are a 'debt collector' as defined.

Defendant(s) conduct  regarding posting notice(s), Pursuing Foreclosure, Election to Sell, when you didn't have valid ownership now puts you, them, everyone, into 'extortion' statutes. ***"The obtaining of property from another induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."***

This case below also brings in your law partners who also have moved against Plaintiff on what is now a *"foregone conclusion"*, that all Defendant(s), their Counsel(s) and any or all other types of Agent(s) or representatives, are now responsible as well. Plaintiff will only make this statement this last time, that if you are an *attorney* or *Counsel* of the Defendant(s), this is prohibited conduct and certainly reaches 'harassment' as defined under FDCPA as well as "extortion" above.

http://stopforeclosurefraud.com/wp-content/uploads/2012/05/reese-v-ELLIS-PAINTER-RATTERREE-ADAMS-LLP-w.pdf

You are not a damaged party and you cannot sue on someone else's damage. You do not have 'standing' which requires you to 'show that the conduct of which he complains has caused him to suffer an 'injury in fact'. Additionally you do not have 'prudential standing' which encompasses the general prohibition on a litigant's raising another person's legal rights. (*see Oregon v Legal Sevs. Corp, 552 F. 3rd 965, 971 (9th Circuit 2009)*).

61

I am available for a settlement conference if you wish to accept the offer

that Plaintiff sent Defendant(s) on 23 May 2012. If you wish to avoid further

litigation. This is confirmation of an earlier offer by Plaintiff as directed by Judge

Dawson, an attempt to settle without expending the courts' time and money. As

indicated before Judge Dawson, Plaintiff said in Court that Defendant(s) would

have to participate in the settlement process, and as yet they have not even

confirmed that they have received Plaintiff's Offer in Compromise.

HSBC Bank USA, NA, as Trustee for the registered holders of

Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3 is not a party to this

Promissory Note as already argued by Plaintiff. HSBC Bank USA, NA, as Trustee for the

registered holders of Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3

assignment is a nullity as MERS who can only act as per the request(s) of the Lender or

the Lender's Servicer. The Lender, Fidelity Mortgage of New York, a Division of Delta

Funding Corporation, was dissolved and bankrupt along with their sibling corporation(s),

notably in this case would be the Renaissance Investment Group, in December 2007, and

were removed from the NASDAQ on 20 December 2007. MERS, in no way could have

been acting on the behalf of Fidelity Mortgage of New York, a Division of Delta Funding

Corporation as the company was dissolved nearly two (2) years before MERS makes the

assignment of HSBC Bank USA, NA, as Trustee for the registered holders of Renaissance

Equity Loan Asset-Backed Certificates, Series 2007-3 as Beneficiary. It is technically

IMPOSSIBLE for a defunct company to make that authorization, and/or for a dissolved

trust, namely the Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3, that

was also dissolved in bankruptcy in December 2007.                         62

Plaintiff asks then, "Who are these people?" How are these type of assignment(s) even possible. Defendant(s) have been caught with their hand(s) in the cookie-jar and don't and/or won't admit it. The Defendant(s) should have followed proper procedures in the first place other than damaging Plaintiff and showing NO remorse or responsibility for their action(s) against Plaintiff and their responsibilities thereof.

The Defendant(s) Counsel goes on to say that the damages alleged by the Plaintiff is a result of the Plaintiff's action(s). That has hint of truth in it, however does not represent the complete, pure and unadulterated truth. The reality as agonizingly detailed by the Plaintiff throughout the body of this litigation is clear.

The "truth" is that Plaintiff did decide to stop paying until, after 3 years of requesting proof of Standing by and from Defendant(s) while Plaintiff was still current on "the" mortgage. It was only after the Defendant(s) would not clarify question(s) that Plaintiff posed them. Once it became clear to Plaintiff that the only way to get the answer was to pursue litigation in the matter, and since Defendant(s) refused through statement(s) and lack of action, to provide the proof, then and only then did Plaintiff begin to not make payment(s) as Defendant(s) would not make clear to Plaintiff to whom in fact was the "true" Beneficiary of the Promissory Note. It became clear to Plaintiff that Defendant(s) were covering something up.

We then come to the claim by Counsel for Defendant(s) that HSBC suffered a loss in purchasing the Promissory Note. Plaintiff asks HSBC to show the canceled check that it wrote for $239,131.22. The decision to purchase the Note/Property was all HSBC. They decided to make an illegal altering of the status quo that existed at the time Plaintiff filed his Complaint. This pathetic attempt by Defendant(s) to "perfect" the Deed            63

and chain of title. Their stated effort and intention to "perfect" title evidenced that they had to effect some kind of alteration in order to establish a position or authority that already claimed to have had. More lies!

Aside from fraudulently attempting to forge and bully their way into a position as a Party of Interest, this purchase was to also allow Defendant(s) wrongfully to collect on the Mortgage Default Insurance. Defendant has now illegally collected said insurance. In reality the Promissory was PAID and destroyed most likely in 2007, upon the securitization of the Plaintiff's Promissory Note, and now Party(s) of NO Interest are profiting. Upon securitization the Note should be held by the investor(s), as per law.

The Counsel for the Defendant(s) want to impugn Plaintiff with mentioning that he has not made payment(s). How does that compare to perpetrating insurance fraud, and accepting or demanding payments that are not legally due you. Plaintiff is now interested in which insurance underwriter paid HSBC, I am sure that they would have no problem recognizing the fraud and taking action against the "fraudclosure" specialist named herein as Defendant(s). They would probably like the money back that the Defendant(s) wrongly filed claim for. These guys have no limit. Unbridled!

Again, Plaintiff is called by Defendant(s) to reiterate what is already been Disclosed and/or is a matter of record filed within this litigation. Asked and answered.

Plaintiff suggest(s) that Defendant(s) actually read and know what is already in the body of this litigation, on file, with this Court. As attorney(s), Plaintiff is sure that Defendant(s) should know what is what, and should have already read and understood the body of this litigation beginning with the Complaint and all subsequent filing(s). It will save Plaintiff's time and allow the Court more and better efficiencies in                64

the dealing(s) of this litigation.

## E. THE PLAINTIFF'S MOTION TO STAY SHOULD BE DENIED BECAUSE THE PLAINTIFF CANNOT SHOW THAT THE EQUITIES BALANCE IN FAVOR OF PLAINTIFF

Counsel for Defendant(s) has claimed that the equities in balance do not favor the Plaintiff because it cannot be disputed that Plaintiff quit making the payment(s), well Plaintiff has argued that Defendant(s) have/has not supported their claim(s) of Standing to be the Beneficiary of any payment(s), nor have they proved through appropriate document(s) that what they claim to be true is true. Plaintiff believes that the latter is a much worse offense.

Even upon Defendant(s) allegations and claims they cannot tell and/or prove to Plaintiff that if payment(s) were made that they would be forwarded or otherwise remitted to the Party in Standing. The equities in balance weigh far in the favor of Plaintiff as Plaintiff's damages are in amount(s) that greatly eclipse even the total amount or face value of the Promissory Note and any and all monies or other payment(s) made to Defendant(s) that they were willing to collect illegally.

In response to Defendant(s) quote that *"[h]e who seeks equity, must do equity"*, is answered to by Plaintiff that, *"he who seeks payment must be entitled to payment."*

Counsel for Defendant(s) also states/claims that Plaintiff has not offered to pay rent(s) while occupying the property, if the Stay is granted in this case. Plaintiff further inquires to Defendant(s) as to whom any rent(s) would be paid, and why to them? The matter(s) here are to be determined by this Court and Plaintiff prays that the Judge or Magistrate that reviews this/these document(s) and argument(s) made by Plaintiff, is as clear to them as it is to Plaintiff that the Defendant(s) are acting in a very          65

suspicious manner and have all but admitted or indicated that they do NOT have the document(s) that would be required prove their claim(s) as a Party in Interest.

The Counsel for Defendant(s) go on to say that HSBC suffered a loss on the Promissory Note of $239,131.22. This is a lie as HSBC has already collected on their Mortgage Default Insurance and paid absolutely no one, anything, as the Promissory Note no longer even exist(s) as it was PAID and destroyed years ago, either when the loan was originally securitized, or when the Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3, filed bankruptcy and dissolved it's asset(s) and holding(s). Remember, this occurred in December 2007 and the assignments(s) any and all of them performed by MERS on behalf of Fidelity Mortgage of New York, a Division of Delta Funding Corporation, to HSBC Bank USA, NA, as Trustee for the registered holders of Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3, did not occur until 2009. In fact, MERS as explained herein above had absolutely NO authority to do so as it was a technical impossibility for Fidelity Mortgage of New York, a Division of Delta Funding Corporation to do so as they had dissolved two (2) years earlier. MERS NEVER was assigned on the Promissory Note as having the capacities of "Nominee for Beneficiary", so they had NO standing to "assign" the Promissory Note to any one without the request of Fidelity Mortgage of New York, a Division of Delta Funding Corporation, as Lender, MERS has/had NO authority.

In fact while Defendant(s) Counsel is pleading bleeding by the other Defendant(s), the truth is that HSBC Bank USA, NA, as Trustee for the registered holders of Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3 did not pay the $239,131.22 that is claimed. Who was it paid to? Plaintiff alleges that there was      66

NO Party in Interest to be paid and that HSBC Bank USA, NA, as Trustee for the

registered holders of Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3,

will get along just fine until the final determination and ruling is made by this Court on the

$239,131.22 purchase and it's legality, as well as the determination by this Court that

HSBC, had NO standing to act in that fashion or capacity.

## F. THE ASSERTIONS BY PLAINTIFF CONCERNING "BULLYING" AND THE NATURE OF LITIGATION ARE MERITLESS ARGUEMENT THAT SHOULD BE DISMISSED BY THE COURT.

Counsel for Defendant(s) have addressed the claim(s) of bullying by Plaintiff.

Defendant(s) and their Agent(s) have committed multiple instances of bullying against

Plaintiff.

Among them but not limited to is the urgency created by the "originator(s)" of the

Promissory Note, Fidelity Mortgage of New York, when Plaintiff was urged to get in and

sign or lose his opportunity.

When an Ocwen Loan Servicing Corporation, LLC employee, an Agent of

Plaintiff, told Plaintiff to pay up or get out.

Multiple times that Plaintiff contacted Defendant(s) and/ or their Agent(s)

that never received what was requested by Plaintiff as was his right to do so that

Defendant(s) and or their Agent(s) either did not perform or act/respond as required by

law.

Plaintiff relates the call from AltiSource that Plaintiff needed to leave his home and

if not, they would kick him out in the name of the new owner(s). The representative's

name was Harsha.

When Jeffrey Allison, Counsel for Defendant(s) tried to fraudulently          67

represent his client(s) Standing by sending copies of obviously "fabricated" document(s) To Plaintiff as he was "giving Plaintiff his opportunity to make his word good." This was bullying in that this was an attempt to deceive Plaintiff into accepting false and manufactured document(s) as his proof of Standing as a Party in Interest.

This does not represent all of the instances that Defendant(s) or their Agent(s) bullying Plaintiff, but Plaintiff hopes that this is substantially compliant enough and demonstrates to the Court that Plaintiff has in fact been bullied.

> *It has been long understood in a Court of Law, notably Human Resource cases involving claim(s) of discrimination, abuse, wrongful treatment, bullying, racism, sexual content, and any other concerns that could be addressed under this issue is that, personal abuses suffered is based on the perception rather than the intent. Example; someone says something that you take offense to and that was only intended as a joke. If there is something insensitive or discriminatory in the verbiage, the offense will be based on the perception, not the intent.*

Either way Plaintiff will not prevail by arguing this point as Plaintiff now feels that since that time when bullying was an issue, Plaintiff has now adjusted his attitude(s) and sensitivities to accept that this is just the nature of the game when you are dealing with [p]erson(s) that have no ethics and are willing to say anything. Defendant(s) and their counsel(s) have lost the respect of Plaintiff as he now understand(s) the nature of whom he is dealing with.

### III. Conclusion

The Defendant(s) have made a lot of false claim(s) as demonstrated by Plaintiff who has more than substantially shown that what Defendant(s) say, in fact, probably not true. It is also not true simply because the Defendant(s) repeated claim(s) of being a Party in position of, or representing the true Party in Interest.

Also in previous filing(s) Plaintiff has delivered to the Court a                    68

"Securitization Audit that describes the status quo at the time Plaintiff filed his original Complaint.

Plaintiff also has on file in this Court, a MERS report that if Plaintiff has not said enough in this area yet.

Plaintiff also has on file in this Court, a Mortgage Lien(s) Report.

Plaintiff also has on file in this Court, all of the document(s) that he has brought forward in this litigation.

Plaintiff will now work to get Order(s) from the Court. Plaintiff will also file other Motion(s), subsequent to the filing of his response to this very specific document. It has taken Plaintiff much time and research and now Plaintiff has clarity as to what has actually transpired as a result of his doing business with the Defendant(s), each and every one of them, and Plaintiff now informs this Court that he is up to speed on a level of general technical and continues to study to and to drill down in general when not responding to Defendant(s) avoidance and we don't have to prove *ANYTHING* tactic(s)

As a result of the Defendant(s) not being forthcoming with the ability to satisfy homeowner, Plaintiff has now suffered additional damage(s), loss(es), and has been further victimized by the criminal activity perpetrated by the Defendant(s), as per their consistent ability to take every position and action except proving their claim to Standing as a Party in Interest.

Defendant(s) want to paint themselves as innocent and in accordance with the law. Poppycock! Defendant(s), each and every one of them, have worked in concert of process to originally contact, offer stated-income loan, take application, and apply predatory lending practices, anything it took for Defendant(s) to approve and allegedly          69

fund the Loan, IF IN FACT ONE WAS EVER FUNDED.

The Defendant(s), each and every one of them have received sanctions, fines, loss of Charters, lost licenses, and rights to due business in many jurisdictions, not to mention the lawsuits brought forth by the U.S. Government, State Government, and other jurisdictional bodies.

The point here as to the character of the Defendant(s), it has already been proven as to what they are and how they do business. Plaintiff knows that he nor the Court can trust that Defendant(s) will act in good faith and/or in an ethical manner. Based on their past performance it surly wouldn't be a first if they tried more shenanigans.

Plaintiff hopes to find resolution through this action and be compensated for his losses and damages brought on by Defendant(s). Plaintiff also wants justice for others as when Plaintiff prevails here in this action, it will be a huge step toward ensuring that companies and entities like the Defendant(s) here in this litigation can no longer hide behind their arrogance and feeling(s) of being untouchable and above the law.

Plaintiff did sign a Promissory Note, he did enter into an agreement in which it was not disclosed him that the natural process of Defendant(s) improper forming of these Mortgage, Asset-Back Securities, would do to cloud his chain of title, and/or to create an array of nullities that should only result in the prevailing of Plaintiff in this action against Defendant(s) and his award of a minimum of his requested amount(s) as demonstrated in his Complaint against the Defendant(s) each and every one of them. There is certainly a lot of evidence to indicate the cloud(s) and doubt(s) cast upon this agreement between "LENDER" and Plaintiff were of the Defendant(s) doing and the fact that the Plaintiff is attempting to stand up against their fraudulent and criminal activities is somehow   70

impugning them? Plaintiff thinks not. Plaintiff begs the question of, when in this country, did it become less honorable to be debtor than a criminal?

In our litigation here, Defendant(s) supplied Plaintiff with obviously manufactured document(s) in the form of "allonge(s)", with the same party (Carol Hollmann), acting in dual and/or conflicting capacities as an Agent for different companies. These allonge(s) have no date and are obviously fabricated as per a "bad" cut and paste job. If the production value(s) of these fabricated, NON bona fide, document(s), with a stamp and a not a wet signature, with the same tilt, angle of the imprint that would impossible to exactly duplicate if you tried on purpose to do so, is not sufficient to sway this Court then Plaintiff will in fact appeal that decision. This at best is only representative of a copy, of a copy. These allonge(s) are anything but close to an original or even a certified copy thereof.

If the issues already pointed out in these document(s) are not evidence enough to gain merit in the eyes of the Court as manufactured forgeries, then Plaintiff submits that the reproduced, copied, identical page number that appears in the bottom right corner of both documents is fatal to any claim by Defendant(s). Plaintiff doubts that these document(s), if in any way are valid and/or could be certified by this Court, or that Defendant(s), each and everyone of them, are representing true Party(s) in Interest) in a truly authorized capacity as a Party in Interest by virtue of these document(s).

Defendant(s) and should he held accountable with fines and sanctions for Defendant(s) attempt(s) to produce and submit these forgeries in Court. Plaintiff feels there is a good chance that the Defendant(s) are so desperate that they will try to authorize capacity as a Party in Interest by virtue of these document(s).          71

Defendant(s) again are perpetrating fraud on the Defendant and this Court.

The arrogance of the Defendant(s) in their assumption(s) that expect the Defendant and this Court to just accept what they say as true, without feeling any obligation to prove after what Plaintiff has brought forth is no longer a defensible position.

Plaintiff wonders if he can do the same by simply filing a Deed of Trust in his name with NO regard of/for/to the Promissory Note that it must combine with to "create" a mortgage in the first place? This Court would throw Plaintiff in jail if that should occur, on what basis does/do the Defendant(s) avoid such penalties and judgment(s) from this Court. Plaintiff hopes that this is not representative of a recognition of a Class difference between the Defendant(s) vs. the Plaintiff, as Plaintiff has every right and possibly more under the law than the Defendant(s).

Where and while Defendant(s) are hiding behind law, Plaintiff only seeks the truth in these matters and will provide anything that might or does support his allegation(s), point(s) of authority, and argument(s), that the Court or the Defendant(s) would request. Why is it that the Defendant(s) will not adopt he same attitude and policy regarding transparency as the Plaintiff? At this point I think the answer to that is rhetorical.

Since Counsel for MERS is each in the same, Plaintiff would like to submit that this supports Plaintiff and his position as it is no longer a question if Lender(s) played out a devilish scheme, the question by Plaintiff is how long are the Courts going to let this Continue to happen?

In February 2012, government authorities and five of the nation's biggest banks, Bank of America, JPMorgan Chase, Wells Fargo, Citigroup, and Ally Financial agreed to a $26 billion settlement that could provide relief to nearly two million current                72

and former American homeowners. Hereby again, Defendant(s) have been held accountable yet continue to perpetrate their fraud upon unsuspecting customers and virtually every Court that they have appeared in.

## **Plaintiff requests that the eviction be stayed**

Plaintiff respectfully requests, based on the facts, that the Motion to Stay Eviction to this Court was at the request and by the invitation of the presiding Judge in that jurisdiction, and as per the inconsistencies pointed out here in the Defendant(s) claim(s), and the cite(s) and ruling supporting Plaintiff's, as well, and as since the undisputed, unaddressed argument(s) made by Plaintiff as per **LR 7-2.1 NOTICING THE COURT ON RELATED CASES.**, still remains with absolutely no argument or attack on validity from Defendant(s), that this Court enters an Order in favor of the Plaintiff's Motion to Stay Eviction as presented to earlier the Court.

Submitted by:
Dennis E. Scarberry / Plaintiff in ProSe

29 May 2012

73

## VERIFICATION

I, Dennis E. Scarberry have read the following and know the contents thereof. The same is true, based on my personal knowledge, except for those matters which are therein upon information and belief, and as to those claims of fact, I believe to be true.

Dated: 29 May 2012

_____

Dennis E. Scarberry / Plaintiff in ProSe

## CERTIFICATE OF MAILING

I hereby certify that on the 29th day of May, 2012, a true and correct copy of the foregoing Motion for **PLAINTIFF'S ANSWER TO DEFENDANT(S) RESPONSE TO PLAINTIFF'S MOTION AND ORDERTO STAY EVICTION** was forwarded to all parties and counsel(s) as identified in the listing of Defendant(s) by depositing true copies thereof in the United States First Class Mail at Las Vegas, Nevada, enclosed in a sealed envelope, with postage paid, addressed as follows:

McCarthy and Holthus, LLP
Counsel for LSI Title Agency
9510 W. Sahara, Suite 110
Las Vegas, NV 89117

Jeffrey S. Allison, Esq
Stephanie Cooper-Herdman
Attorneys for Defendants
Ocwen Loan Servicing, LLC,
Western Progressive, LLC, and
HSBC Bank USA, NA, as Trustee
for the registered holders of
Renaissance Equity Loan Asset-Backed                74

Certificates, Series 2007-3
5275 S. Durango Drive
Las Vegas, NV 89113

Donna M Osborn, Esq.
Attorney for Defendants
Wells Fargo Bank, NA, and
Mortgage Electronic Registration Systems, Inc.
5532 South Fort Apache Road, Suite 110
Las Vegas, NV 89148

Victoria Adams, Esq.
Corporate Counsel for
Cal Western Reconveyance Corporation
525 East Main Street
El Cahon, CA 92020

Ocwen Loan Servicing Company, LLC
Attorneys for
Fidelity Mortgage of New York,
a Division of Delta Funding
2711 Centerville Road, Suite 110
Wilmington, DE 19808

The Law Offices of Les Zieve,
by Grace M. Kim, Esq. (NV No. 9268), and
Benjamin D. Petiprin, Esq. (NV Bar No.11681)
Attorney(s) for:
HSBC Bank USA, NA, as Trustee
for the registered holders of
Renaissance Equity Loan Asset-Backed
Certificates, Series 2007-3
3753 Howard Hughes Parkway, Suite 200
Las Vegas, NV 89169

Dennis E Scarberry
Plaintiff in Proper Person

Dated: 29 May 2012

75

Dennis E Scarberry / ProPer
3005 Milton Place
North Las Vegas, NV 89032
702.648.8711 h 702.513.5701 c
e-mail: dennisscarberry@cox.net

## NORTH LAS VEGAS JUSTICE COURT
## CLARK COUNTY, NEVADA

| | |
|---|---|
| HSBC Bank N.A., as Trustee for the Registered Holders Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3, ; Does 1 thru 50 | ) **CASE# 12CN00477** <br> ) <br> ) **MOTION TO STAY, ENJOIN, OR** <br> ) **DISMISS EVICTION** <br> ) |
| Plaintiff(s) <br> vs. | ) <br> ) <br> ) |
| Dennis E Scarberry | ) (EXHIBIT(S) INCLUDED SEVENTY-FIVE <br> )  DOCUMENT FILED IN U.S. COURT) <br> ) CASE No. 2:12-CV-00128-KJD-CWH) |
| Defendant(s) | ) |

# MOTION FOR ORDER TO STAY, ENJOIN TO OTHER ACTION OR DISMISS EVICTION

As Requested Defendant in this action filed with the Court for a Stay of Eviction as Defendant was asked to do by the Honorable Stephen J. Dahl and therby Defendant made the Motion for Order to Stay as filed in this Court to keep his Honor informed as Defendant was requested to do.

Plaintiff found that Defendant(s) Counsel(s) who are in Joinder argued before the United States Federal Court Judge Kent Dawson to stay my Motion for such eviction. Plaintiff will recap some of the more relevant aspects and will also suggest that the Defendant(s) by virtue of Defendant(s) in the other action has caused Joinder among themselves.

1

The Defendant(s) Counsel in this case first argued that I had no cause even at the request of this Court to ask the U.S. Court for such a stay as that was improper and that Judge Dawson had no authority to do so.

Plaintiff had attempted to as he was asked and had to defend his request for the motion with a Counsel that said that Judge Dawson had no reason to hear this, yet went on to argue in and on the behalf of The Law Offices of Les Zieve, by Grace M. Kim, Esq. (NV No. 9268), and Benjamin D. Petiprin, Esq. (NV Bar No.11681) Attorney(s) for: HSBC Bank USA, NA, as Trustee for the registered holders of Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3, 3753 Howard Hughes Parkway, Suite 200 Las Vegas, NV 89169. As one component of his presentation to stop this action, Defendant will suggest that Party(s) have now enjoined themselves in the U.S. Court action as they claim that there is no conflict iof interest, but Defendant alleges that this is no longer true. Defendants are not just talking across the aisle, they are talking across jurisdictions.

> Defendant in THIS action will also argue(s) *FRCP 19. Id.   at 770-71. The purpose of FRCP 19 is to join "all persons whose joinder would be desirable for a just adjudication of the matter." Id. In this case, joinder is required because "as a practical matter [failure to join will] impair the person's ability to protect the interest." Id. at 771.*

The fact Defendant in this case stay in possession of his property is paramount to him prevailing in the U.S Federal Court. Defendant in this case, also argues the following rule(s) give the Court(s) the reasoning why Joinder, Stay, or Dismissal is called for by this Court in citing *LR 7-2.1*, are met by Defendant if only one of the bullets would apply;

## LR 7-2.1 NOTICING THE COURT ON RELATED CASES.

*Counsel who has reason to believe that an action on file or about to be*     2

*filed is related to another action on file (whether active or terminated) shall file
in each action and serve on all parties in each action a notice of related cases.
This notice shall set forth the title and number of each possibly related action,
together with a brief statement of their relationship and the reasons why
assignment to a single district judge and/or magistrate judge is desirable.
An action may be considered to be related to another action when:*

*(a) Both actions involve the same parties and are based on the same or similar
claim; (b) Both actions involved the same property, transaction or event; (c) Both
actions involve similar questions of fact and the same question of law and their
assignment to the same district judge and/or magistrate judge is likely to effect a
substantial savings of judicial effort, either because the same result should follow
in both actions or otherwise; or, (d) For any other reason, it would entail
substantial duplication of labor if the actions were heard by different district
judges or magistrate judges. The assigned judges will make a determination
regarding the  consolidation of the actions.*

## SUMMARY OF ARGUMENT

Therefore Defendant respectfully requests that this Court steps aside in a fashion

that does not cause Defendant in this case to develop prejudices and disadvantages that

can/could be used or otherwise communicated to the other case such as Counsel(s) for

those client(s) being able to say in Court that in another action the Defendant in this case

was ruled against, also;

If Defendant in this case were to be moved from his home that would severely

effect his right(s) as to a yet to be determined when Defendant(s) in THAT case would

have possession of Plaintiff's property.

Finally, Defendant in this case, prays to this Court that if Plaintiff is removed

from his property and then prevails in his litigation against the self proclaimed Party(s)

in Interest, how would he be restored. The Court(s) MUST operate on an assumption that

a party to a litigation has the potential to prevail.

Defendant in this case, hereby requests that the stay, Joinder, or dismissal

be granted.

(Defendant in this case before this Court has also included the seventy-five page answer to the responses from the defendant(s) in the U.S. Federal Court case for review if your Honor so requires for reference.

Submitted by:
Dennis E. Scar berry / Plaintiff in ProPer

_____ / 29 May 2012

## **VERIFICATION**

I, Dennis E. Scarberry have read the following and know the contents thereof. The same is true, based on my personal knowledge, except for those matters which are therein upon information and belief, and as to those claims of fact, I believe to be true.

Dated: 29 May 2012

_____
Dennis E. Scarberry / Plaintiff in PropeR

## **CERTIFICATE OF MAILING**

I hereby certify that on the 29th day of May, 2012, a true and correct copy of the foregoing Motion for **DEFENDANT'S  MOTION FOR ORDER TO STAY, ENJOIN TO OTHER ACTION, OR DISMISS EVICTION** was forwarded to all parties and counsel(s) as identified in the listing of Defendant(s) by depositing true copies thereof in the United States First Class Mail at Las Vegas, Nevada, enclosed in a sealed envelope, with postage paid, addressed as follows:

4

McCarthy and Holthus, LLP
Counsel for LSI Title Agency
9510 W. Sahara, Suite 110
Las Vegas, NV 89117

Jeffrey S. Allison, Esq
Stephanie Cooper-Herdman
Attorneys for Defendants
Ocwen Loan Servicing, LLC,
Western Progressive, LLC, and
HSBC Bank USA, NA, as Trustee
for the registered holders of
Renaissance Equity Loan Asset-Backed
Certificates, Series 2007-3
5275 S. Durango Drive
Las Vegas, NV 89113

Donna M Osborn, Esq.
Attorney for Defendants
Wells Fargo Bank, NA, and
Mortgage Electronic Registration Systems, Inc.
5532 South Fort Apache Road, Suite 110
Las Vegas, NV 89148

Victoria Adams, Esq.
Corporate Counsel for
Cal Western Reconveyance Corporation
525 East Main Street
El Cahon, CA 92020

Ocwen Loan Servicing Company, LLC
Attorneys for
Fidelity Mortgage of New York,
a Division of Delta Funding
2711 Centerville Road, Suite 110
Wilmington, DE 19808

The Law Offices of Les Zieve,
by Grace M. Kim, Esq. (NV No. 9268), and
Benjamin D. Petiprin, Esq. (NV Bar No.11681)
Attorney(s) for:
HSBC Bank USA, NA, as Trustee
for the registered holders of
Renaissance Equity Loan Asset-Backed
Certificates, Series 2007-3

5

3753 Howard Hughes Parkway, Suite 200
Las Vegas, NV 89169

Dennis E Scarberry
Plaintiff in Proper Person

Dated: 29 May 2012

6